**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JD GLOBAL SALES, INC.,

               Plaintiff,

          v.

JEM D INTERNATIONAL PARTNERS,
LP, *et al.*,

               Defendants.

Case No. 2:21-cv-19943 (BRM) (MAH)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are two motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Jem D International Partners, LP ("Jem D International"), Jem D International (Michigan), Inc. ("Jem D Michigan"), Jim DiMenna ("DiMenna"), and Carlos Visconti ("Visconti") (collectively, "Red Sun Farms") (ECF No. 17); and Defendant Harold Paivarinta ("Paivarinta") (together with Red Sun Farms, "Defendants") (ECF No. 18). Plaintiff JD Global Sales, Inc. ("JD Global") filed oppositions to the Motions. (ECF Nos. 23, 24.) Red Sun Farms and Paivarinta filed replies (ECF Nos. 27, 28).[1] Having reviewed the parties' submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Red Sun

---

[1] While the Complaint identifies Jem D International and Jem D Michigan as separate entities, JD Global collectively refers to both entities throughout the Complaint as "Red Sun Farms." (*See generally* ECF No. 1.) There is no entity defendant named "Red Sun Farms" in this action. Rather, the Complaint states, "each affiliated entity within the Red Sun Farms business collective, including Jem D International and Jem D Michigan, has held itself out as "d/b/a Red Sun Farms." (*Id.* ¶ 3.)

Farms' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, and Paivarinta's Motion to Dismiss is **GRANTED**.

## I.   BACKGROUND

### A.   Factual Background

For the purpose of these motions to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to JD Global. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).[2]

This action arises out of an alleged breach of a lifetime employment agreement between JD Global and Red Sun Farms. (Compl. (ECF No. 1) ¶ 1.) JD Global, a corporation organized under the laws of New Jersey, is a sales contractor that specializes in selling produce products to retail suppliers. (*Id.* ¶¶ 2, 11.) JD Global has a single employee and principal, Jim D'Amato ("D'Amato"). (*Id.* ¶ 11.) Jem D International is a limited partnership organized under Canada law, and Jem D Michigan is a corporation organized under Michigan law. (*Id.* ¶ 3.) JD Global claims both the Jem D International and Jem D Michigan entities held themselves out as "d/b/a Red Sun Farms". (*Id.*) Red Sun Farms is a business-to-business produce supplier that maintains

---

[2] In support of their motion to dismiss, Red Sun Farms submitted a fact certification from DiMenna, negotiation documents, transmitting e-mails, proposals of agreements, letters between counsel, other correspondence between the parties, and copies of purported agreements. (DiMenna Decl. (ECF No. 17-2).) While the Court may consider "any document integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory*, 114 F.3d at 1426, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Doe v. Princeton Univ.*, Civ. A. No. 21-1458, 2022 U.S. App. LEXIS 8499, at *6–7 (3d Cir. Mar. 31, 2022).

greenhouses, distribution centers, and growing facilities. (*Id*. ¶ 12.) Paivarinta is the director of sales for Red Sun Farms, DiMenna is the president of Red Sun Farms, and Visconti is the chief executive officer of Red Sun Farms. (*Id*. ¶¶ 4–6.)

### 1.   *JD Global and Red Sun Farms*

In 2013, DiMenna and Visconti engaged JD Global to retain its services. (*Id*. ¶ 13.) In November 2014, DiMenna and Visconti allegedly "reached an oral understanding" with JD Global where they agreed JD Global would sell Red Sun Farms' produce on a trial basis as an independent contractor while mutually exploring a "more permanent relationship if JD Global was satisfied that Red Sun Farms could satisfy customers' expected service levels." (*Id*. ¶¶ 14–15.) On November 26, 2014, the parties reduced their agreement to writing, whereby JD Global contracted with Jem D Michigan in an Agreement for Services ("2014 Agreement"). (*Id*. ¶ 16.) The 2014 Agreement stated each party reserved the right to terminate the Agreement on thirty days' notice. (*Id*. ¶ 17.)

In February 2015, D'Amato met with DiMenna and Visconti at a trade show. (*Id*. ¶ 21.) D'Amato offered DiMenna and Visconti two proposals for JD Global's continued work on behalf of Red Sun Farms. (*Id*. ¶¶ 21–22.) In the first proposal, JD Global would continue under the terms of the 2014 Agreement and focus on meeting its revised sales forecast numbers. (*Id*. ¶ 22.) In the second proposal, the parties would abandon the 2014 Agreement, JD Global would work to retain new customers for Red Sun Farms, and compensation for JD Global's services would be on a commission-only basis for every produce product sold by Red Sun Farms to those new customers. (*Id*.) D'Amato stated to Red Sun Farms the latter proposal would constitute a "marriage" between the parties, whereby the arrangement would continue until D'Amato chose to retire and, if Red Sun Farms terminated the arrangement prior to JD Global withdrawing from the relationship, Red

Sun Farms would have to buy out JD Global for the duration of the proposed agreement (the "2015 Commission Agreement"). (*Id.*)

During the February 2015 meeting, D'Amato advised DiMenna and Visconti that JD Global would not engage new customers for the benefit of Red Sun Farms unless they elected to proceed under the 2015 Commission Agreement. (*Id.* ¶ 23.) D'Amato also informed DiMenna and Visconti that JD Global would have to look for work outside the existing 2014 Agreement for supplemental income if the 2015 Commission Agreement was not accepted. (*Id.* ¶ 25.) To that end, DiMenna and Visconti "unequivocally told []D'Amato that Red Sun Farms would proceed with the terms of the [2015] Commission Agreement, to be effective as of January 1, 2016, and that they would supply JD Global with whatever it needed to bring in large retail clients for Red Sun Farms." (*Id.* ¶ 26.) DiMenna, Visconti, and D'Amato also agreed JD Global would operate under the original terms of the 2014 Agreement through the end of 2015. (*Id.* ¶ 27.) DiMenna and Visconti advised D'Amato they would reduce the terms of the 2015 Commission Agreement to writing to memorialize the deal. (*Id.*) Based on the verbally agreed upon 2015 Commission Agreement, JD Global opted to "[wind] down its existing arrangement with other suppliers and [forego] other employment opportunities." (*Id.* ¶ 28.)

