# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JD GLOBAL SALES, INC. and JAMES D'AMATO, <br><br> Plaintiffs, <br><br> v. <br><br> JEM D INTERNATIONAL PARTNERS, LP, JEM D. INTERNATIONAL (MICHIGAN) INC., HAROLD PAIVARINTA, JIM DIMENNA, CARLOS VISCONTI, and ABC COMPANIES 1-10, representing the fictitious names of entities that do business as RED SUN FARMS whose identities are unknown, <br><br> Defendants. | Civil Action No. 2:21-19943 <br><br> Honorable Brian R. Martinotti, U.S.D.J. <br> Honorable Michael A. Hammer, U.S.M.J. <br><br> **JOINT PROPOSED DISCOVERY PLAN** <br><br> Document Electronically Filed |

1.      Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.

Karim G. Kaspar
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068
Tel.: (973) 597-2390
*Attorneys for Plaintiffs*

Craig Dashiell
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068
Tel.: (973) 597-2370
*Attorney for Plaintiffs*

Joseph H. Tringali
Bendit Weinstock, P.A.
80 Main Street, Suite 260
West Orange, New Jersey 07052
Tel.: (973) 736-9800
*Attorneys for Defendants Jem D. International Partners, LP, Jem D. International (Michigan) Inc., Jim DiMenna, and Carlos Visconti*

Brent R. Pohlman
Mandelbaum Barrett PC
3 Becker Farm Road, Suite 105
Tel.: (973) 736-4600
*Attorneys for Defendant Harold Paivarinta*

Raj Gadhok
Mandelbaum Barrett PC
3 Becker Farm Road, Suite 105
Tel.: (973) 736-4600
*Attorneys for Defendant Harold Paivarinta*

-1-

2.        Set forth a brief description of the case, including the causes of action and defenses asserted.

**Plaintiffs' Position:**

Plaintiff James D'Amato is a sales consultant based in Glen Rock, New Jersey who provides services through a single purpose entity, JD Global Sales, Inc. ("JD Global"). JD Global is also a Plaintiff in this action. In 2014, Defendants recruited and hired JD Global to sell produce on behalf of Red Sun Farms—an international produce grower and wholesaler. Red Sun Farms is comprised of multiple domestic and foreign entities, with principal operations in the United States, Mexico and Canada. Defendants are individuals and entities that are part of Red Sun Farms.

JD Global initially signed an agreement with the Jem D. International (Michigan) Inc. entity within Red Sun Farms to sell produce as an independent contractor on a salary basis. Mr. D'Amato provided services to Red Sun Farms on behalf of JD Global under this agreement, from New Jersey. Over a series of discussions in 2015 between Mr. D'Amato and Defendants Carlos Visconti and Jim DiMenna (executives at Red Sun Farms who recruited JD Global), JD Global and Red Sun Farms came to a new arrangement. Specifically, Visconti and DiMenna orally promised that Red Sun Farms would provide JD Global with perpetual employment, terminable only for cause, in exchange for JD Global obtaining new large retail accounts for Red Sun Farms, with JD Global to be paid a commission on produce sold to those accounts, rather than a salary, for the duration of that agreement (the "Commission Agreement"). Mr. D'Amato, Visconti, and DiMenna specifically agreed that the Commission Agreement would replace JD Global's original agreement. In exchange for the job security the Commission Agreement offered, JD Global agreed to accept a below-market commission rate from Red Sun Farms and forewent other employment opportunities. Thereafter, JD Global landed major retail accounts for Red Sun Farms, including with Walmart and Aldi, that generated hundreds of millions of dollars for Red Sun Farms.

Over the course of the Commission Agreement, Mr. D'Amato continued to provide services to Red Sun Farms on behalf of JD Global from New Jersey, including sharing propriety vendor management tools to aid Red Sun Farms with managing customer accounts. During this time, the parties periodically revisited reducing the Commission Agreement to writing but could not agree upon the form of the agreement.

