**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JD GLOBAL SALES, INC. and JAMES D'AMATO,

         Plaintiffs,

         v.

JEM D INTERNATIONAL PARTNERS, LP, JEM D. INTERNATIONAL (MICHIGAN) INC., HAROLD PAIVARINTA, JIM DIMENNA, CARLOS VISCONTI, and ABC COMPANIES 1-10, representing the fictitious names of entities that do business as RED SUN FARMS whose identities are unknown,

         Defendants.

Case No. 2:21-cv-19943 (BRM) (MAH)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

      Before the Court are two Motions to Dismiss Plaintiff JD Global Sales, Inc. ("JD Global")

and James D'Amato's ("Amato") (collectively, "Plaintiffs") Amended Complaint (ECF No. 38)

pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Jem D International

Partners, LP ("Jem D International"), Jem D International (Michigan) Inc. ("Jem D Michigan"),

James DiMenna ("DiMenna"), and Carlos Visconti ("Visconti") (collectively, "Red Sun Farms")[1]

(ECF No. 42) and Defendant Harold Paivarinta ("Paivarinta") (collectively, with Red Sun Farms,

---

[1] While the Complaint identifies Jem D International and Jem D Michigan as separate entities, Plaintiffs collectively refer to both entities throughout the Amended Complaint as "Red Sun Farms." (*See generally* ECF No. 38.) There is no entity defendant named "Red Sun Farms" in this action. Rather, the Complaint states, "each affiliated entity within the Red Sun Farms, including Jem D International and Jem D Michigan, has held itself out as 'd/b/a Red Sun Farms.'" (*Id.* at ¶ 4.)

"Defendants") (ECF No. 43). Plaintiffs filed an Opposition to the Motions. (ECF No. 48.) Red Sun

Farms and Paivarinta filed Replies. (ECF Nos. 51, 52.) Having reviewed the parties' submissions

filed in connection with the Motions and having declined to hold oral argument pursuant to Federal

Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been

shown, Red Sun Farms' Motion to Dismiss is **GRANTED** as to Count IV of the Amended

Complaint, but **DENIED** as to the remaining counts, and Paivarinta's Motion to Dismiss is

**GRANTED** in its entirety.

## I.   BACKGROUND

### A.  Factual Background

For the purpose of these Motions to Dismiss, the Court accepts the factual allegations in

the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs.

*See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any

"document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*

*Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194,

1220 (1st Cir. 1996)).

JD Global is a corporation organized under the laws of New Jersey, and a sales contractor

specializing in selling produce products to retail suppliers. (Am. Compl. (ECF No. 38) ¶¶ 2, 12.)

D'Amato is the founder, sole principal and employee of JD Global. (*Id.* ¶¶ 3, 12.) Jem D

International, a Canadian limited partnership, and Jem D Michigan, a Michigan corporation, are

two of several entities forming the business collective known as Red Sun Farms. (*Id.* ¶ 4.) Red Sun

Farms is a business-to-business produce supplier with greenhouses, distribution centers, and

growing facilities all throughout North America. (*Id.* ¶ 13.) Its clients are grocery stores and other

retailers that sell produce directly to consumers. (*Id.*) Paivarinta is the Director of North American

Sales, DiMenna is the President, and Visconti is the Chief Executive Officer of Red Sun Farms. (*Id.* ¶¶ 5–7.)

      1.  <u>JD Global and Red Sun Farms</u>

In 2013, D'Amato entered into discussions with DiMenna and Visconti about retaining JD Global's services. (*Id.* ¶ 14.) It was not until November 13, 2014, however, that the parties reached an "oral understanding" that JD Global would sell Red Sun Farms' produce on a trial basis as an independent contractor, while the parties mutually explored a more permanent relationship. (*Id.* ¶¶ 15–16.) On November 26, 2014, JD Global executed a written Agreement for Services (the "Agreement") with Jem D Michigan. (*Id.* ¶ 17.) The Agreement stated each party had the right to terminate the Agreement on thirty days' notice. (*Id.* ¶ 18.)

In December 2014, D'Amato provided Red Sun Farms with an estimate of the number of produce cases JD Global anticipated being able to sell through the end of 2015. (*Id.* ¶ 20.) In February 2015, D'Amato lowered JD Global's sales forecast after assessing Red Sun Farms' distribution capabilities. (*Id.* ¶ 21.) On February 28, 2015, D'Amato met with DiMenna and Visconti at a trade show, where D'Amato offered two proposals for JD Global's continued work on behalf of Red Sun Farms. (*Id.* ¶ 22.) The first proposal offered that JD Global would continue under the terms of the Agreement and focus on meeting its revised sales forecast numbers. (*Id.* ¶ 23.) The second proposal offered that the parties would abandon the original Agreement and JD Global would work to retain new customers for Red Sun Farms. (*Id.*) Under the latter arrangement (the "Commission Agreement"), D'Amato would be paid a commission on every case of produce sold by Red Sun Farms to the new customers instead of receiving a base salary. (*Id.*) The Complaint alleges the arrangement was to continue "until Mr. D'Amato chose to retire from working with Red Sun Farms and would be terminable only for cause." (*Id.*) D'Amato also

purportedly told DiMenna and Visconti that if Red Sun Farms terminated JD Global without cause prior to JD Global's withdrawing from the relationship, Red Sun Farms would have to buy out JD Global for the duration of the Commission Agreement. (*Id.*)

