UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JD GLOBAL SALES, INC. et al.,

                  **Plaintiffs,**

     v.

JEM D. INTERNATIONAL PARTNERS
LP; JEM D. INTERNATIONAL
(MICHIGAN) INC.; JIM DIMENNA;
CARLOS VISCONTI,

                 **Defendants.**

**Civil Action No. 21-19943 (BRM) (MAH)**

**OPINION & ORDER
(FILED UNDER SEAL[1])**

## I.    INTRODUCTION

This matter comes before the Court by way of the parties' discovery-dispute letters that pose two issues, both concerning subpoenas that Plaintiffs seek to issue to third parties. D.Es. 129 & 130. First, Plaintiffs seek leave to serve subpoenas for documents on five third-party entities. D.E. 129. Defendants object to this request, and contend that the parties previously agreed not to subpoena those five entities. *Id.* Second, Plaintiffs seek leave to re-issue subpoenas to Aldi and Walmart to obtain additional documents. D.E. 130. *See also* D.E.s 140-143 (Exhibits 4 through 7a to D.E. 130). Defendants oppose this request as well. They contend that the information Plaintiffs seek in the Aldi and Walmart subpoenas well exceeds the scope of their prior agreement about those subpoenas. *Id.* The Undersigned has considered this matter

---

[1] The Court has temporarily sealed this Opinion because the parties filed the joint letter regarding the first subpoena dispute and exhibits thereto under seal. D.E. 129. To the extent any party wishes to seal any portion of this Opinion, that party shall make an appropriate motion in accordance with Local Civil Rule 5.3(c)(3), within **fourteen days** of the date of this Opinion. If no party timely files such a motion, or otherwise moves to extend the deadline by which to file the same, the temporary seal will be lifted.

without oral argument.  Fed. R. Civ. P. 78; Local Civ. R. 78.1.  For the reasons set forth below, the Court denies Plaintiffs' requests to issue both sets of subpoenas.

## II.    BACKGROUND

The following background is derived from the Amended Complaint, except as otherwise noted.  Plaintiff JD Global Sales, Inc. ("JD Global"), a New Jersey corporation, is a sales contractor that primarily sells produce to retail suppliers.  Am. Compl., D.E. 38, ¶¶ 2, 12.  Plaintiff James D'Amato is the founder and sole principal of JD Global.  *Id.* ¶¶ 3, 12.  On November 11, 2021, JD Global filed a nine-count Complaint against Defendants Jem D International Partners, LP ("Jem D International"), Jem D International (Michigan) Inc. ("Jem D Michigan"), Jim DiMenna, Carlos Visconti (collectively "Red Sun Farms"), and Harold Paivarinta.  Compl., D.E. 1.  Jem D International and Jem D Michigan "are two of several entities that form a business collective known as Red Sun Farms."  Am. Compl., D.E. 38, ¶ 4.  DiMenna is Red Sun Farms President.  *Id.* ¶ 6.  Visconti is Red Sun Farms's Chief Executive Officer.  *Id.* ¶ 7.  Paivarinta is Red Sun Farms's Director of Sales for North America.  *Id.* ¶ 5.  Red Sun Farms supplies grocery stores and retailers that sell produce directly to consumers.  *Id.* ¶ 13.  Red Sun Farms maintains greenhouses in North America, as well as distribution and growing centers in the United States.  *Id.*

In 2013, D'Amato began discussions with DiMenna and Visconti regarding Red Sun Farms retaining JD Global's services.  *Id.* ¶ 14.  These discussions led to an "oral understanding" in or around November 13, 2014, whereby JD Global would sell Red Sun Farms's produce on a trial basis and as an independent contractor.  *Id.* ¶¶ 15-16.  The parties also agreed to evaluate a longer-term partnership.  *Id.*  On November 26, 2014, JD Global signed a written Agreement for

Services ("the Agreement") with Jem D Michigan. *Id.* ¶ 17. The Agreement permitted either party to terminate the relationship upon thirty days' notice. *Id.* ¶ 18.

In December 2014, D'Amato provided Red Sun Farms with an estimate of the sales JD Global expected to generate through 2015. *Id.* ¶ 20. In February 2015, after evaluating Red Sun Farms's distribution capabilities, D'Amato revised the estimated sales amount. *Id.* ¶ 21.

On February 28, 2015, D'Amato met with DiMenna and Visconti to discuss two proposals for JD Global's continued work with Red Sun Farms. *Id.* ¶ 22. The first proposal would continue the November 2014 Agreement with a revised sales goal. *Id.* ¶ 23. The second proposal involved terminating the Agreement and moving to a commission-based structure, under which D'Amato would be paid a commission on produce sales to new clients instead of a fixed salary. *Id.* This proposal, referred to as the Commission Agreement, was designed to remain in effect until D'Amato retired, with termination only for cause. *Id.*

According to Plaintiffs, during the February 28, 2015 meeting, D'Amato told DiMenna and Visconti that JD Global would not pursue new retail clients for Red Sun Farms unless Red Sun Farms agreed to the Commission Agreement. *Id.* ¶ 24. On the other hand, under the Commission Agreement, JD Global would devote all of its time and effort to developing Red Sun Farms's business with large retailers. *Id.* ¶27. D'Amato also told DiMenna and Visconti that if Red Sun Farms did not agree to the Commission Agreement, JD Global would seek work beyond its existing arrangement with Red Sun Farms. *Id.* ¶ 26.

