# CONTENTS GUIDE TO PLAINTIFF'S CONTEMPORANEOUS EVIDENCE

## (Folders 1–4: 517 Pages)

| Folder | Pages | Subject Matter | Exhibits |
|---|---|---|---|
| Folder 1 | 46 | Protected Activities: Whistleblower complaints, hostile work environment, sales call misconduct | A–I |
| Folder 2 | 139 | Events Leading to Termination: Service level failures, unanswered calls for help, supply chain sabotage (Dec 2020–Jul 2021) | A–V |
| Folder 3 | 184 | Damages: Revenue projections, commission calculations, industry benchmarking, lifetime value analysis (2021–2047) | A–B |
| Folder 4 | 148 | Contract History & Termination: Complete timeline 2013–2021, verbal agreements, termination circumstances, demand for return of copyrighted files | A–Z |
| TOTAL | 517* | *Includes cover pages, narrative text, and scanned exhibit pages | 58+ |

### Folder 1: Protected Activities (46 pages)

Documents Mr. D'Amato's three protected activities under the New Jersey Conscientious Employee Protection Act. The narrative (pages 2–6) describes the hostile work environment on RSF's daily Microsoft Teams sales calls—including sexual profanity, vulgar comments by Sales Director Harold Paivarinta, and calls lasting 2–3 hours daily—and Mr. D'Amato's complaints to ownership. Exhibits include: the May 5, 2021 Teams recording ban policy (issued after Mr. D'Amato's complaints); the RSF Code of Conduct signed December 16, 2016; HP's harassing emails demanding sales call attendance; phone records showing Mr. D'Amato's 34-minute and 66-minute calls to ownership reporting the misconduct; and the email exchanges constituting Whistle Blows #1, #2, and #3.

### Folder 2: Events Leading to Termination (139 pages)

Contains 21 exhibits (A–V) documenting the systematic deterioration of RSF's support for Mr. D'Amato's accounts from December 30, 2020 through July 26, 2021. Each exhibit is a contemporaneous email exchange with RSF ownership (Visconti, DiMenna) or management (Paivarinta) showing: repeated calls for help on Aldi and Walmart service levels with no replies from ownership; warnings that RSF's prorate policy would cause business losses (which occurred); the May 4, 2021 demand for $365,000 Aldi duty reimbursement (Protected Activity #3); documentation that RSF's internal systems were failing; and HP's false accusations about Mr. D'Amato's connection to the business—refuted by daily sales call recap emails from the Sales Coordinators proving Mr. D'Amato was fully informed.

### Folder 3: Damages and Commission Analysis (184 pages)

Mr. D'Amato's contemporaneous damages calculation projecting commission income from 2021 through retirement age (2047), based on average U.S. dollar sales for 2018–2020 for Aldi and Walmart. Includes complete commission reports for January 2016 through June 2021 (Exhibit B) and industry benchmarking establishing that JDGS's 0.85% commission rate was far below the industry standard of 2–10% for produce sales contractors—reflecting the trade-off for lifetime terms with no termination clause. The projections do not account for expected growth, making them conservative.

**Folder 4: Contract History and Termination (148 pages)**

The most comprehensive folder. Pages 2–7 contain Mr. D'Amato's detailed Contract Discussions Timeline covering 2013–2021, documenting: the initial contact with RSF; the February 28, 2015 SEPC Florida meeting where the lifetime verbal agreement was reached ("we are married" / "mutual annuity to retirement age"); the April 27, 2016 Dublin, Virginia meeting confirming 0.85% rate conditioned on career-long terms; the May 12, 2016 written memorialization; the June 2, 2016 retroactive payment ratifying the agreement; RSF's multiple failed attempts to impose a written contract with a termination clause (all rejected by Mr. D'Amato); and the July 27, 2021 termination. Exhibits A–Z include: the original deal agreement, commission structure, text messages between Visconti and Mr. D'Amato, the redline contract negotiations, the termination letter, and Mr. D'Amato's immediate demand for return of copyrighted files.

**These materials were prepared in real time, not for litigation. They predate the filing of the original complaint. Three successive attorneys and opposing counsel all possessed these 517 pages. None introduced them into the record.**