From March to August 2015, JD Global retained new large customers for Red Sun Farms, including retailers Walmart and Aldi. (*Id.* ¶ 29.) On January 15, 2016, DiMenna and Visconti held a review process meeting for JD Global. (*Id.* ¶ 30.) During the meeting, DiMenna and Visconti offered D'Amato a salary increase based off the 2014 Agreement. (*Id.*) D'Amato reminded DiMenna and Visconti of the verbal 2015 Commission Agreement. (*Id.*) After hours of discussion, DiMenna and Visconti "ratified" the 2015 Commission Agreement, agreeing "JD Global would be paid on a per case or percentage of sales basis for produce Red Sun Farms sold to customers

that JD Global obtained . . . , and that the arrangement would continue until JD Global ended its relationship with Red Sun Farms." (*Id*.) DiMenna and Visconti reiterated to D'Amato they would reduce the terms of the 2015 Commission Agreement to writing to memorialize the deal. (*Id*. ¶ 31.)

On March 4, 2016, D'Amato "met with Red Sun Farms' ownership group" to discuss the specific rate of commission he would receive under the 2015 Commission Agreement. (*Id*. ¶ 32.) Because the 2015 Commission Agreement would include a lifetime duration and protection from termination, D'Amato proposed a below-market commission rate of 1%. (*Id*.) D'Amato's proposal was countered with a commission rate of 0.85%. (*Id*. ¶ 33.) On April 27, 2016, Visconti met with D'Amato to further discuss JD Global's work and the 0.85% commission structure for the 2015 Commission Agreement. (*Id*. ¶ 34.) D'Amato explained JD Global would accept a below-market commission in exchange for a lifetime employment arrangement terminable only with cause. (*Id*.) Visconti agreed and asked D'Amato to draft the 2015 Commission Agreement to memorialize the terms. (*Id*.)

On May 12, 2016, JD Global sent Red Sun Farms a draft agreement memorializing the terms of the 2015 Commission Agreement. (*Id*. ¶ 36.) Later that month, Red Sun Farms sent back revisions proposing, among other things, to limit the 2015 Commission Agreement to a term of three years. (*Id*.) During this time, JD Global had not received any payment for work performed under the 2015 Commission Agreement. (*Id*. ¶¶ 35–36.) DiMenna informed D'Amato the "payment freeze was a negotiation tactic deployed by [] Visconti to see if financial pressure would cause JD Global to limit the term of the [2015] Commission Agreement." (*Id.* ¶ 37.) On June 1, 2016, D'Amato informed Visconti he would only sign an agreement "that accurately memorialized" the 2015 Commission Agreement. (*Id*. ¶ 38.) The next day, Red Sun Farms made

5

retroactive payments to JD Global for commission owed at the 0.85% rate and assured D'Amato a signed agreement was forthcoming. (*Id*.) Notwithstanding, Red Sun Farms made continued attempts to induce JD Global to accept a shorter duration arrangement. (*Id*. ¶ 39.)

In October 2017, D'Amato met with representatives of Red Sun Farms, including DiMenna and Visconti, to discuss "the parties' inability to reduce the [2015] Commission Agreement to writing." (*Id*. ¶ 40.) DiMenna and Visconti reassured D'Amato an acceptable draft was forthcoming. (*Id*.)

The parties continued to work together under the 2015 Commission Agreement without incident until October 2018. (*Id*. ¶ 41.) During a trade show, Visconti told D'Amato that Walmart, a customer under JD Global's account, would no longer do business with Red Sun Farms if D'Amato remained on the account. (*Id*. ¶¶ 42–43.) Thereafter, DiMenna and Visconti convened a call with D'Amato, informing him JD Global would still receive full commission on the Walmart sales, even if JD Global was removed from managing the account. (*Id*. ¶ 44.) DiMenna and Visconti also stated the 2015 Commission Agreement would need to be amended to reflect this arrangement. (*Id*.)

In various drafts sent to JD Global, Red Sun Farms attempted to repudiate the non-termination provision of the 2015 Commission Agreement that its executives had verbally accepted. (*Id*. ¶ 45.) The 2015 Commission Agreement was never reduced to writing.

In December 2020, Red Sun Farms began downgrading the produce supply sent to customers obtained by JD Global. (*Id*. ¶ 53.) JD Global warned Red Sun Farms of the potential loss of business if Red Sun Farms did not maintain its customers' expected service levels. (*Id*.) In addition, JD Global learned Red Sun Farms had been routinely supplying its customers with produce from outside vendors to satisfy produce demands, in violation of certain supply

6

agreements Red Sun Farms had with its customers. (*Id.* ¶ 55.) JD Global raised this issue with Red Sun Farms but received no reply. (*Id.*)

In May 2021, JD Global conducted a review of Red Sun Farms' sales to a retail customer, Aldi. (*Id.* ¶ 73.) Based on its analysis, JD Global learned Red Sun Farms increased the price Aldi paid by 9.5% from June 2019 to August 2019 to offset a duty imposed on imports of tomatoes from Mexico. (*Id.* ¶ 74.) Red Sun Farms never notified JD Global when the duty imposed "on the importation of tomatoes from Mexico had been settled, resulting in Aldi overpaying Red Sun Farms by hundreds of thousands of dollars." (*Id.* ¶ 75.) D'Amato asked Red Sun Farms to reimburse Aldi for the overpayment, but Red Sun Farms management "did not respond favorably" to the request. (*Id.* ¶ 76.)

On July 27, 2021, JD Global received notice from Red Sun Farms' counsel that JD Global's employment was terminated. (*Id.* ¶ 79.)