While providing services to Red Sun Farms on behalf of JD Global, Mr. D'Amato reported various inappropriate business practices at Red Sun Farms, including the hostile work environment Defendant Harold Paivarinta subjected him to during virtual sales meetings. No action was taken to address Mr. D'Amato's concerns. Instead, Red Sun Farms retaliated against Mr. D'Amato by terminating the Commission Agreement, without cause to do so. At the time, JD Global remained ready and able to provide services to Red Sun Farms. Red Sun Farms further refused to confirm to Mr. D'Amato that it had removed JD Global's proprietary materials from its system.

Based on the forgoing, Plaintiffs assert eight causes of action against Defendants: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel/equitable estoppel; (4) violation of the Conscientious Employee Protection Act; (5) violation of the New Jersey Sales Representatives' Rights Act; (6) fraudulent inducement; (7) unjust enrichment/quantum meruit; and (8) misappropriation of business information. Defendants have filed pending motions to dismiss Plaintiffs' Amended Complaint.

**Defendants' position(s):**

[SEE ATTACHED]

3.     Have settlement discussions taken place? Yes _____ No ___X_____

(a) What was plaintiff's last demand?

        (1) Monetary demand: $ 10,000,000
        (2) Non-monetary demand: _____

(b) What was defendant's last offer?

        (1) Monetary offer: $ 0_____
        (2) Non-monetary offer: _____

4.     The parties [have _____X_____ have not _____] met pursuant to Fed. R. Civ. P. 26(f).

5.     The parties [have ___X___ have not _ _____ ] exchanged the information required by Fed. R. Civ. P. 26(a)(1). If not, state the reason therefor.

Defendants have filed pending motions to dismiss that may impact the scope of the parties' disclosures.

6.     Explain any problems in connection with completing the disclosures required by Fed R. Civ. P. 26(a)(1)

Defendants have filed pending motions to dismiss that may impact the scope of the parties' disclosures.

7.     The parties [have ___X_____ have not_____] filed disclosures of third-party litigation funding. See Local Civil Rule 7.1.1.

8.     The parties [have _____ have not ____X_____] conducted discovery other than the above disclosures. If so, describe.

9.     Proposed joint discovery plan:

(a) Discovery is needed on the following subjects:
- Defendants' liability.
- Plaintiffs' damages.

(b) Discovery [should _____ should not _____] be conducted in phases or be limited to particular issues. Explain.

The parties disagree over whether discovery should be conducted in phases or limited to particular issues. Plaintiffs' oppose phasing or limiting discovery, and Defendants are in

favor of saying discovery until the pending motions to dismiss are decided.  The parties look forward to discussing this issue further with the Court at the upcoming conference.

(c) Proposed schedule: [to be determined after motions are resolved]

(1) Fed. R. Civ. P. 26 Disclosures completed.

(2) E-Discovery conference pursuant to L. Civ. R. 26.1(d) February 16, 2023.

(3) Service of initial written discovery March 2, 2023.

(4) Maximum of _25____ Interrogatories by each party to each other party.

(5) Maximum of __10___ depositions to be taken by each party.

(6) Motions to amend or to add parties to be filed by August 31, 2023.

(7) Factual discovery to be completed by December 31, 2023.

(8) Plaintiffs' expert report due on February 28, 2024.

(9) Defendants' expert report due on April 30, 2024.

(10) Expert depositions to be completed by June 30, 2024.

(11) Dispositive motions to be served within __45____days of completion of discovery.

(d) Set forth any special discovery mechanism or procedure requested.

The parties are to stipulate to a protocol for gathering Electronically Stored Information within 15 days after serving their responses to requests for production, and anticipate making their productions on a rolling basis thereafter.

(e) A pretrial conference may take place on _____.

(f) Trial date: _____ (__X___Jury Trial; _____ Non-Jury Trial).

10.    Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of-state witnesses or documents, etc)? Yes __X_____No_____. If so, please explain.

The parties anticipate taking video depositions of witnesses located outside the country.

11.    Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced?

Yes _____ No ___X_____.

If so, how will electronic discovery or data be disclosed or produced? Describe any agreements reached by the parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.

12.     Do you anticipate entry of a Discovery Confidentiality Order? See L.Civ.R. 5.3(b) and Appendix S.

Yes.

13.     Do you anticipate any discovery problem(s) not listed above? Describe.
Yes _____ No _____X___.

14.     State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 201.1 or otherwise) or mediation (pursuant to Local Civil Rule 301.1 or otherwise). If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.).