During the February 2015 meeting, D'Amato advised DiMenna and Visconti that JD Global would not engage new retail customers for the benefit of Red Sun Farms unless they elected to proceed under the Commission Agreement. (*Id.* ¶ 24.) The Complaint alleges DiMenna and Visconti "unequivocally told Mr. D'Amato that Red Sun Farms would proceed with the terms of the Commission Agreement, to be effective as of January 1, 2016, and that they would supply JD Global with whatever it needed to bring in large retail clients for Red Sun Farms." (*Id.* ¶ 27.) The parties were to operate under the terms of the original Agreement through the end of 2015. (*Id.* ¶ 28.) DiMenna and Visconti advised D'Amato they would reduce the terms of the Commission Agreement to writing. (*Id.*)

Based on the verbal Commission Agreement, JD Global opted to "[wind] down its existing arrangement with other suppliers and [forego] other employment opportunities." (*Id.* ¶ 29.) Thereafter, from March to August 2015, JD Global retained new customers for Red Sun Farms, including retailers like Walmart and Aldi, and generated tens of millions of dollars of revenue for Red Sun Farms. (*Id.* ¶ 30.) On January 15, 2016, DiMenna and Visconti held a review process meeting for JD Global. (*Id.* ¶ 31.) During the meeting, DiMenna and Visconti offered D'Amato a salary increase based off the original Agreement, but after D'Amato reminded them of the Commission Agreement beginning in January 2016. (*Id.*) DiMenna and Visconti then "ratified" the latter Commission Agreement, agreeing "JD Global would be paid on a per case or percentage of sales basis for produce Red Sun Farms sold to customers that JD Global obtained . . . , and that the arrangement would continue until JD Global ended its relationship with Red Sun Farms,

terminable only for cause." (*Id.*) DiMenna and Visconti reiterated to D'Amato that they would reduce the terms of the Commission Agreement to writing. (*Id.* ¶ 32.)

On March 4, 2016, D'Amato "met with Red Sun Farms' ownership group" to discuss the specific rate of commission he would receive under the Commission Agreement. (*Id.* ¶ 33.) Because the Commission Agreement would include a lifetime duration and protection from termination, D'Amato proposed a below-market commission rate of 1%. (*Id.*) D'Amato's proposal was countered with a commission rate of 0.85%. (*Id.* ¶ 34.) On April 27, 2016, Visconti met with D'Amato to further discuss the structure of the Commission Agreement. (*Id.* ¶ 35.) D'Amato reiterated JD Global would accept a below-market commission in exchange for a lifetime employment arrangement terminable only with cause, and without a cap on the commissions JD Global could receive. (*Id.*) Visconti agreed and asked D'Amato to draft the Commission Agreement memorializing the terms. (*Id.*) On April 28, 2016, Visconti emailed D'Amato a summary of the various points of the Commission Agreement so D'Amato could begin receiving payments under same. (*Id.* ¶ 36.) However, since that date, JD Global has not received payment from Red Sun Farms for any accounts generated by JD Global. (*Id.* ¶ 36.)

On May 12, 2016, JD Global sent Red Sun Farms a draft agreement memorializing the terms of the Commission Agreement. (*Id.* ¶ 37.) Later that month, Red Sun Farms sent back revisions proposing, among other things, to limit the Commission Agreement to a term of three years. (*Id.*) During this time, JD Global had not received any payment for work performed under the Commission Agreement. (*Id.* ¶ 37.) On June 1, 2016, D'Amato informed Visconti he would only sign an agreement "that accurately memorialized" the Commission Agreement. (*Id.* ¶ 39.) The next day, Red Sun Farms made a retroactive payment to JD Global for commission owed at the 0.85% rate and assured D'Amato a signed agreement was forthcoming. (*Id.*) Still, Red Sun

Farms continued to attempt to induce JD Global to retract the Commission Agreement and agree to an arrangement of a shorter duration. (*Id.* ¶ 40.)

In October 2017, D'Amato met with representatives of Red Sun Farms, including DiMenna and Visconti, to discuss "the parties' inability to reduce the Commission Agreement to writing." (*Id.* ¶ 41.) The representatives of Red Sun Farms reassured D'Amato an acceptable draft was forthcoming. (*Id.*) In the interim, the parties continued to work together under the Commission Agreement without incident until October 2018. (*Id.* ¶ 42.)

During a trade show in October, Visconti told D'Amato that Walmart, a customer under JD Global's account, would no longer do business with Red Sun Farms if D'Amato remained on the account, citing "personal reasons." (*Id.* ¶¶ 43–44.) Thereafter, DiMenna and Visconti convened a call with D'Amato, informing him JD Global would still receive full commission on the Walmart sales, even if JD Global was removed from managing the account, and would amend the Commission Agreement to reflect the new arrangement. (*Id.* ¶ 45.) However, D'Amato was never removed from his position as Walmart's account manager. (*Id.*) Red Sun Farms, nonetheless, continued to draft agreements that attempted to repudiate the non-termination provisions of the Commission Agreement. (*Id.* ¶ 46.)