Plaintiffs allege that DiMenna and Visconti agreed to the Commission Agreement, with the agreement to be formalized in writing by the end of 2015, and an effective date of January 1, 2016. Defendants also assured D'Amato that Red Sun Farms would provide whatever support JD Global required to secure large retail clients for Red Sun Farms. *Id.* ¶¶ 27-28. In exchange

3

for JD Global devoting all its time to securing large retailers for Red Sun Farms, Red Sun Farms would compensate JD Global with a sales commission based on the produce that Red Sun Farms sold to "any customer JD Global obtained for Red Sun Farms after February 27, 2015." *Id*. ¶27. That commission would continue until either D'Amato retired, or Red Sun Farms ceased selling to that customer, whichever came first. *Id.*

Plaintiffs claim that based on this oral agreement, JD Global focused exclusively on acquiring new clients for Red Sun Farms, including large retailers like Walmart and Aldi. Plaintiffs allege their efforts generated tens of millions of dollars in revenue for Red Sun Farms. *Id.* ¶¶ 29-30. On January 15, 2016, DiMenna and Visconti met with D'Amato to discuss the terms of JD Global's continued involvement. *Id.* ¶ 31. DiMenna and Visconti offered D'Amato a salary increase under the original agreement. However, after D'Amato reminded them of the Commission Agreement, DiMenna and Visconti ratified the new arrangement. *Id.* ¶ 32. Plaintiffs submit that Defendants thereby confirmed that JD Global would receive commissions based on produce sales to new customers and that the agreement could be terminated only for cause. *Id.* The details were to be put in writing. *Id.*

On March 4, 2016, D'Amato met with Red Sun Farms's ownership group to discuss the commission rate. *Id.* ¶ 33. D'Amato proposed a commission rate of 1% of delivered Canadian dollars per case, which was lower than market value, in exchange for a lifetime duration and no cap on commissions. *Id.* Red Sun Farms countered with a rate of 0.85% based on the cost of produce Red Sun Farms sold, in United States dollars. *Id.* ¶ 34. D'Amato accepted Red Sun Farms's counter-offer, and the parties agreed that it would a "lifetime employment arrangement" whereby JD Global could be terminated only for good cause. *Id.* ¶ 35. Visconti agreed to have D'Amato draft the formal Commission Agreement to reflect the terms discussed. *Id.* ¶ 35.

4

On May 12, 2016, JD Global sent Red Sun Farms a draft agreement outlining the terms of the Commission Agreement. *Id.* ¶ 37. Red Sun Farms responded with revisions, including suggesting a three-year limit for the agreement. *Id.* Throughout this period, JD Global did not receive any payments for work under the Commission Agreement. *Id.* On June 1, 2016, D'Amato told Visconti that he would sign only an agreement that accurately reflected the Commission Agreement. *Id.* ¶ 39. On June 2, 2016, Red Sun Farms made a retroactive payment to JD Global at the 0.85% commission rate, which Plaintiffs contend represented that a signed agreement was forthcoming. *Id.* However, Red Sun Farms continued to push for revisions to the agreement, including shortening the term. *Id.* ¶ 40.

By October 2017, D'Amato expressed concerns over Red Sun Farms's failure to finalize the written agreement. *Id.* ¶ 41. At that time, Red Sun Farms continued to work with JD Global under the terms of the Commission Agreement. *Id.* ¶ 42. However, by October 2018, D'Amato was informed that Walmart would no longer do business with Red Sun Farms if he remained the account manager. *Id.* ¶¶ 43-44. Nonetheless, Red Sun Farms assured D'Amato that JD Global would still receive full commissions on Walmart sales, even if removed from managing the account, and would adjust the Commission Agreement accordingly. *Id.* ¶ 45. D'Amato was never removed from the Walmart account, but Red Sun Farms continued efforts to alter the non-termination provisions of the agreement. *Id.* ¶¶ 45-46.

While working with Red Sun Farms, JD Global developed a Vendor Management Inventory (VMI) model, which was an Excel spreadsheet designed to track customer needs and to facilitate sales coordination. *Id.* ¶ 47. Red Sun Farms used this tool to manage inventory for clients like Aldi and Walmart, contributing to the procurement of yearly contracts. *Id.* ¶¶ 49-53.

Sometime around 2017 or 2018, Walmart began requiring Red Sun Farms to include "pack dates" on product labels, to track when produce was packaged for sale. *Id.* ¶¶ 54-56. D'Amato discussed with Walmart the proper use of these pack dates, which were to reflect when produce was processed. *Id.* ¶¶ 57-59, 63. However, Red Sun Farms had been reluctant to provide accurate dates, fearing that Walmart might reject the produce. *Id.* ¶¶ 57-58.