### 2. *JD Global and Paivarinta*

In early 2020, Red Sun Farms began virtual sales call meetings with Paivarinta. (*Id.* ¶ 56.) JD Global remained an independent contractor and had no obligation to attend. (*Id.* ¶ 57.) Nonetheless, D'Amato elected to join the sales calls led by Paivarinta. (*Id.*) During the sales calls, Paivarinta reportedly used sexual profanity and made other vulgar comments which D'Amato found to be offensive. (*Id.* ¶ 58.) Paivarinta purportedly bullied and badgered others on the calls. (*Id.* ¶ 59.) D'Amato believed Paivarinta's conduct "crossed the line" and violated Red Sun Farms' Code of Conduct. (*Id.* ¶ 61.) On February 10, 2021, D'Amato stopped attending the sales call meetings because of Paivarinta's conduct. (*Id.* ¶ 63.) D'Amato brought his concerns regarding Paivarinta's conduct to the attention of Visconti and DiMenna. (*Id.* ¶¶ 66, 68, 71.) Visconti and

DiMenna dismissed D'Amato's concerns, attributing Paivarinta's conduct "to his personality, and told [] D'Amato not to worry." (*Id.* ¶ 72.)

### 3. *VMI Model*

In late 2015, JD Global developed a Vendor Management Inventory sales modeling system (the "VMI Model") for servicing customer needs. (*Id.* ¶ 46.) The VMI Model is a spreadsheet in Microsoft Excel, which, based on the outputs it generated, facilitated sales coordination for Red Sun Farms. (*Id.* ¶ 48.) JD Global continued to enhance the VMI Model over six years and applied for copyright protection for the model in both the United States and Canada. (*Id.* ¶ 49.) JD Global trained the Red Sun Farms sales representatives on how to use the VMI Model. (*Id.* ¶ 50.) Upon termination of the relationship between JD Global and Red Sun Farms, D'Amato sent Red Sun Farms a notice demanding the deletion of all Microsoft Excel and other proprietary files JD Global provided while employed as an independent contractor. (*Id.* ¶ 80.)

### B. Procedural History

On November 11, 2021, JD Global filed its Complaint, alleging the following causes of action: (1) breach of contract (Count I); (2) breach of implied covenant of good faith and fair dealing (Count II); (3) promissory estoppel (Count III); (4) violation of the New Jersey Conscientious Employee Protection Act ("CEPA") (Count IV); (5) violation of the New Jersey Sales Representatives' Rights Act ("SRRA") (Count V); (6) fraudulent inducement (Count VI); (7) unjust enrichment and quantum meruit (Count VII); (8) copyright infringement (Count VIII); and (9) misappropriation of business information (Count IX).[3] (ECF No. 1 ¶¶ 81–180.)

---

[3] JD Global asserts Counts I through IX against Red Sun Farms and asserts Count IV against Paivarinta and Red Sun Farms. (ECF No. 1 ¶¶ 81–180.)

On January 14, 2022, Red Sun Farms and Paivarinta each filed a motion to dismiss. (ECF Nos. 17, 18.) On February 28, 2022, JD Global filed oppositions to the motions to dismiss. (ECF Nos. 23, 24.) On March 14, 2022, Red Sun Farms and Paivarinta each filed a reply. (ECF Nos. 27, 28.) On June 2, 2022, JD Global submitted a letter, requesting voluntary dismissal of its copyright infringement (Count VIII). (ECF No. 32.) On June 3, 2022, the Court granted the request. (ECF No. 33.)

## II.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court

may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III.   DECISION

Red Sun Farms moves to dismiss the Complaint in its entirety, arguing JD Global fails to state any claim for relief. (Red Sun Farms' Mot. Br. (ECF No. 17-1).) Paivarinta moves to dismiss the violation of CEPA claim—the only claim asserted against him in the Complaint. (Paivarinta's Mot. Br. (ECF No. 18-1).) The Court addresses each in turn.

### A.   Breach of Contract (Count I)

Red Sun Farms argues the breach of contract claim is subject to dismissal because the Complaint does not allege a breach of an existing contract, and an orally promised lifetime employment agreement is unenforceable. (ECF No. 17-1 at 14–16.) JD Global responds the oral promise by Red Sun Farms formed a binding agreement and the Complaint adequately states a breach of contract claim under New Jersey law as applied to perpetual employment agreements. (ECF No. 23 at 16–17, 25–33.)

Under New Jersey law, to satisfy the pleading requirements for a breach of contract claim, a plaintiff must allege, "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). "A contract need not be

[] reduced to a single writing, or any writing at all, to form the basis of a breach of contract claim." *ABD Monroe, Inc. v. Monroe Twp.*, Civ. A. No. 04-1412, 2008 U.S. Dist. LEXIS 242, at *36 (D.N.J. Jan. 3, 2008); *see also McBarron v. Kipling Woods, LLC*, 838 A.2d 490, 491 (N.J. Super. Ct. App. Div. 2004) (stating "parties may orally, by informal memorandum, or by both agree upon all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking"). Rather, an oral contract may be formed "as long as the parties agreed to do something that they previously did not have an obligation to do." *Marilyn Manson v. N.J. Sports & Exposition Auth.*, 971 F. Supp. 875, 888 (D.N.J. 1997).

An oral contract "must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (1992) (quoting *W. Caldwell v. Caldwell*, 138 A.2d 402, 410 (1958)). "This requires that the parties agree 'on essential terms and manifest an intention to be bound by those terms.'" *Goen Techs. Corp. v. NBTY, Inc.*, Civ. A. No. 05-4597, 2007 U.S. Dist. LEXIS 65396, at *6 (D.N.J. Sept. 4, 2007) (quoting *Weichert*, 608 A.2d at 284); *see also Marilyn Manson*, 971 F. Supp. at 888. "Where the parties do not agree to one or more essential terms, however, courts generally hold that the agreement is unenforceable." *Weichert*, 608 A.2d at 284; *Assadourian v. Harb*, Civ. A. No. 06-896, 2010 U.S. Dist. LEXIS 61364, at *10–11 (D.N.J. June 21, 2010). Further, to enforce a contractual agreement, there must be privity of contract between the parties. *See Gherardi v. Bd. of Ed. of City of Trenton*, 147 A.2d 535, 541 (N.J. Super. Ct. App. Div. 1958) (finding because defendants "did not have any contractual obligations or agreement with plaintiff, they could not, under any theory, be liable to him for any breach of contract since clearly there was no privity of contract between the parties").