Yes. Mediation may be appropriate after the Court rules on the pending motions to dismiss, since the outcome of those motions may impact the scope of the case.

15.     Is this case appropriate for bifurcation? Yes _____ No _____

The parties disagree over whether the case should be bifurcated.  Defendants are in favor of bifurcating the liability aspect of the case from proceedings to determine damages. Plaintiffs oppose bifurcation.  The parties look forward to discussing this issue further with the Court at the upcoming conference.

16.     An interim status/settlement conference (with clients in attendance), should be held on June 15, 2023.

17.     We [do _____ do not _____X_____] consent to the trial being conducted by a Magistrate Judge.

18.     Identify any other issues to address at the Rule 16 Scheduling Conference.

Defendants' pending motions to dismiss.


 s/ Craig Dashiell_____          Date: January 31, 2023
*Attorney(s) for Plaintiff(s)*


 s/ Joseph H. Tringali_____          Date: January 31, 2023

-6-

*Attorney(s) for Defendant(s) Jem D International Partners, LP, Jem D. International (Michigan) Inc., Harold Paivarinta, Jim Dimenna*

s/ Raj Gadhok                       Date: January 31, 2023
*Attorney(s) for Defendant(s) Carlos Visconti*

ATTACHMENT TO JOINT PROPOSED DISCOVERY PLAN

2.      Defendants' position(s):

This action was commenced by JD Global Sales, Inc. ("JD Global"), a company whose at-will written contract with defendant Jem D Michigan was terminated in July, 2021.  JD Global performed sales and marketing services pursuant to the terms of the 2014 contract, which was  amended once by a writing in 2016, and performed by the parties until its termination in 2021.  Following the Court's dismissal of one count of the original complaint, plaintiffs filed an Amended Complaint in August, 2022, adding James D'Amato ("D'Amato"), the principal of JD Global as a a plaintiff, The Amended Complaint modified the substance of the allegations of the original pleading, and asserted additional facts, in part to attempt to salvage a claim which the Court dismissed.  Motions to dismiss portions of the new Amended Complaint were filed, and only fully briefed in December, 2022.   The motions remain pending.

Plaintiffs' pleadings name as defendants both Jem D Michigan, with which JD Global contracted, and Jem D International (a Canadian limited partnership), a separate and distinct entity.  Jem D International grows and sells produce to customers.  Jem D Michigan provides support services to Jem D International, including contracting with United States entities to provide support services for the sale of its produce.   Such as was the case with JD Global, which it engaged "to provide sales and marketing services," as directed and in the sole discretion of Jem D Michigan.  Both Jem D Michigan and Jem D International, though separate entities, conduct business using the name Red Sun Farms.  Both Jem D Michigan and Jem D International, though separate entities, are licensed to conduct business in their respective markets using the name Red Sun Farms.  Plaintiffs' pleadings imprecisely collectively refer to both entities as "Red Sun Farms," although JD Global's contract was solely with Jem D Michigan."

The primary claim in the case is based upon plaintiffs' assertion that defendants orally promised JD Global "lifetime" employment as a sales representative, measured by when D'Amato decided to retire, and that the termination of the parties' actual and existing 2014 contract "breached" this phantom oral agreement.  Not only does proof of a perpetual or lifetime employment agreement require one to establish that the promisor unequivocally expressed agreement to a "lifetime" employment arrangement, but here, writings exchanged between the parties beginning in 2016, as they attempted to negotiate a new contract, unequivocally establish the contrary.  Jem D Michigan repeatedly, consistently and soundly rejected written proposals made by D'Amato which included "only for cause" termination provisions.  Again and again, Jem D Michigan refused to consider any perpetual contract with JD Global.  When Jem D Michigan terminated the 2014 contract in 2021, D'Amato's desire for "lifetime employment" re-appeared, asserted in this litigation as a supposed "oral agreement," allegedly made in February, 2015.  D'Amato's assertion of the existence of a lifetime employment agreement, orally made, is not a supportable claim.

Unless and until the claims of existence, and enforceability of the alleged agreement or promise is adjudicated, as well as the "terms" of the supposed oral agreement, plaintiffs have no

1

basis for any entitlement to damages.   JD Global was compensated through the time of termination of the parties' actual existing written contract.   It is owed no more.