While JD Global was working with Red Sun Farms, as early as 2015, it developed a Vendor Management Inventory sales modeling system (the "VMI Model") for servicing customer needs. (*Id.* ¶ 47.) The VMI Model is a spreadsheet in Microsoft Excel, which calculated customers' future produce needs and facilitated sales coordination for Red Sun Farms. (*Id.* ¶ 49.) JD Global continued to enhance the VMI Model for six years and trained Red Sun Farms sales coordinators to utilize the model. (*Id.* ¶¶ 50–51.) Red Sun Farms used the VMI model to manage inventory for

Aldi and for predictive ordering for Walmart. (*Id.* ¶¶ 50, 52.) The model resulted in the procurement of yearly contracts for Red Sun Farms. (*Id.* ¶ 53.)

In or around 2017 or 2018, Walmart began requiring that Red Sun Farms include a "pack date" on its Product Traceability Initiative ("PTI") labels on all crates of produce Red Sun Farms sells to Walmart. (*Id.* ¶¶ 54–56.) PTI labels track where produce originated, and pack dates identify the date the produce was package for retail sale. (*Id.*) D'Amato spoke to a representative of Walmart, who explained the PTI label date should reflect the date Red Sun Farms harvested and processed the produce, but Visconti had previously failed to provide the pack dates out of fear Walmart would reject the produce for being out of the specification for age. (*Id.* ¶¶ 57–58.) D'Amato agreed accurate information should be provided as not to mislead the customer. (*Id.* ¶ 59.) In 2019, during a meeting with Walmart at Red Sun Farms' growing facility in Mexico, a Walmart representative inquired about why the pack dates were not listed on the PTI labels while the produce crates were at the facility. (*Id.* ¶¶ 60–61.) Visconti informed D'Amato after the tour that Red Sun Farms did not add the pack dates to the PTI labels on produce at the Mexico facility until it was ready to be shipped. (*Id.* ¶ 62.) D'Amato explained the pack dates were supposed to reflect the day the produce was processed at the facility, and not the date it was shipped, but Visconti did not respond. (*Id.* ¶ 63.)

In December 2020, Red Sun Farms began downgrading its produce supply to customers obtained by JD Global, including Aldi and Walmart, and was no longer fulfilling their purchase orders. (*Id.* ¶ 64.) D'Amato warned Red Sun Farms that continuing such a practice would result in the loss of their customer's business. (*Id.*) Thereafter, Red Sun Farms awarded certain business to other suppliers and Walmart removed several items from Red Sun Farms' contract. (*Id.* ¶ 65.)  As a result, Red Sun Farms lost sales and JD Global suffered reduced commissions. (*Id.*) Around that

time, D'Amato learned Red Sun Farms had been supplying Aldi and Walmart with produce from outside vendors to meet the retail customer's produce demand, in violation of its agreement with JD Global. (*Id.* ¶ 66.) JD Global raised this issue with Red Sun Farms, but did not receive a reply. (*Id.*)

In May 2021, JD Global conducted a review of Red Sun Farms' sales to retail customer, Aldi. (*Id.* ¶ 84.) Based on its analysis, JD Global learned that, from June 2019 to August 2019, Red Sun Farms increased the price Aldi paid by 9.5% to offset a duty imposed on imports of tomatoes from Mexico. (*Id.* ¶ 85.) D'Amato had persuaded Aldi to increase the price it paid on the tomatoes, using his strong relationship with the company. (*Id.* ¶ 86.) However, Red Sun Farms never notified JD Global when the duty imposed "on the importation of tomatoes from Mexico had been settled and Red Sun Farms was reimbursed for the duty payments made. Red Sun Farms did not reimburse Aldi . . . resulting in Aldi overpaying Red Sun Farms by hundreds of thousands of dollars." (*Id.* ¶ 86.) D'Amato asked Red Sun Farms to reimburse Aldi for the overpayment, but Red Sun Farms management "did not respond favorably" to the request. (*Id.* ¶ 87.)

In 2021, Aldi notified Red Sun Farms that it would resume managing its own inventory, instead of using JD Global's VMI Model. (*Id.* ¶ 88.) On July 27, 2021, JD Global received notice from Red Sun Farms' counsel that JD Global's employment was terminated. (*Id.* ¶ 89.) Upon termination of the relationship between JD Global and Red Sun Farms, D'Amato sent Red Sun Farms a notice demanding the deletion of all Microsoft Excel and other proprietary files JD Global provided while employed as an independent contractor. (*Id.* ¶ 91.)