In December 2020, Red Sun Farms began downgrading its produce supply to clients like Aldi and Walmart, which resulted in lost sales and reduced commissions for JD Global. *Id.* ¶ 64. Additionally, JD Global discovered that Red Sun Farms had been supplying produce from outside vendors, in violation of their agreement. *Id.* ¶¶ 65-66. When JD Global raised the issue, Red Sun Farms did not respond. *Id.* ¶ 66.

In May 2021, JD Global discovered that Red Sun Farms had not reimbursed Aldi for overpayment on tomatoes due to a duty on imports from Mexico, despite D'Amato's efforts to ensure fair pricing. *Id.* ¶¶ 84-86. Red Sun Farms also had failed to notify JD Global when the duty had been settled, leading Aldi to overpay by hundreds of thousands of dollars. *Id.* ¶ 86. JD Global requested reimbursement, but Red Sun Farms did not respond favorably. *Id.* ¶ 87.

In 2021, Aldi decided to manage its own inventory, and discontinued the use of JD Global's VMI model. *Id.* ¶ 88. On July 27, 2021, Red Sun Farms terminated its relationship with JD Global. *Id.* ¶ 89. D'Amato demanded the deletion of all proprietary files provided by JD Global. *Id.* ¶ 91.

### III.    PROCEDURAL HISTORY

Plaintiffs filed this action on November 11, 2021. D.E. 1. The original Complaint alleged: (1) breach of contract against Red Sun Farms; (2) breach of an implied covenant of good faith and fair dealing against Red Sun Farms; (3) promissory/equitable estoppel against Red Sun

Farms; (4) violation of the New Jersey Conscientious Employee Protection Act ("CEPA")

against all Defendants; (5) violation of the New Jersey Sales Representatives' Rights Act against

Red Sun Farms; (6) fraudulent inducement against Red Sun Farms, Visconti, and DiMenna; (7)

unjust enrichment and quantum meruit against Red Sun Farms; (8) copyright infringement

against Red Sun Farms; and (9) misappropriation of business information against Red Sun

Farms.

On January 14, 2022, Red Sun Farms and Paivarinta each filed motions to dismiss. *See*

Mots. to Dismiss, D.E. 17, 18.  On June 2022, JD Global voluntarily dismissed its copyright

infringement claim.  *See* Letter, D.E. 32; Order, D.E. 33.  On August 3, 2022, the Court

dismissed the CEPA claim, but denied the remainder of the motions.  Op., D.E. 34; Order, D.E.

35.

On August 31, 2022, Plaintiffs filed an Amended Complaint.  The Amended Complaint

alleged: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3)

promissory/equitable estoppel; (4) violation of CEPA; (5) violation of the New Jersey Sales

Representatives' Rights Act; (6) fraudulent inducement; (7) unjust enrichment/quantum meruit;

and (8) misappropriation of business information.  Am. Compl., D.E. 38.  On October 7, 2022,

Red Sun Farms and Paivarinta again filed motions to dismiss.  Motions to Dismiss, D.E. 42, 43.

On July 17, 2023, the District Court granted Paivarinta's motion in its entirety, and dismissed all

claims against him.  Op., D.E. 69; Order, D.E. 70.  The Court again dismissed Plaintiffs' CEPA

claims against Red Sun Farms but denied the remainder of the motion.  *Id.*

On February 2, 2023, this Court held a scheduling conference with the parties, and

entered a Pretrial Scheduling Order.  Pretrial Sched. Order, D.E. 57.  That Order set the close of

fact discovery for December 31, 2023, and the deadline to raise written discovery disputes for

October 31, 2023. *Id.* On September 25, 2023, the Court entered an Amended Scheduling Order, which extended the close of fact discovery to April 12, 2024, and the deadline to raise discovery disputes to January 31, 2024. Am. Sched. Order, D.E. 73. On January 4, 2024, the Court again entered an Amended Scheduling Order, continuing the close of fact discovery to July 31, 2024, but maintained the deadline for written discovery disputes as January 31, 2024. Am. Sched. Order, D.E. 74.

On September 12, 2024, this Court held an in-Court meet and confer for the parties to resolve myriad written-discovery disputes. At the conclusion of that conference, this Court entered an Order that resolved those disputes, that extended the close of fact discovery to May 31, 2025 and the deadline to raise written discovery disputes to April 30, 2025. Order, D.E. 90.