Here, the Complaint alleges that, in February 2015, an oral agreement—the 2015 Commission Agreement—was entered into between JD Global and executives of Red Sun Farms, whereby the parties agreed to abandon the 2014 Agreement and begin making commission payments reflecting the new arrangement as of January 2016. (ECF No. 1 ¶¶ 22, 26, 83.) The Complaint sets forth the essential terms of the 2015 Commission Agreement, including that JD Global would engage new large retail customers for the benefit of Red Sun Farms, JD Global would accept a below-market commission rate for its services, and Red Sun Farms would provide lifetime job security to JD Global terminable only for cause. (*Id*. ¶¶ 83–86.) The Complaint alleges executives of Red Sun Farms "ratified" the terms of the agreement on several occasions in future discussions with JD Global, and JD Global performed its contractual obligations under the 2015 Commission Agreement, including obtaining new large retail customers for Red Sun Farms. (*Id*. ¶¶ 83–84, 87) Thereafter, on July 27, 2021, Red Sun Farms terminated its relationship with JD Global without cause in violation of the 2015 Commission Agreement, and as a result, incurred damages. (*Id*. ¶¶ 88–90.) As pleaded, JD Global sufficiently alleges facts to state a breach of contract claim.

Red Sun Farms relies heavily on *Savarese v. Pyrene Manufacturing Co.*, 89 A.2d 237 (N.J. 1952), arguing courts disfavor lifetime employment contracts and lifetime employment contracts are unenforceable absent a clear expression of intent to be bound. (ECF No. 17-1 at 16–18.) Red Sun Farms asserts there was no clear and unequivocal express intent to enter into a lifetime duration contract. (*Id*. at 17–18.) However, JD Global is not required to prove intent at this stage. *Blackberry Ltd. v. PCS Wireless LLC,* Civ. A. No. 15-1070, 2016 U.S. Dist. LEXIS 45241, at *9 (D.N.J. Apr. 4, 2016) ("The parties' intent at the time the contract was drafted . . . is ill-suited to resolution on a motion to dismiss."). For the purposes of a motion to dismiss, it is sufficient for JD

Global to plead facts supporting the allegations that the parties expressed their intent to enter into the 2015 Commission Agreement.[4] Accordingly, because JD Global has adequately alleged facts to support a breach of contract claim, Red Sun Farms' motion to dismiss Count I is **DENIED.**[5]

### B.    Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)

Red Sun Farms contends the breach of implied covenant claim should be dismissed because it is duplicative of the breach of contract claim. (ECF No. 17-1 at 22–23.) JD Global contends its breach of implied covenant claim is adequately pleaded and federal rules allow claims to be pleaded in the alternative. (ECF No. 23 at 35–39.)

Pursuant to New Jersey law, all contracts have an implied covenant of good faith and fair dealing, which prohibits either party from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 270 (3d Cir. 2004) (citations omitted); *see Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395–96 (N.J. 2005); *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1145–46 (N.J. 2001). In order to succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must plead: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms

---

[4] In *Savarese*, the Supreme Court of New Jersey reviewed the trial court's decision on a motion for summary judgment, not a motion to dismiss. 89 A.2d at 238. To the extent Red Sun Farms requests the Court rely on emails or fact certifications from Defendants to conclude there was no clear intent on the part of Red Sun Farms to be bound by the 2015 Commission Agreement, the Court may not consider any "[f]actual claims and assertions raised by a defendant" on a motion to dismiss when those assertions contradict the well-pleaded facts in the Complaint. *Princeton Univ.*, 2022 U.S. App. LEXIS 8499, at *11.

[5] Further, because there must be privity of contract between parties for an agreement to be enforceable, JD Global cannot maintain a breach of contract claim against a Red Sun Farms entity, *i.e.* Jem D International or Jem D Michigan, to the extent DiMenna and Visconti were not representatives of the entity at the time the 2015 Commission Agreement was entered into, as there would be no privity of contract. *Gherardi*, 147 A.2d at 541.

14

of the contract, unless excused; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm. *Wade v. Kessler Inst.*, 778 A.2d 580, 586 (N.J. Super. Ct. App. Div. 2001), *aff'd as modified*, 798 A.2d 1251 (N.J. 2002). "A plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 267 (3d Cir. 2008) (quoting *Brunswick Hills Racquet Club, Inc.*, 864 A.2d at 396); *Graco, Inc. v. PMC Global, Inc.*, Civ. A. No. 08-1304, 2009 U.S. Dist. LEXIS 26845, at *45 (D.N.J. Mar. 31, 2009) ("A defendant who acts with improper purpose or ill motive may be found liable for breaching the implied covenant if the breach upsets the plaintiff's reasonable expectations under the agreement.").

"However, breach of the implied covenant of good faith and fair dealing does not create an independent cause of action when it is based on the same underlying conduct as the breach of contract claim." *Hills v. Bank of Am.*, Civ. A. No. 13-4960, 2015 U.S. Dist. LEXIS 32502, at *8 (D.N.J. Mar. 17, 2015) (citing *Tredo v. Ocwen Loan Servicing*, Civ. A. No. 14-3013, 2014 U.S. Dist. LEXIS 145731, at *15 (D.N.J. Oct. 10, 2014) (citing *Wade*, 798 A.2d at 1259–60)); *Hahn v. OnBoard LLC*, Civ. A. No. 09-3639, 2009 U.S. Dist. LEXIS 107606, at *15 (D.N.J. Nov. 16, 2009) ("In . . . New Jersey, a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of

contract."). Instead, breach of the implied covenant of good faith and fair dealing may be an independent cause of action under three limited circumstances:

> (1) to allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent with the parties' contractual expectations; (2) to allow redress for a contracting party's bad-faith performance of an agreement, when it is a pretext for the exercise of a contractual right to terminate, even where the defendant has not breached any express term; and (3) to rectify a party's unfair exercise of discretion regarding its contract performance.

*Kumon N. Am., Inc. v. Timban*, Civ. A. No. 13-4809, 2014 U.S. Dist. LEXIS 84907, at *22–23 (D.N.J. June 23, 2014) (quoting *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 365 (D.N.J. 2006)).