Appended to this main cause of action are tangential claims asserted by plaintiffs, including alternate bases for claiming damages based upon the phantom oral "agreement" – breach of the covenant of good faith and fair dealing and promissory estoppel.   Plaintiffs additionally accuse the individually-named defendants – officers/executives of the defendant entities – of fraudulent inducement, in essence "tricking" D'Amato into agreeing to the 2014/2016 written agreement, as an alternate cause of action.   Plaintiffs' claims against the individual defendants are not sustainable.   Among other things, with respect to the fraudulent inducement count, JD Global performed the parties' actual agreement for more than five (5) years, and was compensated pursuant to its terms, thereby ratifying the very agreement it claims it was "induced" to perform.

JD Global initially asserted violations of the Conscientious Employee Protection Act ("CEPA"), but its claims were dismissed by the Court, prompting an amendment to the pleading, to add D'Amato – who was not employed by either named defendant – as a plaintiff.   The Amended Complaint also changed and asserted additional facts, including revised and new allegations relating to defendants' business practices and customer dealings, which were not included in the original complaint.   Jem D International's dealings with its customers which D'Amato subjectively criticizes after-the-fact, do not constitute bases for claims under CEPA. The termination of JD Global's contract was not retaliatory; the reasons for termination were outlined in a July 27, 2021 letter to JD Global, and included, among other reasons,  D'Amato's failure to attend sales meetings on behalf of JD Global - a critical requirement, as JD Global was contractually obligated "to provide sales and marketing services," as directed and in the sole discretion of Jem D Michigan.

In addition, because JD Global – or D'Amato (the pleading remains unclear) – asserts violation of CEPA based upon various verbal statements D'Amato alleges he heard, and claims he "found offensive," another individual, Harold Paivarinta, who allegedly made the statements, also has been named as a defendant.   Mr. Paivarinta denies the allegations that any of his actions or statements made in the course of his employment with JEM D constituted harassment or created a hostile work environment.   He further denies that any complaint made about him to JEM D was a factor in the company's decision to end its relationship with Plaintiffs.

The remaining counts of the Amended Complaint contain other tangential claims.   JD Global asserts entitlement to damages for violation of the payment protections of the New Jersey Sales Representatives' Rights Act, though it was paid all monies owed to it when its contract was terminated.   A cause of action for unjust enrichment is also stated, as well as one for misappropriation of proprietary business information, purportedly based on an Excel spreadsheet utilized by JD Global to organize sales and inventory information.   Defendants were not unjustly enriched by JD Global's performance of its contractual obligations; it was compensated and accepted compensation for its services performed in accordance with terms of the parties' contract.   JD Global's spreadsheet tool does not constitute proprietary information, and in any

event, was not used by defendants after the termination of JD Global's contract.   These claims are not sustainable.

In short, Plaintiffs' claims are belied by documentary evidence, which contradict D'Amato's story that he was verbally "promised" lifetime employment almost seven (7) years before his initial action was filed.   As a matter of law, lifetime employment contracts are not enforceable except in the very limited circumstance in which the intention to make and be bound by such a contract is expressed in unequivocal terms.   As addressed above, documentary evidence entirely to the contrary exists, and even indulging the allegations, an alleged oral promise in no manner does or can constitute the required "unequivocal intent" to be bound to a perpetual employment arrangement.

The CEPA claim is not sustainable, for a variety of reasons, including that D'Amato is not an "employee" of either of the named defendants.   A second motion to dismiss is pending regarding that claim which was substantively changed in the Amended Complaint, as well as seeking to dismiss the entirety of the amended pleading for failure to properly plead the causes as against any specific entity.   The remainder of the added-on claims are similarly deficient and also lack factual and/or legal bases.   Applicable statutes of limitations and laches also may bar many of the claims.

For the purposes of discovery, it is imperative that the entity against which each of plaintiffs' claims are being asserted be identified by plaintiff.   The two named defendants are separate and distinct entities, and JD Global was an independent contractor of only one of those entities - Jem D Michigan.   Neither it nor D'Amato can have cognizable claims against Jem D International.

3