### 2.  JD Global and Paivarinta

In early 2020, Red Sun Farms began requiring its sales personnel to participate in virtual sales call meetings hosted by Paivarinta, intended to foster relationships among employees

working at home as a result of the COVID-19 pandemic. (*Id.* ¶ 67.) JD Global remained an independent contractor and had no obligation to attend. (*Id.* ¶ 68.) Nonetheless, D'Amato elected to join the sales calls on behalf of JD Global. (*Id.*)

During the sales calls, Paivarinta reportedly used sexual profanity and made other vulgar comments that D'Amato found to be offensive. (*Id.* ¶ 69.) Paivarinta purportedly bullied and badgered others on the calls. (*Id.* ¶¶ 70–71.) D'Amato believed Paivarinta's conduct "crossed the line," violated anti-discrimination laws, and violated Red Sun Farms' Code of Conduct. (*Id.* ¶ 72.) As of February 10, 2021, D'Amato stopped attending the sales call meetings and received briefings and recaps from sales coordinators. (*Id.* ¶ 74.) On February 16, 2021, D'Amato brought his concerns regarding Paivarinta's conduct to the attention of Visconti. (*Id.* ¶ 77.) Visconti excused D'Amato from the calls, and asked only that he attend if his specific input was needed on sales items. (*Id.* ¶ 79.) Thereafter, D'Amato was added to the calls on February 17 and March 3, 2021. (*Id.* ¶ 80.)

On March 26, 2021, Paivarinta demanded D'Amato permanently rejoin the sales calls. (*Id.* ¶ 81.) On the same day, D'Amato reiterated his concerns about Paivarinta's conduct on the calls, and how it affected Red Sun Farms' relationship with JD Global. (*Id.* ¶ 82.) Visconti and DiMenna dismissed D'Amato's concerns, attributing Paivarinta's conduct "to his personality, and told Mr. D'Amato not to worry." (*Id.* ¶ 83.)

### B. Procedural History

Plaintiff JD Global filed a nine-count Complaint on November 11, 2021. (ECF No. 1.) On January 14, 2022, Red Sun Farms and Paivarinta each filed a motion to dismiss. (ECF Nos. 17, 18.) On February 28, 2022, JD Global filed oppositions. (ECF No. 23, 24.) On March 14, 2022, Red Sun Farms and Paivarinta each filed a reply. (ECF Nos. 27, 28.) On June 2, 2022, JD Global

submitted a letter, requesting a voluntary dismissal of its copyright infringement claim (ECF No. 32), which the Court granted (ECF No. 33).

On August 3, 2022, the Court granted Defendants' motions to dismiss as to Count IV, for violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), and denied the remainder of the requested relief. (ECF No. 35.) Because the only named plaintiff in the action was JD Global, a corporation, the Court found JD Global lacked standing to pursue the CEPA claim. (ECF No. 34 at 19–20.)

On August 31, 2022, Plaintiffs JD Global and D'Amato, together, filed an Amended Complaint, alleging the following causes of action: (1) Breach of Contract (Count I); (2) Breach of Implied Covenant of Good Faith and Fair Dealing (Count II); (3) Promissory/Equitable Estoppel (Count III); (4) Violation of the CEPA (Count IV); (5) Violation of New Jersey Sales Representatives' Rights Act (Count V); (6) Fraudulent Inducement (Count VI); (7) Unjust Enrichment/Quantum Meruit (Count VII); and (8) Misappropriation of Business Information (Count VIII).[2] (ECF No. 38 ¶¶ 92–181.) On October 7, 2022, Red Sun Farms and Paivarinta each filed a motion to dismiss. (ECF Nos. 42, 43.) On November 28, 2022, Plaintiffs filed an opposition. (ECF No. 48.) On December 12, 2022, Red Sun Farms and Paivarinta each filed a reply. (ECF Nos. 51, 52.)

On April 26, 2023, the parties appeared for a telephone conference and informed Magistrate Judge Michael A. Hammer they would be appearing for mediation on or about May 22, 2023. (ECF No. 63.) In light of the ongoing settlement discussions, the Court administratively terminated the pending motions. (ECF No. 64.) On June 2, 2023, the parties jointly informed the

---

[2] Plaintiffs assert Counts I through VIII against Red Sun Farms, and assert Count IV against both Paivarinta and Red Sun Farms. (*Id.*)

Court they attended mediation on May 22, 2023, but failed to resolve the dispute. (ECF No. 65.) Accordingly, Defendants' motions were reinstated.

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id*. (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested

by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III.   DECISION

#### A.  Red Sun Farms' Motion to Dismiss: Counts I-III, V-VIII

Red Sun Farms argues Plaintiffs' Amended Complaint should be dismissed as impermissible group pleading, because it fails to distinguish between the named plaintiffs and the two named entity defendants, Jem D Michigan and Jem D International, in stating its causes of action. (ECF No. 42-1 at 9–12.) Red Sun Farms further, and relatedly, argues each of Plaintiffs' causes of action asserted in Counts I, II, III, V, VI, VII, VIII must be dismissed because the Complaint lacks identification of specific parties and their respective actions to satisfy the elements of those asserted claims as required. (*Id.* at 13–21.) Plaintiffs respond that Red Sun Farms' arguments are procedurally improper, since their arguments were already raised before this Court on a prior Rule 12(b)(6) motion, and are therefore barred by law of the case doctrine, Rule 12(g)(2), and the fourteen-day time restriction on motions for reconsideration set by Local Rule 7.1(i). (ECF No. 48 at 17–21.) Further, Plaintiffs maintain each of their claims satisfies the pleading requirements of Rules 8 and 9. (*Id.* at 17–34.) In reply, Red Sun Farms reiterates Plaintiffs' amended pleading fails to differentiate between defendants as to the causes of action alleged, and therefore fails to satisfy the pleading requirements of Rule 8, and further, that the Amended Complaint otherwise fails to state a claim. (ECF No. 51 at 4–10.) The Court agrees with Plaintiffs.