In October 2024, Plaintiffs sought to issue nine subpoenas to current and former customers of Jem D International. Letter, D.E. 92. The customers included subpoenas to: Walmart, Save-a-Lot, John Cerasuolo, Aldi, Ahold Delhaize ("Ahold"), BJ's Wholesale ("BJ's"), Lidl, Sun City, and W.R. Vernon. *Id.* On November 26, 2024, the parties submitted a joint discovery dispute letter to the Court regarding the current dispute. *Id.* On December 2, 2024, this Court entered an Order directing the parties to meet and confer on the subpoena dispute, and to a joint status report regarding their progress in resolving the dispute by December 20, 2024. Order, D.E. 93. On December 19, 2024, the parties submitted a joint status report. The parties reported that they continued to meet and confer on the subpoena disputes, and that they would update the Court during a conference on January 9, 2025.[2] Letter, D.E. 94. On January 23, 2025, during a meet and confer between the parties, counsel reached an agreement

---

[2] The call on January 9, 2025 was adjourned to February 21, 2025 due to the Court being closed for the National Day of Mourning honoring former President James Earl Carter, Jr.

with respect to the subpoena dispute.  The parties memorialized the agreement in writing via emails between counsel on January 31, 2025 and February 2025.  Email, Def.'s Ex. C, D.E. 129-4, at 2; Email, Pl.'s Ex. 1, D.E. 130-1, at 2.  On February 5, 2025, Plaintiffs issued the agreed-upon subpoenas to Aldi, BJ's, and Walmart, as well as two additional subpoenas to Save-a-Lot and United Fruit.  Subpoenas, Def.'s Ex. E, Feb. 5, 2025, D.E. 130-2.  Per the parties' agreement, Plaintiffs' sought from each of these entities, documents and electronically stored information regarding their purchase order payments to Defendants.  *Id.*

But during the February 21, 2025 conference, the parties informed the Court that the dispute had not been resolved.  Apparently, despite the parties' agreement, Plaintiffs sought to issue subpoenas identical to those that the parties agreed not to issue.  *See* Tr. of Feb. 21, 2025 Conf., D.E. 100.  During that conference, the Court resolved other disputes between the parties, but directed them to continue to meet and confer to resolve the subpoena dispute, as well as other disputes between them.  Order, D.E. 99.  This Court directed the parties to file an updated joint status report by March 17, 2025.  *Id.*

The parties continued to meet and confer on various outstanding discovery disputes.  *See*, e.g., Letter, D.E. 108; Order, D.E. 109; Letter, D.E. 110; Order, D.E. 111; Letter, D.E. 112; Order, D.E. 113; Letter, D.E. 114; Order, 115; Letter, D.E. 116; Order, D.E. 117.  When it became apparent the parties were not making adequate progress on their own, the Court scheduled an in-Court meet and confer for July 29, 2025.  Order, D.E. 122.  At the conclusion of that in-Court meet and confer, this Court entered an Order, *inter alia*, directing the parties to submit by September 4, 2025: (1) "a joint letter, limited to five double-spaced pages per side (not including exhibits), addressing their dispute about the [five] subpoenas in dispute;" and (2) "a joint letter, limited to three double-spaced pages per side (not including exhibits), addressing the

three subpoenas that Defendants contend the parties previously resolved through the meet-and-confer process." Order, D.E. 125. The parties filed these letters on September 4, 2025. Letter, D.E. 129; Letter, D.E. 130.

Regarding the first subpoena dispute, Plaintiffs seek leave to serve subpoenas for documents on five third-party entities who are current or former customers of Jem D International. D.E. 129. These third-party entities are: Lidl, Ahold, WR Vernon, Sun City, and John Cerasulo.[3] *Id.* at 2. Plaintiffs contend that these five entities regularly conducted business with Red Sun Farms, and that D'Amato brought them to Red Sun Farms under the purported verbal agreement reached on February 28, 2015. *Id.* Plaintiffs also assert that these entities are listed in Defendants' Rule 26 disclosures as entities with knowledge of important facts. *Id.* Plaintiffs maintain that the information they seek from the subpoenas to these five entities is relevant to the claims and defenses in this matter, are proportional to the needs of the case, are not burdensome, and cannot be obtained from any other source. *Id.* at 2-5.

Defendants oppose the request. D.E. 129-1. Defendants argue that the five subpoenas are the same subpoenas Plaintiffs sought to issue in October 2024 and that the parties, after meeting and conferring at length for months, agreed Plaintiffs would not issue. *Id.* at 1-5. Defendants posit that that counsels' agreement was memorialized in a January 31, 2025 email from Defense Counsel, Joseph H. Tringali ("Mr. Tringali"), to Plaintiffs' Counsel, Dominic V. Caruso ("Mr. Caruso"). *Id.* at 1; *see also* Email, Def.'s Ex. C, D.E. 129-4, at 2. Defendants

---

[3] The subpoenas to Ahold, WR Vernon, Sun City, and John Cerasulo seek "purchase order payments." Subpoenas, Def.'s Ex. B, D.E. 129-3, at 2-9, 18-21, 26-29. Plaintiffs' subpoenas to Lidl seek "purchase order payments," "Lidl's Supplier Master Agreements," "Lidl's Purchase Order Fill Rate requirements and the Monthly Fill Rate Reports." *Id.* at 10-13.

assert that any attempt now by Plaintiffs to issue these subpoenas amount to no more than a "do-over" which "thwarts the purpose and result of the meet and confer conferences." *Id.* at 2. Defendants also maintain that the information the subpoenas seek, in particular, codes of ethics and certain materials related to Jem D International's dealings with its current customers, is irrelevant and little more than a fishing expedition. *Id.* at 4-5.