Here, the Complaint contains detailed factual allegations to plead the existence of a contract between the parties—the 2015 Commission Agreement. The Complaint alleges JD Global performed under the terms of the agreement by retaining new large customers for the benefit of Red Sun Farms and performed the services at a below-market commission rate. JD Global asserts Red Sun Farms engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving JD Global of the rights and benefits under the contract, such as withholding commission payments for services performed "to see if financial pressure would cause JD Global to limit the term of the [2015] Commission Agreement." (ECF No. 1 ¶¶ 36–37.) Even after Red Sun Farms made retroactive payments to JD Global for commission it was owed while promising JD Global a signed agreement would be forthcoming, "all that followed were continued attempts by Red Sun Farms to induce JD Global to retract the [2015] Commission Agreement and agree to an arrangement of shorter duration." (*Id*. ¶¶ 38–39.) These allegations are sufficient to demonstrate acts of ill motive by Red Sun Farms to the detriment of JD Global. As pleaded, the Complaint states an independent breach of the implied covenant of good faith and fair dealing

16

claim based on different underlying conduct as that of the breach of contract claim. JD Global has pleaded facts in support of its allegations that—even if Red Sun Farms did not breach any agreement—"it exercised unfair discretion regarding its contract performance to the 'effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Hills*, 2015 U.S. Dist. LEXIS 32502, at *9 (citing *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1074 (N.J. Super. Ct. App. Div. 2002)).

At this stage, the Court is guided by liberal pleading standards and draws all inferences in the light most favorable to JD Global. *See Alin v. Am. Honda Motor Co.*, Civ. A. No. 08-4825, 2010 U.S. Dist. LEXIS 32584, at *32–33 (D.N.J. Mar. 31, 2010) (finding the plaintiff stated a claim for breach of good faith and fair dealing due to "unfair exercise of discretion" where plaintiff alleged defendant, *inter alia*, refused to cover certain repairs under a warranty). Accordingly, Red Sun Farms' motion to dismiss Count II is **DENIED**.

### C.     Promissory Estoppel (Count III)

Red Sun Farms argues the promissory estoppel claim is not sustainable as a matter of law because: (1) the promise for lifetime employment was not "clear or definite"; (2) there are no allegations Red Sun Farms expected JD Global would rely on the alleged promise for lifetime employment; (3) JD Global should not have relied on the alleged promise; and (4) the detriment JD Global alleges for relying on the promise is entirely speculative. (ECF No. 17-1 at 23–25.) JD Global argues the Complaint sufficiently alleged the requisite elements of a promissory estoppel claim. (ECF No. 23 at 54–57.)

Under New Jersey law, a claim for promissory estoppel must satisfy four elements: "1) a clear and definite promise; 2) made with the expectation the promisee will rely on it; 3) reasonable reliance; and 4) definite and substantial detriment." *Cotter v. Newark Hous. Auth.*, 422 F. App'x

95, 99 (3d Cir. 2011) (quoting *Toll Bros. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008)).

Here, the Complaint alleges DiMenna and Visconti "unequivocally told [] D'Amato that Red Sun Farms would proceed with the terms of the [2015] Commission Agreement" (ECF No. 1 ¶ 26), and "Red Sun Farms executives twice ratified the [2015] Commission Agreement" (*id.* ¶ 87). The Complaint asserts Red Sun Farms made those representations with the reasonable expectation JD Global would rely on them. (*Id.* ¶ 105.) Indeed, JD Global allegedly informed Visconti it would only sign an agreement accurately memorializing the duration and termination protections verbally agreed upon, to which Visconti promised a signed agreement would be forthcoming. (*Id.* ¶ 38.) The Complaint also alleges JD Global reasonably relied on Red Sun Farms' representation to its detriment because it forewent other employment opportunities based on the promise of lifetime employment, agreed to a below-market rate for its commission payments, agreed to pay its own out-of-pocket and healthcare costs, and invested time in developing and maintaining large retail accounts for Red Sun Farms. (*Id.* ¶ 106.) As pleaded, the Complaint sufficiently alleges facts to state a promissory estoppel claim.

Moreover, to the extent Red Sun Farms contends there could not be reasonable reliance on the part of JD Global because Red Sun Farms rejected the lifetime employment proposal (ECF No. 17-1 at 24–25), the Court is required to accept the allegations in the Complaint as true at this stage. Similarly, to the extent Red Sun Farms argues the detriment alleged is entirely speculative and "no lost opportunity is identified or even described with particularity" (*id.* at 25), the argument is unavailing because that amount of detail is not required to survive a motion to dismiss. *See In re Tower Air, Inc.*, 416 F.3d 229, 237 (3d Cir. 2005) ("[A] plaintiff will not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts."). The Complaint need only provide fair notice

18

of JD Global's claim and the ground upon which it rests. *See Myers v. MedQuist, Inc.*, Civ. A. No. 05-4608, 2006 U.S. Dist. LEXIS 91904, *24 (D.N.J. Dec. 20, 2006). Accordingly, Red Sun Farms' motion to dismiss Count III is **DENIED**.

### D.  CEPA Claim (Count IV)

In moving to dismiss the CEPA claim, Red Sun Farms and Paivarinta argue the claim fails because JD Global is the only named plaintiff in this action and corporations are not a protected class under CEPA. (ECF No. 17-1 at 33; ECF No. 18-1 at 5–7.) JD Global argues the definition of "employee" under CEPA is broad and should be extended to protect corporations. (ECF No. 23 at 47; ECF No. 24 at 12–16.) The Court disagrees.

CEPA provides, in relevant part:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes . . . is in violation of a law, or a rule or regulation promulgated pursuant to law . . . [or]
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;
>
> (2) is fraudulent or criminal . . . ;
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J. Stat. Ann. § 34:19-3. CEPA aims to afford broad protection to employees who report suspected violations of law or public policy from an employer's retaliatory acts. *See* N.J. Stat. Ann. § 34:19-1, *et seq*. Importantly, CEPA defines an "employee" as "any *individual* who performs

services for and under the control and direction of an employer for wages or other remuneration."