##### 1.   Group Pleading

JD Global filed a nine-count Complaint against Defendants on November 11, 2021. (ECF No. 1.) Both Red Sun Farms and Paivarinta filed a motion to dismiss. (ECF Nos. 17, 18.) In Red Sun Farms' motion, they argued each of JD Global's nine causes of action should be dismissed for

13

substantive reasons, and further, as to all nine counts, the pleading should be dismissed because, as a whole, it "[d]id not distinguish between Jem D Michigan and Jem D International, referring to both as 'Red Sun Farms' throughout." (ECF No. 17-1 at 44-45.) The motion to dismiss was granted as to Count Four, but the remainder of Red Sun Farms' motion was denied. (ECF Nos. 34, 35.) Plaintiffs then filed an Amended Complaint on August 31, 2022, which was nearly identical to the first.[3] (ECF No. 38.) Red Sun Farms filed this motion to dismiss the Amended Complaint, arguing again, in more certain terms, that the Amended Complaint should be dismissed for impermissible group pleading. (ECF No. 42-1 at 9–12.)

"[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Ragner Tech. Corp. v. Berardi*, 287 F.Supp.3d 541, 546 (D.N.J. 2018) (quoting *Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800, 815–16 (1988)). This "law of the case" doctrine attempts "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Krys v. Aaron*, 106 F. Supp. 3d 472, 480 (D.N.J. 2015). Notably, this doctrine does not only apply to preclude the review of legal issues "actually decided" by the court in a prior decision, but also those issues decided "by implication." *Ragner*, 287 F. Supp. 3d at 547 (applying the law of the case doctrine to find jurisdiction was proper in the District of New Jersey where the Southern District of Florida implicitly concluded New Jersey was a proper venue and had personal jurisdiction over all the defendants before transferring the case). While Courts should only revisit prior decisions of its own or of a coordinate court under "extraordinary circumstances," the Court

---

[3] In a side-by-side comparison of JD Global's initial Complaint and Plaintiffs' Amended Complaint, it is clear the only significant differences include the addition of Plaintiff James D'Amato, and a rework of Count IV to address the Court's previous dismissal of JD Global's CEPA claim.

does have the power to revisit its prior decisions under certain circumstances. *Id.* at 548. These include:

> (1) where the transferor judge becomes unavailable, thereby precluding a party from filing a motion for reconsideration; (2) where new evidence is available; (3) where a supervening change in law occurs; or (4) where the decision was clearly erroneous and would work a manifest injustice.

*Id.* The Court finds none of these exceptions apply, but nevertheless, revisits its prior decision to address why the rejection of Red Sun Farms' procedural argument was neither erroneous nor unjust. *See id.* (revisiting its prior decision solely to determine whether the decision was clearly erroneous or unjust).

Courts in this district routinely dismiss complaints when the complaints contain improper "group pleading." *See Conserve v. City of Orange Twp.*, No. 21-872, 2022 WL 1617660, *4 (D.N.J. May 23, 2022); *Baldeo v. City of Paterson*, No. 18-5359, 2019 WL 277600, *4 (D.N.J. Jan. 18, 2019); *Ingris v. Borough of Caldwell*, No. 14-855, 2015 WL 3613499, *5 (D.N.J. June 9, 2015). "Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." *Shaw v. Housing Auth. of Camden*, No. 11-4291, 2012 WL 3283402, *2 (D.N.J. Aug. 10, 2012) (citation omitted). Group pleading fails to satisfy Rule 8 "because it does not place Defendants on notice of the claims against each of them." *Conserve*, 2022 WL 1617660 at *5 (quoting *Baldeo*, 2019 WL 277600, at *4). Further, "the lack of well-pleaded facts does not allow the Court 'to draw the reasonable inference that [each] defendant is liable for the misconduct alleged.'" *D'Addario v. Johnson & Johnson*, No. 19-15627, 2020 WL 3546750, *6 (D.N.J. June 30, 2020) (quoting *Iqbal*, 556 U.S. at 678). Group pleading "forc[es] both the Defendants and the Court to guess who did what to whom and when. Such speculation is anathema to contemporary pleading standards." *Baldeo*, 2019 WL 277600, *4.