Regarding the second subpoena dispute, Plaintiffs seek leave to issue additional subpoenas to Aldi and Walmart. The genesis of this dispute began in October 2024, when Plaintiffs proposed to issue subpoenas to Aldi, Walmart, and BJ's.[4] *Id.* After months of meeting and conferring regarding the scope of the subpoenas, the parties agreed that the subpoenas would be limited to purchase order payments. *Id.* On February 5, 2025, Plaintiffs served those subpoenas on Aldi, BJ's, and Walmart. D.E. 130, at 2-4; Subpoenas, Def.'s Ex. E, Feb. 5, 2025, D.E. 130-2. Plaintiffs now contend that although they agreed to subpoena only the purchase order payments from Aldi, Walmart, and BJ's, they specifically reserved the right to seek additional information from these entities. *Id.* Plaintiffs maintain that the information they now seek is relevant to the claims and defenses in this action.[5] *Id.* at 1-4.

---

[4] Plaintiffs do not seek to re-issue a subpoena to BJ's.

[5] The newly proposed subpoena to Aldi seeks: Supplier Master Agreements, signed supply contracts, internal ethics codes, Aldi's Supplier/Vendor Channel Policy, Aldi's Purchase Order Fill Rate requirements and the Monthly Fill Rate Reports, Supplier's/Vendor's VMI program and Aldi's Predictive Ordering Program ("POP") usage timelines. Subpoena to Aldi, Pl.'s Exh. 7, D.E. 130-1, at 10-11.

The newly-proposed subpoena to Walmart USA and Walmart Mexico seeks: Supplier Master Agreements, signed supply contracts, internal ethics codes, On Time and In Full ("OTIF") fulfillment requirements for Produce Suppliers/Vendors and all Monthly OTIF reports, Product Traceability Initiative ("PTI") Label Policy, and HarvestMark PTI label data. Subpoena to Walmart, Pl.'s Exh. 2, D.E. 130-1, at 4-5.

Defendants oppose the new subpoenas to Aldi and Walmart. *Id.* Defendants contend that the subpoenas are contrary to their agreement that Plaintiffs would from Aldi and Walmart only documents regarding sales/payment information. *Id.* at 5-7. In fact, Defendants contend, the new subpoenas are identical to the prior October 2024 iterations that culminated in the parties' compromise agreement on a significantly narrower set of subpoenas and which Plaintiffs issued on February 5, 2025. *Id.* Defendants also argue that the information Plaintiffs seek pertains to the now dismissed CEPA claim. *Id.* at 7. Defendants also contend that Plaintiffs have indicated they seek the information to pursue claims against other parties. D.E. 129-1 at 5 & Ex. F.

## IV.     DISCUSSION

Under Federal Rule of Civil Procedure 45, a subpoena must comply with the scope of discovery defined by Federal Rule of Civil Procedure 26(b)(1). Additionally, Rule 45 requires that subpoenas avoid imposing undue burden and must protect non-parties from significant compliance costs.[6] *DIRECTV, Inc. v. Richards*, No. 03-5606, 2005 WL 1514187, at *2 (D.N.J.

---

[6] Plaintiffs do not argue that Defendants lack standing to challenge their request to serve subpoenas on third parties. As a rule, a party lacks standing to challenge a subpoena to a third-party under Rule 45. *See Malibu Media, LLC v. Doe*, No. 15-8252, 2016 WL 3876425, at *3 (D.N.J. July 14, 2016) ("Generally, a motion to quash or modify a subpoena must be brought by the individual to whom it was directed."). However, even if Defendants lack standing to challenge the subpoenas under Rule 45, the Court finds that they have standing under Rule 26(c). "Unlike Rule 45, Rule 26(c) grants nonproducing parties standing to move for a protective order." *Contour Data Sols. LLC v. Gridforce Energy Mgmt., LLC*, No. 20-3241, 2022 WL 3907530, at *2 (E.D. Pa. July 25, 2022). Rule 26(c) states, in relevant part, "[a] party or any person from whom discovery is sought may move for a protective order." Courts have interpreted this rule "to provide standing for a party to contest discovery sought from third-parties." *Underwood v. Riverview of Ann Arbor*, No. 08-11024, 2008 WL 5235992, at *2 (E.D. Mich. Dec. 15, 2008); *see also Contour Data*, 2022 WL 3907530, at *2 (concluding that while a party lacked standing to quash the subpoena under Rule 45, it had standing under Rule 26(c) to seek a protective order); *Petroleum Mktg. Grp., Inc. v. Universal Prop. Servs., Inc.*, No. 22-2410, 2022 WL 20656112, at *4 (D.N.J. Dec. 5, 2022) (same); *Doe v. Princeton Univ.*, 349 F.R.D. 92, 96-97 (D.N.J. D.N.J. 2025) (same). Accordingly, the Court finds that Defendants have standing to challenge the proposed subpoenas to the third parties.