N.J. Stat. Ann. § 34:19-2 (emphasis added); *see also D'Annunzio v. Prudential Ins. Co. of Am.*,

927 A.2d 113, 119 (N.J. 2007).

Here, JD Global is a corporation and the only plaintiff named in the action. JD Global has

not identified, nor is the Court aware of, any authority expanding CEPA protections to

corporations. Because the statute defines an "employee" as "any individual," JD Global lacks

standing to pursue a CEPA claim. Accordingly, the motions to dismiss Count IV by Paivarinta and

Red Sun Farms are **GRANTED.**

### E.      New Jersey Sales Representatives' Rights Act Claim (Count V)

Red Sun Farms argues the New Jersey SRRA claim should be dismissed because JD Global

was fully compensated pursuant to the 2014 Agreement. (ECF No. 17-1 at 37.) JD Global argues

Red Sun Farms failed to pay the commission owed to it under the 2015 Commission Agreement.

(ECF No. 23 at 16.)

"The SRRA protects sales representatives against the nonpayment of commissions."

*Brownstone Specialty Fin., Inc. v. Freedom Mortg. Corp.*, 736 F. App'x 333, 334 (3d Cir. 2018).

The SRRA provides, in relevant part:

> When a contract between a principal and a sales representative to
> solicit orders is terminated, the commissions and other
> compensation earned as a result of the representative relationship
> and unpaid shall become due and payable within 30 days of the date
> the contract is terminated or within 30 days of the date commissions
> are due, whichever is later.

N.J. Stat. Ann. § 2A:61A-2. The SRRA defines "commission" as "compensation accruing to a

sales representative for payment by a principal, . . . the rate of which is expressed as a percentage

of the dollar amount of orders or sales or as a specified amount per order or per sale." N.J. Stat.

Ann. § 2A:61A-1(a).

Here, Red Sun Farms engaged JD Global to solicit new clients on its behalf and agreed to pay JD Global a commission for its services. (ECF No. 1 ¶ 126.) JD Global alleges it is entitled to be paid a 0.85% commission on produce sold to clients JD Global obtained for Red Sun Farms pursuant to the 2015 Commission Agreement. (*Id.* ¶ 127.) Red Sun Farms allegedly terminated its relationship with JD Global without cause in violation of the 2015 Commission Agreement and JD Global seeks payment for commissions owed to it under the 2015 Commission Agreement. (*Id.* ¶¶ 128–33.) As pleaded, JD Global has stated a claim for violation of the New Jersey SRRA. To the extent Red Sun Farms contends the SRRA claim fails because JD Global was fully compensated under the 2014 Agreement, Red Sun Farms conflates the 2014 Agreement with the 2015 Commission Agreement. Indeed, the allegations in the Complaint pertaining to the SRRA claim are directed at the 2015 Commission Agreement. Moreover, to the extent Red Sun Farms argues the 2014 Agreement is the only agreement that exists, the Court must accept the allegations in the Complaint as true at this stage. Accordingly, Red Sun Farms' motion to dismiss Count V is **DENIED**.

### F.    Fraudulent Inducement (Count VI)

Red Sun Farms argues the fraudulent inducement claim should be dismissed because: (1) the fraud-related allegations do not satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b); (2) the Complaint fails to sufficiently allege the legal elements of fraudulent inducement; and (3) the fraudulent inducement claim is barred by the economic loss doctrine. (ECF No. 17-1 at 25–30.) JD Global argues it has pleaded the fraudulent inducement claim with particularity and the economic loss doctrine does not apply when misrepresentations are used to induce another into entering an agreement. (ECF No. 23 at 40–45.)

"Under New Jersey law, a fraudulent inducement claim comprises five elements: (1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *CDK Global, LLC v. Tulley Auto. Grp.*, Civ. A. No. 15-3103, 2016 U.S. Dist. LEXIS 57186, at *9 (D.N.J. Apr. 29, 2016) (citing *Metex Mfg. Corp. v. Manson*, Civ. A. No. 05-2948, 2008 U.S. Dist. LEXIS 25107, at *12 (D.N.J. Mar. 28, 2008)). "Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico*, 507 F.3d at 200 (alteration in original) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)). Rule 9(b) provides "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, as the Supreme Court has stated,

> 'generally' is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 . . . does not give him license to evade the less rigid—though still operative—strictures of Rule 8. . . . And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss.

*Iqbal*, 556 U.S. at 686–87 (internal citations omitted).

The Third Circuit has taught, in applying Rule 9(b), "focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Christidis v. First Pa. Mortg. Tr.*, 717 F.2d 96, 100 (3d Cir. 1983) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 407 (1969)). "To satisfy this standard, the plaintiff must plead or allege the date, time and place

of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200 (citing *Lum*, 361 F.2d at 224).

"The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Qile Chen v. HD Dimension, Corp.*, Civ. A. No. 10-863, 2010 U.S. Dist. LEXIS 120599, at *24 (D.N.J. Nov. 15, 2010) (quoting *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002)); *Atlas Acquisitions, LLC v. Porania, LLC*, Civ. A. No. 18-17524, 2019 U.S. Dist. LEXIS 200564, at *6– 7 (D.N.J. Nov. 19, 2019) ("Under New Jersey law, a plaintiff typically may not recover in tort for damages caused by a breach of contract . . . ."). "Fraud claims can proceed alongside breach of contract claims where there exists fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations." *RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (quoting *Barton v. RCI, LLC*, Civ. A. No. 10-3657, 2011 U.S. Dist. LEXIS 80134, *19 (D.N.J. July 22, 2011)). "Generally, fraud claims that are extrinsic to the underlying contract, and consequently not barred under the economic loss doctrine, are claims for fraudulent inducement." *Touristic Enters. Co. v. Trane Inc.*, Civ. A. No. 09-02732, 2009 U.S. Dist. LEXIS 106145, at *6 (D.N.J. Nov. 13, 2009) (citations omitted). "[T]he 'critical issue' with regard to economic loss 'is whether the allegedly tortious conduct is extraneous to the contract.'" *Bracco Diagnostics, Inc.*, 226 F. Supp. 2d at 564 (quoting *Emerson Radio Corp. v. Orion Sales, Inc.*, Civ. A. No. 95-6455, 2000 U.S. Dist. LEXIS 487, at *22 (D.N.J. Jan. 10, 2000), *aff'd*, 253 F.3d 159 (3d Cir. 2001)). That is, "[i]f a plaintiff asserts that a defendant breached a duty owed to the plaintiff that is independent of the duties that arose under the contract, the economic loss doctrine does not apply." *Atlas Acquisitions*, 2019 U.S. Dist. LEXIS 200564, at *7 (D.N.J. Nov. 19, 2019) (citing *Montclair State Univ. v. Oracle USA, Inc.*, Civ. A. No. 11-2867, 2012 U.S. Dist. LEXIS

119509, at *30–31 (D.N.J. Aug. 23, 2012)). Further, "[t]he doctrine does not apply . . . when a party uses misrepresentations to induce another into entering an agreement." *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 418 (D.N.J. 2021) (citing *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 465 (D.N.J. 2020)).