Specifically, Rule 8(a)(2) requires the plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fundamentally, Rule 8 requires "a complaint provide fair notice of 'what the . . . claim is and the grounds upon which is rests.'" *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (alterations in original) (citations omitted). This is a "context-dependent exercise" where the Court must consider all of the circumstances surrounding the particular pleading, including "the nature of the action, the sort of relief being sought, the availability of information, and other practical considerations." *Id.* Generally, where a plaintiff's allegations "are sufficient to put Defendants on notice as to the claims against them," the pleading satisfies the rule. *In re Riddell Concussion Reduction Litig.*, 77 F.Supp.3d 422, 431 (D.N.J. 2015); *H2O Plus, LLC v. Arch Pers. Care Products, L.P.*, 10–3089, 2011 WL 2038775, *2 (D.N.J. May 22, 2011) (finding the complaint satisfied Rule 8 where the pleading referred to the defendants collectively, but, when read as a whole, the Complaint and attached exhibits identified which claims were made against which defendants).

Indeed, while Courts in this district have found group pleadings are improper, "it is clear those opinions [are] meant only to rule out collective allegations which make it indecipherable 'what each particular defendant is alleged to have done.'" *Ojeda v. Louis Berger Grp. (Domestic), Inc.*, No. 18-17233, 2021 WL 941875, *4 n.9 (D.N.J. Mar. 11, 2021) (citations omitted). For example, in *Yu-Chin Chang v. Upright Fin. Corp.*, No. 19-18414, 2020 WL 473649, *3 (D.N.J. Jan. 28, 2020), the Court denied the defendants' motion to dismiss on the grounds of "group pleading," explaining:

> [*Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 386–87 (D.N.J. 2019)], for example, was a products liability case in which it was impossible to tell from the complaint which defendant was the manufacturer, and which the distributor.

16

> This complaint does not share that flaw. These are not two defendants who performed different acts, and are left in the dark about who did which. A corporate entity, such as Upright, can act and be held liable only by virtue of the actions of human agents. The human being alleged to have made the misrepresentations or committed the acts of fiduciary breach . . . is alleged to be the principal of Upright. It is easily inferable from these facts that he allegedly acted as the agent of Upright—or even that his actions were accomplished through Upright. The precise relation between the two defendants is not a fact in control of the plaintiffs, but can easily be explored in discovery.

Further, in *Hotaling & Co., LLC v. Berry Solutions Inc.*, 2021 WL 4860096, * 6–7 (D.N.J. Oct. 19, 2021), the Court distinguished *Sheeran* and *Shaw* as cases involving several, separate and unrelated individual plaintiffs and business entities, as well as several different allegations making it nearly impossible to identify what theory of liability applied to what defendant. However, the *Hotaling* Court explained:

> This is not a case in which numerous, wide-ranging allegations were lodged against distinct entities such that defendants were not adequately placed on notice of the allegations against them. Rather, under such circumstances, "[t]he consistency of the subject of the pleading . . . , despite its group format, means that it can be reasonably inferred that each and every allegation is made against each individual defendant."

*Id.* at *7 (quoting *Nasdaq, Inc. v. IEX Group, Inc.*, No. 18-3014, 2019 WL 102408, at *14 (D.N.J. Jan. 4, 2019) (alterations in original).

Plaintiffs' Amended Complaint identifies Jem D International and Jem D Michigan as "two of several affiliated entities that form a business collective known as Red Sun Farms," and refers to them almost exclusively throughout the Amended Complaint as such. (ECF No. 38 at ¶ 4.) The Amended Complaint further defines DiMenna as Red Sun Farms' President and Visconti as Red Sun Farms' Chief Executive Officer. (*Id.* at ¶¶ 6–7.) Based on the facts as alleged, Jem D International and Jem D Michigan are clearly related corporate entities, further related to the

individual defendants by virtue of an agency relationship, and not separate entities who performed distinct and unrelated acts. *See Yu-Chin Chang*, 2020 WL 473649 at *3. It is not "indecipherable," when read as a whole, which defendants are responsible for what allegations in the Amended Complaint. *Ojeda,* 2021 WL 941875 at *4 n.9. Instead, "despite its group format," it is clear that each and every allegation made against Red Sun Farms is made against each of the four related Red Sun Farms Defendants. *Hotaling & Co., LLC,* 2021 WL 4860096 at * 6-7.

Put simply, this is not a case where Defendants are deprived of notice as to the claims against them. Indeed, Jem D International, Jem D Michigan, DiMenna and Visconti are represented by the same counsel and are participating collectively in this motion to dismiss.[4] *See In re Riddell*, 77 F. Supp. 3d at 432. To the extent more specificity regarding the role of each Defendant is required, beyond the bar that Plaintiffs provide them proper notice, that is an issue more appropriate for discovery. *Riddell*, 77 F. Supp. 3d at 432; *Yu-Chin Chang*, 2020 WL 473649 at *3. Accordingly, Red Sun Farms' motion to dismiss on the basis that Plaintiffs engaged in impermissible group pleading is denied.