June 27, 2005) ("A subpoena causes an undue burden if the request 'is unreasonable or oppressive.'").

The Court considers several factors when determining the relevance of a subpoena, including: "(1) the party's need for the production; (2) the nature and importance of the litigation; (3) the relevance of the material; (4) the breadth of the request for production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed party." *In re Lazaridis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011) (citing *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-597, 2007 WL 2362598, at *4 (D.N.J. Aug. 15, 2007)). Once the issuing party establishes that the documents sought are relevant to the claims or defenses at issue, the burden shifts to the party resisting discovery to demonstrate why the Court should not require production. *See Biotechnology Value Fund L.P. v. Celera Corp.*, No. 14-4046, 2014 WL 4272732, at *1 (D.N.J. Aug. 28, 2014); *DIRECTV, Inc.*, 2005 WL 1514187, at *2. A party may carry this burden by showing that the request is overly broad, unduly burdensome, or otherwise improper.

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman*, 329 U.S. at 507. It allows each party to have a fair opportunity to present an effective case at trial. *Halpin v. Barnegat Bay Dredging Co.*, No. 10-3245, 2011 WL 2559678, at *10 (D.N.J. June 27, 2011) (collecting cases). Accordingly, courts construe Rule 26 "broadly to encompass any matter that bears on, or that

13

reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

But even Rule 26(b)(1) has limitations. For one, it prohibits parties from using discovery to "go fishing" through overbroad discovery requests based only on suspicion or speculation. *See Korotki v. Cooper Levenson, April, Niedlman & Wagenheim, P.A.*, No. 20-11050, 2022 WL 2191519, at *5-7 (D.N.J. June 17, 2022); *Hashem v. Hunterdon Cnty.*, No. 15-8585, 2017 WL 2215122, at *3 (D.N.J. May 18, 2017). This Court has broad discretion to determine the enforceability of a subpoena and may modify or quash it if it exceeds the scope of relevant and admissible discovery. *See Scmulovich*, 2007 WL 2362598, at *2; *Malhan v. Grewal*, No. 16-8495, 2020 WL 6391180, at *5 (D.N.J. Nov. 2, 2020) (quoting *Biotechnology Value Fund*, 2014 WL 4272732, at *1). "Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances." *Forrest v. Corzine*, 757 F. Supp. 2d 473, 477 (D.N.J. 2010).

Second, discovery is not to determine whether a claim has any basis in the first place, but instead to allow a party to substantiate a claim or defense that it reasonably believes is viable. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) (explaining that discovery is "designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim"). *See also Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. 07-5139, 2008 WL 2885887, at *5 (D.N.J. July 23, 2008) ("To state a viable claim, a plaintiff must make factual allegations that are 'enough to raise a right to relief above the speculative level on the assumption that all of the Complaint's allegations are true (even if doubtful in fact) ... The purpose of discovery is to uncover evidence of the facts

14

pleaded in the Complaint ... not 'to find a cause of action.'" (quoting *Ranke v. Sanofi-Synthelabo, Inc.,* 436 F.3d 197, 204 (3d Cir. 2006)).

Federal Rule of Civil Procedure 37 states:

On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a)(1).  Pursuant to Local Civil Rule 37.1(a):

Counsel shall confer to resolve any discovery dispute. Any such dispute not resolved shall be presented by telephone conference call or letter to the Magistrate Judge. This presentation shall precede any formal motion.

L. Civ. R. 37.1(a)(1).

"It is essential to our system of justice that lawyers and litigants, above all, abide by their agreements and live up to their own expectations." *In re Bristol-Myers Squibb Sec. Litig.*, 205 F.R.D. 437, 444 (D.N.J. 2002).   The meet and confer process is an efficient method to resolve discovery disputes. *Samuel, Son & Co. v. Beach*, No. 13-128, 2014 WL 5089718, at *4 (W.D. Pa. Oct. 9, 2014).  "This process can only be furthered if the Court enforces agreements reached during meet and confer sessions and requires the parties and their counsel to perform their respective obligations under the bargains which have been achieved." *Id.*  "If the parties could not rely on courts to enforce discovery agreements, there would be little incentive for parties to make them." *FrenchPorte IP, LLC v. C.H.I. Overhead Doors, Inc.*, No. 21-2014, 2023 WL 2447591, at *3 (C.D. Ill. Mar. 10, 2023) (citation and brackets omitted).