Here, the Complaint alleges in February 2015, DiMenna and Visconti promised to supply JD Global with lifetime employment on a commission basis and made this representation to induce JD Global to enter into the 2015 Commission Agreement and obtain new large retail clients for Red Sun Farms. (ECF No. 1 ¶¶ 137–38.) The Complaint asserts Red Sun Farms had no intention of continuing to partner in good faith with JD Global once Red Sun Farms developed relationships with the retailers JD Global obtained. (*Id.* ¶ 139.) In January 2016 and April 2016, DiMenna and Visconti reassured JD Global a signed contract memorializing the 2015 Commission Agreement was forthcoming while JD Global performed its contractual obligations to strengthen Red Sun Farms' customer relationships. (*Id.* ¶¶ 31, 34, 38, 39, 141.) JD Global relied on the alleged misrepresentation of lifetime employment to its detriment, including accepting a below-market commission rate and forgoing other employment opportunities. *See Durr Mech. Constr.*, 516 F. Supp. 3d at 418–19 (finding a fraudulent inducement claim was sufficiently stated where the defendant "allegedly misrepresented and withheld material information regarding the conditions of the Project" prior to contract formation, and the plaintiff "entered into the contract only because it believed those misrepresentations"). As pleaded, JD Global has adequately stated a fraudulent inducement claim with particularity to satisfy Rule 9(b).

Moreover, to the extent Red Sun Farms contends the Complaint does not allege a presently existing fact was misrepresented to JD Global because lifetime employment is a future event (ECF No. 17-1 at 27–28), the argument is unavailing because the parties' promise to enter into a lifetime

employment contract was the presently existing fact at the time of agreement. *Travelodge Hotels, Inc. v. Honeysuckle Enters.*, 357 F. Supp. 2d 788, 796–97 (D.N.J. 2005) ("Although 'a promise to do something in the future will not normally suffice . . . where a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud.'") (quoting *Ramada Franchise Sys., Inc. v. Polmere Lodging Corp.*, Civ. A. No. 98-2809, 1999 U.S. Dist. LEXIS 23435, at *7–8 (D.N.J. July 30, 1999)).

Further, the economic loss doctrine does not apply here because the alleged misrepresentations regarding the promise for lifetime employment induced JD Global to enter the 2015 Commission Agreement. *See Wilhelm Reuss GmbH & Co. KG, Lebensmittelwerk v. E. Coast Warehouse & Distrib. Corp.,* Civ. No. 16-4370, 2018 U.S. Dist. LEXIS 106442, at *17–18 (D.N.J. June 26, 2018) (finding the economic loss doctrine did not apply where the defendant's misrepresentation regarding its insurance coverage induced the plaintiff to enter the contract); *G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 585 (D.N.J. 2014) (finding the economic loss doctrine did not apply where the seller of a printing press misrepresented the product's model to induce the plaintiff to purchase it). Therefore, the fraudulent inducement claim based on misrepresentations made to induce JD Global to contract with Red Sun Farms is distinct from a claim alleging breach of the contractual obligations provided for in the agreement. Accordingly, because JD Global has adequately stated a claim for fraudulent inducement, Red Sun Farms' motion to dismiss Count VI is **DENIED.**

## G.    **Unjust Enrichment & Quantum Meruit (Count VII)**

Red Sun Farms argues the unjust enrichment and quantum meruit claim cannot be maintained and should be dismissed because JD Global seeks to recover on an alleged express

contract which governs the relationships and dealings of the parties involved.[6] (ECF No. 17-1 at 38–40.) JD Global argues the federal rules allow claims to be pleaded in the alternative and the unjust enrichment and quantum meruit claim "stands if the Court finds that the parties never came to terms on the [2015] Commission Agreement." (ECF No. 23 at 35, 39.)

To state a claim for recovery based on quantum meruit, a plaintiff must establish four elements: (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefore; and (4) the reasonable value of the services. *Starkey, Kelly, Blaney, & White v. Estate of Nicolaysen*, 796 A.2d 238, 242–43 (N.J. 2002) (citing *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 98 (2d Cir. 1994)). The related theory of unjust enrichment involves two essential elements: (1) a plaintiff must demonstrate that a defendant received a benefit; and (2) that retention of that benefit would be unjust. *TBI Unlimited, LLC v. Clearcut Lawn Decisions, LLC*, Civ. A. No. 12-3355, 2013 U.S. Dist. LEXIS 41206, at *13–14 (D.N.J. Mar. 25, 2013) (citing *MK Strategies, LLC v. Ann Taylor Stores Corp.*, Civ. A. No. 07-2519, 2007 U.S. Dist. LEXIS 90136, at *8–9 (D.N.J. Dec. 6, 2007)).

"Although litigants may plead alternative and inconsistent claims, Fed. R. Civ. P. 8(d)(2) & (3), courts have on numerous occasions dismissed under Rule 12(b)(6) unjust enrichment claims that relate to the same subject matter as valid contracts." *Premier Pork, L.L.C. v. Westin, Inc.*, Civ. A. No. 07-1661, 2008 U.S. Dist. LEXIS 20532, at *42 (D.N.J. Mar. 17, 2008) (citing *Estate of Gleiberman v. Hartford Life Ins. Co.*, 94 F. App'x 944, 947 (3d Cir. 2004); *Royale Luau Resort v. Kennedy Funding*, Civ. A. No. 07-1342, 2008 U.S. Dist. LEXIS 11902, *31 (D.N.J. Feb. 19, 2008); *Kohn v. Haymount Ltd. P'ship, LP (In re Int'l Benefits Grp., Inc.)*, Civ. A. No. 06-2363, 2007 U.S.