### 2.   Plaintiffs' Specific Causes of Action

Red Sun Farms argues Count I (Breach of Contract), Count II (Breach of Implied Covenant of Good Faith and Fair Dealing), and Count III (Promissory/Equitable Estoppel) should be dismissed for failure to assert the required elements of the causes of actions; and Count V (Violation of New Jersey Sales Representatives' Rights Act), Count VI (Fraudulent Inducement), Count VII (Unjust Enrichment/Quantum Meruit) and Count VIII (Misappropriation of Business

---

[4] Where an allegation in the Amended Complaint is made against Defendant Paivarinta, proceeding separately, such distinction is clearly noted in the pleading.

Information) are not sustainable as a matter of law. (ECF No. 42-1 at 13–21; ECF No. 51 at 10–16.) The Court agrees with Plaintiffs that these arguments are procedurally improper.

Generally, "[a] party that makes a motion under [Rule 12] must not make another motion under [the] rule raising a defense or objection that was available to the party but omitted from its earlier motion." F.R.C.P. 12(g)(2). Essentially, "Rule 12(g)(2) requires the Court to entertain only those arguments made by Defendants that were not previously available to them." *Omodunbi v. Gordin & Berger, P.C.*, No. 17-7553, 2021 WL 5277203, *2 (D.N.J. Nov. 12, 2021). The procedural bar covers all successive motions to dismiss for failure to state a claim, *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 321 (3d Cir. 2015), and applies with equal force to motions to dismiss an amended complaint, *Omodunbi*, 2021 WL 5277203 at *2 (citing *Bell v. Lockheed Martin Corp.*, No. 08-6292, 2011 WL 1467365, *7 (D.N.J. Apr. 18, 2011) (considering only the arguments that were not previously available to the defendants).

The Rule "does not preclude the filing of a second motion pursuant to Rule 12 where the defense or objection was not available at the time of the filing of the initial motion." *Jewett v. IDT Corp.,* No. 04-1454, 2008 WL 508486, at *2 (D.N.J. Feb. 20, 2008). Only where "an amended complaint contains new factual allegations in support of a claim, Rule 12(g)(2) does not apply and the defendant may raise new defenses and objections to that claim." *Keaton v. Argo Turboserve Corp.*, No. 17-3978, 2021 WL 3879091, *3 n.2 (D.N.J. Aug. 31, 2021) (finding Rule(g)(2) inapplicable because the plaintiff added new factual allegations in support of his claims since the filing of the initial complaint) (quoting *Bhatti v. Republican Caucus of Pennsylvania House of Representatives*, No. 18-2178, 2020 WL 3412661, *3 (M.D. Pa. June 22, 2020)); *Allen v. New Jersey State Police*, No. 16-1660, 2017 WL 5714707, *4 (D.N.J. Nov. 28, 2017) (rejecting the

defendant's Rule 12(g)(2) argument where the initial complaint failed to allege facts indicating the newly-raised defense was necessary or possible).

Red Sun Farms makes the following arguments: Count I (Breach of Contract) – Plaintiffs fail to plead the existence of a contract because the contracting party, who allegedly entered into the oral contract with Plaintiffs, is not identified; Count II (Breach of Covenant) – Plaintiffs fail to plead the existence of a contract because of the preceding argument, and the causes of action for breach of contract and breach of covenant cannot be sustained without an existing contract; Count III (Promissory Estoppel) – Plaintiffs fail to identify the specific defendant-promisor and the alleged promise made, as required for promissory estoppel; Count V (NJSRRA) – Plaintiffs fail to identify the "principal" under the NJSRRA who owes unpaid commissions to JD Global; Count VI (Fraudulent Inducement) – Plaintiffs fail to specify which entity the individual defendants were acting on behalf of in making the alleged representations, as required for fraudulent inducement; Count VII (Unjust Enrichment) – Plaintiffs fail to identify which defendant was unjustly enriched, and the allegations therein are "confusing"; and Count VIII (Misappropriation of Business Information) – Plaintiffs fail to identify the author, owner, developer or creator of the spreadsheet at issue, and fail to specify which defendant misused the information, as required for misappropriation of business information. (ECF No. 42-1 at 13-21).

Each of these arguments was either raised and rejected in Red Sun Farms' prior motion; raised and rejected by this Court in Red Sun Farms' group pleading argument, *supra*; or available to Red Sun Farms but not raised at the time of the filing of its first motion. To the extent this Court already considered and rejected Plaintiffs' arguments in JD Global's motion to dismiss the initial Complaint, their current arguments are precluded by the law of the case doctrine. *See Ragner Tech. Corp.*, 287 F. Supp. 3d at 546–47; *Krys*, 106 F. Supp. 3d at 480. To the extent Plaintiffs' current

arguments were not previously raised or addressed, they are precluded by Rule 12(g)(2). *See Leyse*, 804 F.3d at 321; *Omodunbi*, 2021 WL 5277203 at *2.