The Court is satisfied that the parties reached an agreement concerning the seven subpoenas currently in dispute, and that Plaintiffs now are trying to obtain the information they agreed they would no longer seek.  Correspondence exchanged between counsel establish that

15

during the January 23, 2025 meet and confer, the parties entered into an agreement to resolve both subpoena disputes.  The correspondence further establishes that the parties agreed that the subpoenas would be issued only to BJ's, Aldi, and Walmart, and would be limited to only documents related to payments to Defendants.  Specifically, on January 31, 2025, Defense counsel, Mr. Tringali, e-mailed Plaintiffs' counsel, Mr. Caruso.  There, Mr. Tringali wrote: "We have conferred with our client and agree that the subpoena dispute is resolved as we discussed; by limiting to a request from Walmart, Aldi and BJ's for all monies paid to the various entities." Email, D.E. 130-2, at 22.  Mr. Tringali asked Mr. Caruso to send the revised subpoenas so that Defendants could review them before they were sent to Aldi, BJ's, and Walmart.  *Id.*  On February 5, 2025, Mr. Caruso responded via letter: "Pursuant to our meeting on January 23, 2025 and your email of January 31, 2025 I am enclosing subpoenas to ALDI, BJ's and WALMART which are limited to payments to Red Sun Farm entities.  These subpoenas are being submitted as a compromise solution to your objection to the Rule 45 (a)(4) notice we sent you on October 22, 2024."  D.E. 130-1, at 2.

It is clear that after months of meeting and conferring, the parties reached an agreement on the appropriate entities to subpoena and the scope of those subpoenas.  The subpoenas Plaintiffs now seek to serve on the five entities directly contravene that compromise, as do the proposed new subpoenas to Aldi and Walmart for additional information.  Plaintiffs contend they reserved the right to do so in Mr. Caruso's February 5, 2025 confirmation letter to Mr. Tringali. In that letter, Mr. Caruso stated: "I reiterate and reaffirm my position that plaintiff is not abandoning its right to seek additional relevant information from these particular vendors and others."  *Id.*  But this reservation of right is entirely too vague to merit serious consideration.  It is devoid of specific contingencies that might necessitate the issuance of additional subpoenas.

16

Similarly, it does not set forth what additional information might be necessary, much less the basis for it under Rule 26(b)(1).

There is little support in the record for Plaintiffs' suggestion that the agreement notwithstanding, they agreed to hold in abeyance the prospect that Plaintiff might issue additional subpoenas.  Instead, the record strongly suggests that the parties had reached the compromise agreement concerning the subpoenas, and instead were meeting and conferring on the separate issue of the adequacy of Plaintiffs' December 2024 production to Defendants.  *See* Feb. 21, 2025 Hearing Tr., D.E. 100, at 13:12-21, 14:15-16:1.  In addition to the subpoenas being issued according to the terms of the parties' agreement, Mr. Tringali specifically withdrew his objections to Plaintiffs' subpoenas based on that agreement.  *See* Email, D.E. 130-2.

In fact, Mr. Tringali's January 31, 2025 email confirming resolution of the subpoena disputes stated:  "We also agree to resolve the written discovery dispute by holding same in abeyance."  Email, D.E. 129-4.  Thus, it is clear the parties agreed to hold in abeyance the discovery dispute related to the Plaintiffs' December 2024 production, not the subpoena issue that they had resolved.  And if the parties had agreed to hold the issue of additional subpoenas in abeyance pending additional meet and confers, they would have scheduled additional meet and confers.  However, they did not.  *See id.* at 13:9-13.  Plaintiffs do not produce evidence of a single telephone call or email during which the parties attempted to set up additional meet and confers concerning the subpoenas.  To the contrary, at the February 21, 2025 conference, Mr. Tringali stated that he learned only two days before the conference that Plaintiffs were seeking to issue additional subpoenas.  *Id.* at 6:21-24.

Finally, when Mr. Caruso sent the subpoenas intended for Aldi, BJ's, and Walmart to Mr. Tringali on February 5, 2025, Mr. Caruso included two new subpoenas, one to Save-a-Lot and

another to United Fruit.  D.E. 129-1, at 3-4; Feb. 21, 2025 Hearing Tr., D.E. 100, at 4:10-18.

The parties had not discussed subpoenas to these two entities during their meet and confers.

Thus, they were not a part of the parties' subpoena agreement.  Mr. Tringali did not object to the

subpoenas to those entities because Plaintiffs had been paid a commission for sales to these two

entities for a short period of time, and the subpoenas were limited to purchase order payments.

D.E. 129-1, at 3-4; Feb. 21, 2025 Hearing Tr., D.E. 100, at 4:10-18.  However, if the parties had

truly tabled the issue of additional subpoenas, it follows that Mr. Tringali would have objected to

the two brand new subpoenas to be addressed at additional meet and confer conferences.

Instead, Mr. Tringali confirms that he did not object.  D.E. 129-1, at 3-4; Feb. 21, 2025 Hearing

Tr., D.E. 100, at 4:10-18.

To allow Plaintiffs to re-initiate third-party discovery at this late date in the litigation,

simply because Plaintiffs changed their mind, would allow Plaintiffs to abnegate an agreement

that both parties accepted after months of negotiating, and flout the purpose of the meet and

confer process under Rule 37(a)(1) and Local Civil Rule 37.1(a)(1).  Accordingly, it is

appropriate to hold Plaintiffs to the agreement that their counsel reached in good faith with

Defendants' counsel.  *See In re Bristol-Myers Squibb Sec. Litig.*, 205 F.R.D. at 444 (finding that

lawyers and parties must live up to their agreements).