---

[6] Although unjust enrichment and quantum meruit are separate causes of action, JD Global pleaded them together under a single Count. Accordingly, the Court addresses the claims together.

Dist. LEXIS 46889, *11 (D.N.J. June 28, 2007); *Oswell v. Morgan Stanley Dean Witter & Co.*, Civ. A. No. 06-5814, 2007 U.S. Dist. LEXIS 44315, *29 (D.N.J. June 18, 2007).[7] "Claims for unjust enrichment . . . are only supportable when the parties' rights are not governed by a valid, enforceable contract." *Estate of Gleiberman*, 94 F. App'x at 947 (citing *Suburban Transfer Service, Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226–27 (3d Cir. 1983)); *see also Bowen v. Bank of Am.*, Civ. A. No. 14-353, 2015 U.S. Dist. LEXIS 124871, at *11 (D.N.J. Sept. 18, 2015) ("[L]iability for unjust enrichment 'will not be imposed . . . if an express contract exists concerning the identical subject matter.'") (quoting *Suburban Transfer Serv.*, 716 F.2d at 226–27); *Garcia v. Prudential Life Ins. Co.*, Civ. A. No. 08-5756, 2009 U.S. Dist. LEXIS 120834, at *41 (D.N.J. Dec. 29, 2009) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied where there is an express agreement.") (citations omitted). Similarly, claims for quantum meruit "cannot exist when there is an existing express contract about the identical subject." *Fintech Consulting v. ClearVision Optical Co.*, Civ. A. No. 12-4956, 2013 U.S. Dist. LEXIS 61182, at *12 (D.N.J. Apr. 30, 2013) (quoting *Moser v. Milner Hotels*, 78 A.2d 393, 394 (N.J. 1951)).

Here, the Complaint alleges Red Sun Farms and JD Global entered into an oral agreement—the 2015 Commission Agreement—which governs the relationship and dealings of the parties. The allegations in the unjust enrichment and quantum meruit claim consist of the same subject matter as the breach of contract claim. While liability based on unjust enrichment and quantum meruit cannot be imposed if an express contract exists, pleading claims in the alternative

---

[7] Fed. R. Civ. P. 8(d)(2) provides, "[a] party may set out two or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(3) provides, "[a] party may state as many separate claims . . . as it has, regardless of consistency."

is appropriate here where Red Sun Farms challenges the existence of the agreement. *See Power-Matics, Inc. v. Ligotti*, 79 N.J. Super. 294, 304–05 (App. Div. 1963) ("[E]xpress contract and quantum meruit may be alternatively pleaded if the pre-requisite rescission has also been pleaded or is unnecessary because the alleged express contract was actually void or did not exist."). At this stage, the Court makes no determination as to whether the 2015 Commission Agreement is valid or exists. Rather, the Court finds JD Global has adequately pleaded the existence of an oral agreement for services, a fact contested by Red Sun Farms. Therefore, it would be premature at this stage to dismiss the unjust enrichment and quantum meruit claim. *See Schweikert v. Baxter Healthcare Corp.*, Civ. A. No. 12-5876, 2013 U.S. Dist. LEXIS 67355, at *19 (D.N.J. May 10, 2013) (observing courts in this district "regularly have refused to dismiss an adequately pled quasi-contract claim even when a[n] express contract is alleged to govern the parties' relationship"); *see, e.g., In re K–Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (finding it would be premature to dismiss the unjust enrichment claim on a motion to dismiss as the plaintiffs were "clearly permitted to plead alternative theories of recovery"); *Maniscalco v. Brother Intern. Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009) (finding "[a]n unjust enrichment claim may be sustained independently as an alternative theory of recovery"); *S. Broward Hosp. Dist. v. MedQuist, Inc.*, 516 F. Supp. 2d 370, 386 (D.N.J. 2007) (rejecting argument New Jersey law precludes pleading quasi-contract claims in alternative to express contract claims). Accordingly, Red Sun Farms' motion to dismiss Count VII is **DENIED**.

### H.    Misappropriation of Business Information Claims (Count IX)

Red Sun Farms argues the misappropriation of business information claim should be dismissed because Red Sun Farms is not using the VMI Model. (ECF No. 17-1 at 40–43.) Red Sun Farms contends the allegations stated upon "'information and belief' . . . are not facially plausible."

(*Id.* at 43.) In support of the argument, Red Sun Farms asserts JD Global "does not acknowledge that D'Amato demonstrably knew that Jem D Michigan and Jem D International were and are using only their own system for inventory management, and so directed their sales personnel as to same months ago." (*Id.*) However, at the motion to dismiss stage, it is not appropriate for the Court to rely on facts asserted by Red Sun Farms that contest the well-pleaded facts in the Complaint. *See Princeton Univ.*, 2022 U.S. App. LEXIS 8499, at *11. Red Sun Farms does not raise any other arguments for why the misappropriation of business information claim warrants dismissal. *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 n.11 (3d Cir. 2016) (quoting *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (finding on a motion to dismiss, "[t]he defendant bears the burden of showing that no claim has been presented")). Accordingly, Red Sun Farms' motion to dismiss Count IX is **DENIED.**[8]

---

[8] JD Global requests leave to amend its Complaint to the extent any of its claims are dismissed. (ECF No. 23 at 65.) "A general presumption exists in favor of allowing a party to amend its pleadings." *Hunter v. Dematic USA*, Civ. A. No. 16-00872, 2016 U.S. Dist. LEXIS 65167, at *12 (D.N.J. May 18, 2016) (citing *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984)). "Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith on the part of the movant as long as the amendment would not be futile and the opposing party would not suffer undue prejudice." *Id.* (citations omitted); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."). Accordingly, JD Global is permitted to cure any deficiencies and file an amended complaint.

**IV.    CONCLUSION**

For the reasons set forth above, Red Sun Farms' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, and Paivarinta's motion to dismiss is **GRANTED.** An appropriate order follows.

> */s/ Brian R. Martinotti*
> **HON. BRIAN R. MARTINOTTI**
> **UNITED STATES DISTRICT JUDGE**

Dated:  August 3, 2022