Lastly, to the extent Red Sun Farms contends this Court overlooked some dispositive factual or legal matter in rendering its previous decision, Red Sun Farms could have moved for the limited relief available pursuant to this District's Local Civil Rule 7.1(i), allowing motions for reconsideration. L. Civ. R. 7.1(i); *P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001); *Dunn v. Reed Group, Inc.,* Civ. No. 08–1632, 2010 WL 174861, at *1 (D.N.J. Jan 13, 2010). However, such relief is now time-barred and, therefore, precluded. L. Civ. R. 7.1(i) ("[A] motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion."). Accordingly, Red Sun Farms' Motion to Dismiss Counts I–III and V–VIII is denied.

### B.  Defendants' Motion to Dismiss - Count IV

Both Red Sun Farms and Paivarinta[5] argue Plaintiffs' Count IV, the CEPA claim, should be dismissed. Red Sun Farms argues Plaintiffs' Amended Complaint fails to plead a protected employment relationship under CEPA, and further fails to state a claim because the alleged whistleblower, D'Amato, was not alleged to have been an employee of any entity other than JD Global. (ECF No. 42-1 at 22–28.) Additionally, Red Sun Farms submits the CEPA claim fails substantively, as D'Amato's "complaints" do not constitute actionable bases for a CEPA claim. (*Id.*) Lastly, Red Sun Farms claims New Jersey law does not apply because the actions alleged in support of the claim did not take place in the state. (*Id.*) Paivarinta similarly argues Count IV of Plaintiffs' Amended Complaint should be dismissed because New Jersey law does not apply to the dispute, and therefore, Plaintiffs may not seek relief under CEPA. (ECF No. 43-1 at 3–6.) Further,

---

[5] Count IV is the only cause of action asserting a claim against Paivarinta.

Paivarinta submits that even if the Court does find that New Jersey law applies, Count IV should be dismissed because Plaintiffs are not within the class of individuals eligible to pursue a CEPA claim and the allegations are insufficient to sustain a claim, even if accepted as true. (*Id.* at 6–15.) Plaintiffs respond that New Jersey law governs D'Amato's retaliatory termination claim; D'Amato is a proper CEPA Claimant; and the retaliatory conduct alleged in the Amended Complaint states a CEPA claim. (ECF No. 48 at 34-54.) Defendants reply, reiterating Plaintiffs' CEPA claim is not sustainable as a matter of law for the reasons set out in their moving papers. (ECF No. 51 at 16–19.) The Court agrees with Defendants.

Even assuming New Jersey law applies, Plaintiffs' CEPA claim fails. In relevant part, CEPA provides that "[a]n employer shall not take any retaliatory action against an employee" under certain enumerated circumstances. N.J. Stat. Ann. § 34:19-3. An employee is defined as "any individual who performs services for and under the control and direction of an employer for wages or other remuneration." N.J. Stat. Ann. § 34:19-2; *see also D'Annunzio v. Prudential Ins. Co. of Am.*, 927 A.2d 113, 119 (N.J. 2007). The definition also includes independent contractors. *D'Annunzio*, 927 A.2d at 121. In this Court's decision on Defendants' motions to dismiss JD Global's initial complaint, JD Global's CEPA claim was dismissed; the Court explained:

> Here, JD Global is a corporation and the only plaintiff named in the action. JD Global has not identified, nor is the Court aware of, any authority expanding CEPA protections to corporations. Because the statute defines an "employee" as "any individual," JD Global lacks standing to pursue a CEPA claim.

(ECF No. 34 at 20.) JD Global attempted to cure the deficiency by amending the pleading and adding D'Amato as an individual plaintiff. However, Plaintiffs' CEPA claim still fails.

Crucially, the amended pleading alleges D'Amato is the founder, sole principal and employee of JD Global, and not that he was an employee of any defendant. (ECF No. 38 ¶¶ 3, 12.)

Instead, the Amended Complaint alleges it was JD Global, and not D'Amato, that had an independent contractor relationship with Defendants.[6] (*Id.* ¶¶ 91, 121.) Plaintiffs attempt to avoid the requirement that only individuals can bring a CEPA claim against their employers by asserting Defendants retaliated against JD Global, with whom Defendants have an employment relationship, because of the actions of D'Amato, with whom they do not. This renders Plaintiffs' CEPA claim deficient as a matter of law.

Because D'Amato is not an employee or independent contractor of Defendants, he cannot bring a CEPA cause of action against Defendants. The contractual relationship was between Red Sun Farms and JD Global, a corporation that, alone, also cannot bring a CEPA cause of action against Defendants. Accordingly, Defendants motions to dismiss as to Plaintiffs' Count IV is granted, and Count IV of Plaintiffs' Amended Complaint is dismissed.

### IV.   CONCLUSION

For the reasons set forth above, Red Sun Farms' Motion to Dismiss is **GRANTED** as to Count IV of the Amended Complaint, but **DENIED** as to the remaining counts, and Paivarinta's Motion to Dismiss is **GRANTED** in its entirety.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  July 17, 2023

---

[6] Throughout the Amended Complaint, Plaintiffs frequently refer to their relationship with Red Sun Farms as an employment relationship, despite ultimately defining their role in the relationship as an independent contractor. (*See id.* at ¶ 91 (describing circumstances that occurred "while [JD Global was] employed as an independent contractor").)