The foregoing analysis, by itself, compels denial of Plaintiffs' request to issue the

subpoenas.  But the Court also notes that the additional information that Plaintiffs seek in the

new subpoenas is, at best, marginally relevant.  Plaintiffs claim that it is entitled to compensation

under the Commission Agreement for sales to Walmart, BJ's and Aldi.  Plaintiffs further contend

that they are entitled to certain commissions in perpetuity, based on the allegation that the parties

agreed to commissions for the life of Mr. D'Amato, or until he retired.  Plaintiffs also contend

they are entitled to compensation for commissions on sales to WR Vernon, Sun City Produce, John Cerasuolo, Ahold Delhaize, and Lidl.

The subpoenas on which the parties previously agreed already encompass discovery of the necessary information to probe Plaintiffs' claims. That is, they encompass discovery of sales and payment information in order to calculate or confirm the commissions paid during the lifespan of the parties' agreement. In fact, during the parties' negotiations of the prior subpoenas to Walmart, BJ's and Aldi, Defendants agreed that the inquiry into sales and payment information could extend "the present day."

The new subpoenas that Plaintiffs propose to issue to the five current or former customers of Jem D seek codes of ethics and materials about Jem D's current dealings with those customers. As such, they well exceed the information necessary for Plaintiffs to prosecute the claims remaining in this litigation. Those five entities were not named in the 2016 Commission Agreement and Plaintiffs did not receive commissions for sales to any of those five entities during the course of the parties' dealings between 2016 and 2021, when the parties' relationship ended. Nor do Plaintiffs allege otherwise. *See* Am. Compl., D.E. 38.

The subpoenas to Aldi and Walmart go even farther, and seek monthly fill reports, suppler/vendor channel policies, and fill-rate requirements that have little, if anything, to do with the core issues in this matter. Specifically, the newly proposed subpoena to Aldi seeks: Supplier Master Agreements, signed supply contracts, internal ethics codes, Aldi's Supplier/Vendor Channel Policy, Aldi's Purchase Order Fill Rate requirements and the Monthly Fill Rate Reports, Supplier's/Vendor's VMI program and Aldi's POP program usage timelines. Subpoena to Aldi, Pl.'s Ex. 7, D.E. 130-1, at 10-11. The newly proposed subpoena to Walmart USA and Walmart Mexico, similarly seeks: Supplier Master Agreements, signed supply contracts, internal ethics

19

codes, OTIF fulfillment requirements for Produce Suppliers/Vendors and all Monthly OTIF reports, PTI Label Policy, and HarvestMark PTI label data.  Subpoena to Walmart, Pl.'s Ex. 2, D.E. 130-1, at 4-5.  As the party seeking discovery, it is the Plaintiffs' obligation to demonstrate its relevance.  *See Price v. Cnty. of Salem*, No. 22-6042, 2024 WL 3522443, at *3 (D.N.J. July 24, 2024) ("And it is Plaintiffs' burden—as 'the party seeking discovery' to 'demonstrate the relevancy of the requested information.'") (quoting *AdvanSix Inc. v. Allianz Glob. Risks US Ins. Co.*, 2023 WL 179963, at *2 (D.N.J. Jan. 13, 2023)).  Here, Plaintiffs have entirely failed to justify, nor can the Court independently grasp, the relevance of that additional information to the remaining claims in this litigation.[7]

## V.    CONCLUSION & ORDER

For the reasons set forth above,

IT IS on this 24th day of February 2024,

ORDERED Plaintiffs' request to serve document subpoenas on Lidl, Ahold, WR Vernon, Sun City, and John Cerasulo, D.E. 129, is DENIED; and it is further

ORDERED that Plaintiffs' request to re-issue subpoenas to Aldi and Walmart to obtain additional documents, D.E. 130, is DENIED.

---

[7] The speculative nature of Plaintiffs' requests not only fails to satisfy the relevance requirement under Rule 26, but it also renders it unduly burdensome to require non-parties to produce the information Plaintiffs request.  *See* Fed. R. Civ. P. 26(b)(1).  Non-parties are "afforded greater protection from discovery than a normal party."  *See Walgreens Specialty Pharm., LLC v. Atrium Admin. Servs.*, No. 19-12756, 2013 WL 4537790, at *7 (D.N.J. Oct. 13, 2020); *Kelley v. Enhanced Recovery Co., LLC*, No. 15-6527, 2016 WL 8673055, at *2 (D.N.J. Oct. 7, 2016); *Chazanow v. Sussex Bank*, No. 11-1094, 2014 WL 2965697, at *3 (D.N.J. July 1, 2014); *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990).  Therefore, the Court denies Plaintiffs' request to serve additional subpoenas on the seven non-parties.  Without a clear connection to the existing claims, Plaintiffs have failed to establish that this discovery from the third parties is reasonably relevant to the claims against Defendants to warrant the production from the non-parties.

*s/ Michael A. Hammer*
**Hon. Michael A. Hammer**
**United States Magistrate Judge**

**DATED: February 23, 2026**