UNITED STATES DISTRICT COURT / FOR THE DISTRICT OF NEW JERSEY

JD GLOBAL SALES, INC. (existing corporate plaintiff; not represented by James) and JAMES D'AMATO, Plaintiffs, v. JEM D INTERNATIONAL PARTNERS, LP; JEM D INTERNATIONAL (MICHIGAN) INC.; JEM-D INTERNATIONAL INC. (proposed general-partner defendant); HAROLD PAIVARINTA (proposed R12 addition following dismissal); ROBERTO SALDAÑA CASTILLO (proposed R12 addition); JIM DIMENNA; CARLOS VISCONTI; WALMART INC.; DON FOX; BRAULIO VALDES; ALDI INC.; BILL DUESENBERG; and ABC COMPANIES 1-10, Defendants.

Civil Action No. 2:21-cv-19943-MEF-ADS — PROPOSED SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

THE PARTIES (adapted from D.E.38 ¶¶2–8)

P1. Plaintiff JD Global Sales, Inc. ("JD Global") is a New Jersey corporation. On November 11, 2021, its principal place of business was 20 Berry Place, Glen Rock, New Jersey, where James directed and managed the company. Its mailing address was 233 Rock Road #101, Glen Rock, New Jersey 07452.

P2. Plaintiff James D'Amato is an individual residing in Glen Rock, NJ. When this action commenced on November 11, 2021, he was a United States citizen whose permanent home was New Jersey, and he was a United States citizen whose permanent home was New Jersey on October 1, 2026. He founded JD Global and is its sole principal. He proposes the individual claims in his own capacity. He does not appear for JD Global or assert its claims pro se. JD Global Sales, Inc. may appear only through licensed counsel (D.E.154). Paragraphs labeled “Corporate claim identified for directions” describe claims of JD Global, including those pleaded in D.E.38, so that the Court may give the directions requested in the accompanying motion concerning JD Global's existing claims and any corporate amendment presented through counsel. They are not asserted in this pleading by James D'Amato or on JD Global's behalf. Their inclusion does not make any claim pending and is not represented as preserving, reviving, tolling

or relating back any claim.

P3. Defendant Jem D International Partners, LP (the LP) and Defendant Jem D International (Michigan) Inc. (Michigan) are distinct entities. Defendants' Answer, D.E.71 paragraph 4, states that both use the Red Sun Farms trade name; paragraph 13 identifies the LP's customer business. James alleges alternative principal and recipient roles as specifically described below. A common trade name, domain or signature does not alone resolve which entity acted in a particular transaction. The reviewed Michigan annual-report collection contains no assumed-name certificate; that bounded absence is not an allegation that Michigan never used the name or that defendants' stated use was necessarily false.

P4. Harold Paivarinta is a proposed defendant on R12 following his earlier dismissal. In D.E.71 paragraph 5, defendants identified him as Senior Director of Sales and Business Development for Jem D International, the LP identified in paragraph 4 of that Answer. That dated admission does not establish every earlier employment capacity. James seeks to add him for his own acts described in R12.3-R12.3C, not because of title alone. D.E.69-70 and the required express leave request are addressed in the accompanying motion; this paragraph does not restore him or revive CEPA automatically.

P5. Defendant Jim DiMenna is identified in D.E.71 paragraph 6 as president of Michigan and the LP. The capacity in which he made a particular statement remains transaction-specific.

P6. Defendant Carlos Visconti is identified in D.E.71 paragraph 7 as chief operating officer of Michigan and the LP. Operational Red Sun Farms titles and the separate general-partner officer record are not treated as proof of a statutory office in every affiliate. His alleged acts and representations remain separately identified.

P7. ABC Companies 1-10 refer only to genuinely unidentified actors whose relevant conduct may be established. James continues to evaluate the potential roles of the affiliates disclosed in D.E.30 and other officers and owners, including Steve Macchio, to determine whether discovery supports a claim against a particular person or entity. Those candidates, except for defendants expressly named elsewhere in this proposed pleading, are not named as defendants by this

paragraph. James does not label disclosed entities or known individuals unknown merely because their responsibilities remain disputed.

P8. Walmart Inc. is included as the proposed Walmart-side retailer defendant. [REDACTED] The proposed corporate identity and citizenship allegation appears in J2A. Confirmation of the exact acting entity and relevant dates, service identity and basis for attributing the challenged conduct to the proposed entity remain subject to unresolved exact-entity, relevant-date, service-identity and conduct-attribution requirements and are not inferred from the Walmart brand alone.

P9. Don Fox participated in the Walmart business relationship. [REDACTED] Fox is a proposed defendant on R12, not automatically on every theory or on R18.

P10. Braulio Valdes participated in Walmart produce communications. [REDACTED] These operational roles do not establish an uninterrupted identical remit, knowledge of every private compensation term, or improper conduct by themselves. He is a proposed defendant on R12 and R18, subject to their stated conduct and capacity holds.

P11. Aldi Inc. is included as the proposed Aldi-side retailer defendant. [REDACTED] These records support identifying the ALDI-side participant in that dated supplier relationship; they do not establish the acting entity for every later challenged act, citizenship, service or New Jersey jurisdictional contacts. The separate information-and-belief citizenship allegation appears in J2B and remains subject to the entity/date checks stated there. The supplier agreement is not James's separate compensation agreement, and no corporate label is an admission of an alleged restraint or interference.

P12. [REDACTED] He is a proposed defendant on R11, R13 and R18, subject to their stated conduct, knowledge and capacity holds.

P13. The proposed new general-partner defendant is JEM-D International Inc., a separate Ontario corporation, not Michigan and not the LP itself. D.E.30 discloses it in the ownership chain. [REDACTED] That is a party's filed account, not a finding by this Court or proof of every

later corporate event. These dated records support a particular general-partner theory rather than an inference of liability from shared branding alone.

P14. In the alternative, to the extent the LP is found to have incurred the obligations alleged in R01-R03 or R09-R10 while JEM-D International Inc. was its general partner, James seeks relief against that general partner to the extent the governing partnership law makes it responsible for those LP obligations. R17 follows that route only insofar as a qualifying obligation and a separate basis for accounting are established. This is not an allegation that the general partner itself spoke every promise, signed the disputed guaranty, owned every asset or committed every statutory tort. James gives notice under Rule 44.1 that the Ontario partnership-law consequences of the pleaded general-partner relationship may be at issue, including section 8 of Ontario's Limited Partnerships Act read with section 10(1) of its Partnerships Act. Choice of law, relevant-date status, the scope of liability, jurisdiction and service require determination; no liability is sought merely because of a shareholder interest.

P15. Michigan and the LP are alleged as alternative principals, not as interchangeable names for a single legal person. The November 19, 2014 services agreement names Michigan and JDGS and expressly describes Michigan as providing sales and marketing services for the LP dba Red Sun Farms. [REDACTED] References to Red Sun Farms in the paragraphs identifying corporate claims are retained for comparison with D.E.38, but are not a proposed separate trade-name defendant. Their attribution is limited to the supported entity and act, with the P14 general-partner route only in its specified counts. No known affiliate is added to every count through that shorthand. Harold Paivarinta is expressly proposed for addition on R12 under the accompanying notice paragraph 3A, brief Section III and proposed order A6. The prior dismissal remains acknowledged; neither this attribution paragraph nor caption visibility restores him.

P16. Roberto Saldaña Castillo is proposed as an additional defendant on R12 only for the alleged acts identified in R12.3D, not from ownership or title alone. His citizenship, domicile and

residence, the basis for personal jurisdiction, and the proper method of service, including any applicable service-abroad requirements, remain to be established. No citizenship, location, agency authority or liability is inferred merely from the Red Sun Farms name.

JURISDICTION AND VENUE

J1. James invokes federal-question jurisdiction under 28 U.S.C. § 1331 for the proposed federal counts R05, R07 and R11, subject to their claim-specific statutory and factual requirements, and supplemental jurisdiction under 28 U.S.C. § 1367 over related state-law claims. Their inclusion does not adjudicate a federal claim's sufficiency, title, antitrust injury or the copyright prerequisite.

J2. Diversity under 28 U.S.C. § 1332 remains an alternative jurisdictional basis requiring complete party-specific citizenship and the amount in controversy. Residence, a business address, a brand, or an LP/LLC's place of formation is not substituted for the required citizenship inquiry. The separate information-and-belief allegations for Walmart Inc. and ALDI Inc. appear in J2A-J2B; no other proposed new party's citizenship or complete diversity is inferred from them. In their July 31, 2023 Answer, D.E.71 paragraph 4, the answering defendants stated that Jem D International (Michigan) Inc. was organized under Michigan law with its principal place of business in Pharr, Texas, and that none of Jem D International Partners, LP's partners, members or interest holders were New Jersey citizens. James relies on those dated statements without treating them as a determination of complete diversity or as addressing any proposed new defendant. James's own citizenship is alleged in P2; that allegation does not establish complete diversity among the proposed parties.

J2A. On information and belief, Walmart Inc., formerly Wal-Mart Stores, Inc., is incorporated in Delaware and has its principal place of business in Bentonville, Arkansas.

J2B. On information and belief, ALDI Inc. is incorporated in Illinois and has its principal place of business in Batavia, Illinois. These allegations remain subject to confirmation of the exact

proposed entities and the legally relevant dates. They do not establish the citizenship of the individual buyers or the proposed general-partner defendant, complete diversity, attribution of a particular act to the named corporation, personal jurisdiction or service.

J3. James alleges that a substantial part of the negotiations, his work and the claimed injury occurred in New Jersey, where he operated, and invokes 28 U.S.C. § 1391(b). The defendants who filed D.E.71 admitted that Jem D International Partners, LP is registered and/or authorized to do business in New Jersey (paragraph 11) and that Jim DiMenna met James in New Jersey on or about November 13, 2014 (paragraph 15). Those admissions do not establish venue or personal jurisdiction as to any proposed new defendant, which depends on defendant-specific allegations of the kind described in J4.

J4. The proposed forum-contact basis must be stated for each defendant, including the particular purposeful contacts and their relation to the asserted claim. James does not rely on the Sales Representatives' Rights Act as an automatic personal-jurisdiction grant or on conduct of one affiliate as the conduct of all. The unresolved party-specific contacts and service questions concerning jurisdiction must be addressed before a filing version is selected.

J4A. James's Red Sun Farms-branded business card identified him as Jim D'Amato, Senior Account Manager, and listed his business contact address as 233 Rock Road #101, Glen Rock, New Jersey 07452, with jdamato@redsunfarms.com. The Rock Road address was his mailbox location. He worked from his greenhouse office at 20 Berry Place, Glen Rock, New Jersey. The branding and title do not by themselves identify the legal entity represented.

J4B. James recalls handing his business card to everyone present at a meeting at Walmart's office in Doral, Florida, including Don Fox and Braulio Valdes, with whom he dealt at Walmart. He also recalls first handing his card to Bill Duesenberg, with whom he dealt at ALDI, at ALDI headquarters after Lisa Netzel departed. These deliveries are alleged from James's personal

recollection, not independently verified acknowledgments. No exact delivery date is alleged here.

J4C. To the best of his recollection, from 2015 through 2021, James participated in all video calls, including Microsoft Teams and Zoom calls, from his greenhouse office in New Jersey. [REDACTED] His account of his location rests on his qualified recollection, not location data in those records. These facts do not establish attendance at every invited meeting, another participant's knowledge of his location, or each defendant's suit-related New Jersey contacts by themselves. Declaration ¶¶4D–4G; [REDACTED]

J4D. [REDACTED] These records are offered as particular retailer contacts, not proof of attendance at each meeting, completed address correction, Fox's or Valdes's receipt of the completed contact form, knowledge of James's physical location, or wrongful purpose. [REDACTED]

Common allegations

1. James D'Amato personally participated in the negotiations and performed the customer-development and operational work described below. He alleges that the original undertaking included protections concerning his own working career and the conditions on which he would commit his efforts. He alleges that the career-long commitment without a fixed term and the promised business-divorce buyout were undertakings to him personally, distinct from the commission payments made to JDGS. He seeks enforcement of his own rights, if established, not a transfer of JD Global Sales, Inc.'s rights based on his ownership or performance.

2. James used JDGS to receive and account for compensation. He acknowledges that the written agreements named JDGS, the payments went to JDGS, and D.E. 38 principally allocated the compensation and business claims to JDGS. He does not recall JDGS being named in the oral

discussions at issue. The personal undertaking he alleges must be evaluated alongside, not in place of, those corporate documents and earlier allegations.

3. James negotiated with Jim DiMenna and Carlos Visconti in their roles with the business known as Red Sun Farms. He has not seen an email domain or email signature identifying either man as communicating on behalf of Jem D International (Michigan) Inc. [REDACTED] James distinguishes that written designation from what was said to him during the oral negotiations.

3A. James understood Carlos Visconti to be authorized to resolve the negotiations conducted under the Red Sun Farms name, including the duration and exit terms James discussed with him. Carlos presented proposed terms, discussed James's objections and arranged payment. [REDACTED] James's account of Carlos's oral acceptance is stated separately. [REDACTED]

4. James understood that any agreement he accepted needed to be with Jem D International Partners LP, which he understood to be the entity contracting with each customer. He recalls telling Jim DiMenna during the later commission-agreement negotiations that he required Partners LP to be included for that reason. He recalls DiMenna responding that the Michigan entity would always survive but agreeing to include Partners LP. [REDACTED] He did not request its inclusion in the initial 2014 bridge agreement. [REDACTED]

4A. [REDACTED] These are different entities. [REDACTED] James offers this copy as evidence of the proposed written terms, not as an executed counterpart. This description is limited to that copy and does not resolve whether another signed counterpart exists or whether the parties reached the oral agreement James describes and then performed under it.

5. James recalls meeting with Jim DiMenna and Carlos Visconti on February 28, 2015 and explaining that his commitment depended on a career-long relationship, protection against termination without the discussed misconduct basis, and a buyout if they wanted him to leave. He recalls using marriage-and-divorce language, requesting confirming handshakes twice, and

both men agreeing. Embezzlement was discussed as an example of misconduct. This describes the substance he recalls, not a verbatim transcript or the formation of a legal partnership.

6. Following that meeting, James's primary goal was securing large retail customers for RSF. His work also included onboarding, product packaging, retail-ready box design, customer pricing, product-development coordination, supplier communications, and assisting procurement of items RSF did not grow. These are illustrative, not exhaustive, activities. They are not pleaded as proof that James alone performed every business function or personally owned every resulting receivable.

7. [REDACTED] James performed this work with other personnel; a proposal is not alleged to have been completed merely because he worked on it.

7A. James recalls bringing his Eurofresh experience and prior relationship with Kees Rodenburg to the Aldi Roma grab-and-go project. He describes developing product and packaging proposals, coordinating suppliers and RSF personnel, addressing sizing and shelf-life requirements, and managing the work needed to launch and support customer programs. He also states that he managed RSF's Aldi PTP tender and contract submissions from 2015 until termination, gathering required information from departments, verifying it, compiling it and completing submissions even when limited prefill was available. These examples distinguish development work, customer awards, proposals and completed activity. The later Temkin defect investigation and the $38,000 company recovery James recalls are one part of the packaging history, not its measure of value or his personal damages. [REDACTED] These examples do not allege that every activity fell outside JDGS's compensated scope or that performing the work made every resulting business right James's personal property.

7B. [REDACTED]

7C. James identifies the mini-sweet-pepper program as another service contribution. He asked Carlos in March 2016 to develop RSF-grown supply for ALDI and recalls their telling Lisa Netzel that RSF would grow the item. [REDACTED]

7D. James's work also included addressing Aldi freight losses and developing pricing adjustments. He recalls initiating that effort after Juan Lund showed him a substantial loss, without an RSF request, and negotiating with Aldi's Grant Buma a plan to recover it over the next several quarters. [REDACTED] The internal exchange is not treated as Grant's acceptance or proof of realized recovery. [REDACTED] James relies on this work as a service contribution; no audited recovery, profit or personal-loss amount is alleged here.

8. [REDACTED] James recalls again discussing duration and exit protection with Carlos Visconti on April 27, 2016. His willingness to accept reduced compensation was tied to those protections. [REDACTED]

8A. [REDACTED] This is an approximate average, not a fixed per-case rate. [REDACTED]

9. [REDACTED] James DiMenna's filed declaration likewise acknowledges that James's May 19, 2016 proposal "entirely eliminated, by strike-out" the proposed provision allowing termination without cause on six months' written notice. D.E.17-2 ¶6, pp.4–5 (PageID131–132). DiMenna separately disputes that agreement was reached on James's proposed duration terms. Id. ¶¶6–7. The sequence supports James's rejection of that termination right, not the proposition that all management proposals were accepted or that management necessarily accepted his replacement language.

10. [REDACTED] James identifies it as his closest written account at that stage, not a complete record of all oral undertakings. [REDACTED]

10A. [REDACTED] James relies on his separately alleged personal undertaking, not on omission of these corporate terms.

10B. James's position is that the 0.85% commission compensated JDGS for the defined sales and marketing services, not for every service he ultimately performed for RSF. [REDACTED] James states that he also performed day-to-day operational work and other services beyond JDGS's agreed scope. He distinguishes that additional work from the services covered by the commission and relies on the specific services described below to explain the broader contributions covered by the personal buyout undertaking he recalls. [REDACTED]

10C. James relies on these examples to explain the work and contributions he says the personal exit undertaking described in paragraph 11 was intended to protect. The examples preceding May 27, 2016 describe the relationship and services already being discussed; the later examples describe his continuing performance. His asserted personal right rests on the undertaking he recalls, including Carlos Visconti's alleged agreement during that call, not merely on the fact that James personally performed services. [REDACTED] James does not seek to recover JDGS's commissions again in his own name or to treat all services, customer revenue, or enterprise value as his personal property.

11. James recalls a May 27, 2016 telephone conversation with Carlos Visconti lasting approximately thirty minutes. A few minutes into the call, James recalls sending Carlos a text setting out his position and asking him to read it. The personal buyout commitment James recalls came afterward in the same call. James recalls Carlos agreeing to his position and to a personal buyout if RSF terminated him, covering value attributable to his broader services and attributable enterprise value through settlement of the business divorce, in exchange for accepting the lower 0.85% rate. He recalls Carlos saying, in substance, that he was not worried about those terms because he did not expect to terminate James, while declining to put the buyout undertaking in writing. [REDACTED] No dollar amount or calculation formula was fixed. Lidl is James's present example of service scope, not a customer he says he necessarily named during that call.

11A. James alleges that the personal exit undertaking covered the value attributable to his broader services and attributable enterprise value, including retailer-development work, products, packaging and related programs and their HALO and product-synergy benefits. He attributes part of RSF's acquisition of Lidl business and benefits across other retailers to that work. This is an asserted contribution and scope of the alleged buyout, not an allegation that all RSF revenue or enterprise value belongs to him, a fixed buyout formula, or a claim that every later sale resulted solely from his services. No Lidl revenue total is adopted here.

12. [REDACTED] James recalls sending it during the call, before the oral acceptance described above. He relies on Carlos's recalled oral response, not on the text itself as Carlos's written acceptance. [REDACTED]

13. [REDACTED] James says he accepted that payment in reliance on the personal buyout undertaking he recalls Carlos agreeing to on May 27 and continued working on that basis. Defendants instead attribute the payment to modification of the earlier corporate agreement. The payment establishes corporate payment, not conclusive adoption of every disputed term or a personal payee.

13A. [REDACTED] This later correction must not be described as still wholly unpaid merely because the original deduction was disputed. [REDACTED] The record does not independently establish receiving-bank settlement, a personal payee, acceptance of every disputed duration or buyout term, or satisfaction of the separately alleged exit undertaking. Any selected personal loss theory must identify its own supported injury and account for the corporate payments without duplicating the correction component.

14. [REDACTED] James explains that his purpose in the later written exchanges was to record and protect the verbal agreements he describes, not to abandon them. Although he accepted some drafting changes, he continued to object to provisions that, in his view, did not reflect those agreements. [REDACTED] Continued negotiations and proposed call scheduling are

acknowledged; they are not pleaded as a completed replacement or a record of an unremembered call.

15. The March 29, 2018 company letter expressly disputed the indefinite or nonterminable arrangement and characterized the compensation as an interim modification. James disputes that position. [REDACTED]

15A. [REDACTED] The notice described James's asserted role; it did not state a commission rate or buyout formula or expressly name JDGS as the agreement's holder. James's RSF address and signature also support the competing interpretation that he was describing his supplier-side responsibilities.

15B. [REDACTED] James's conditions were submitted for approval, not established as an executed amendment. The internal buyer attribution is not direct buyer testimony, and a change in contact is not equated with an immediate end to compensation.

15C. [REDACTED] James does not allege that the writing expressly recites every 2016 term or that every recipient accepted it. This is his stated interpretation, not an independent finding of assent or agency authority.

16. James alleges that the lower commission rate, duration and exit protections, and division of services were interrelated parts of the arrangement he describes. He understood that RSF would provide adequate day-to-day sales and administrative support, allowing his RSF role to remain part-time and leaving time for other projects. He alleges that the demands of his actual RSF work restricted that capacity and that, in reliance on the arrangement, he declined some opportunities and limited participation in others. He does not allege that he abandoned all outside activity.

16A. [REDACTED] The drafts' wording is described; no draft is pleaded as an executed agreement, and legal effect is reserved.

He recalls declining to pursue discussions with Jason Bucko about Mastronardi during approximately 2016–2018 because he was committed long term to RSF. Separately, he recalls declining later verbal offers conveyed by Ken Green and Dino Dilaubo to work with Westmoreland because of his commitment to RSF; those approaches were distinct from an earlier interview before his RSF work that did not result in a position. [REDACTED]

[REDACTED] His account of that connection is based on his recollection. SunFed belongs to the earlier recruitment and employment history, not an opportunity rejected because of a later promise. Individual career decisions and JDGS's business relationships remain distinct, and no guaranteed outside earnings or fixed loss amount is alleged here.

17. [REDACTED] His account of Carlos's agreement to that protection rests on the May 27, 2016 conversation he recalls, not on Carlos's failure to dispute the later email. [REDACTED]

17E. The recurring meetings James regularly attended were the twice-weekly Commodity Planning Meetings (CPM); the March 2021 dispute concerned the daily 9:30 a.m. and 4:00 p.m. sales calls. [REDACTED]

17A. [REDACTED]

17B. [REDACTED] This documents direct participation without supplying the full terms of the call, proving acceptance of the redline or resolving whether James was acting personally, for JDGS, or in both capacities. [REDACTED]

17C. [REDACTED] This was development work and a disputed opportunity, not an established award or an admission of bad faith.

17D. [REDACTED] It is not rewritten here as a statement that every lost sale belonged to him personally. The reports and competing explanations do not by themselves establish each actual loss, its cause or its amount.

18. James received the July 27, 2021 immediate termination communication. The later September 15 communication reported commissions through August 26 and payment went to JDGS. James says he did not execute a release or agree that this payment settled all claims, but did not directly challenge that calculation at the time. He seeks no duplicative recovery for sums already paid. He alleges that no separate payment he understood as the promised buyout was made.

18A. The termination carrier was sent directly to James. The attached letter addressed him by name and identified JDGS in the address block; its reference line named both. It said that "your contract and relationship" was terminated and directed him to return equipment and refrain from specified contacts. At the same time, it described the agreement and compensation as JDGS's, referred to equipment received during JDGS's relationship with RSF, and expressly rejected the July 2, 2021 proposed revisions. Its reference line named Michigan, while its opening identified Partners LP as counsel's client. James relies on the personally directed language as context for his asserted undertaking and injury, not as an admission transferring every corporate payment or guarantee right to him. The July2 acknowledgment of receipt of his redline is not pleaded as acceptance.

19. The personal-right account differs from the earlier corporate pleadings. D.E.1 paragraph 22 expressly described buying out JD Global for the agreement's duration; D.E.38 likewise pleaded corporate buyout rights. Those passages are not recast as an express personal enterprise-value promise. James does not rewrite that history, allege that he first learned his own conversations in 2026, or treat personal participation as conclusive ownership. Which undertaking was made, to whom, by which principal and with which enforcement rights remains central to the proposed alternatives. Any recovery must distinguish his loss from JDGS's and credit compensation already paid.

19A. [REDACTED] James does not allege that these sources alone prove buyer knowledge of all compensation terms or a single scheme causing all later losses. Any selected theory must identify the particular undertaking, actor and nonduplicative injury asserted by the claimant bringing it.

19B. James alleges that his broader retailer-development work included Ahold and other retailer relationships for which JDGS did not receive compensation. The earlier complaint, D.E.38¶¶107–109, identifies Ahold, Fresh Market and John Cerasulo and alleges the onboarding, removal and later-sales history; those allegations are not treated as established merely because filed. D.E.71¶¶107–108 denies the Ahold/onboarding allegations, while ¶109 admits that JDGS did not receive compensation for sales to Fresh Market or John Cerasulo, disputes the Commission Agreement and otherwise leaves allegations to proof. That limited admission does not establish an amount owed, James's personal entitlement, responsibility for every sale or the scope of the alleged personal buyout. Direct unpaid-account claims, indirect HALO benefits and the personal exit claim require separate allocation and credit for payments already made.

19C. The present request for compensation records and reconciliation covers January 1, 2016 through termination, by customer and period. If a continuing post-termination commission obligation to James or JDGS is established, James would seek updated records covering the same categories through the settlement date to calculate the amounts due to the proper claimant. That later accounting period is distinct from the duration of any continuing right and does not assume that a perpetual obligation has already been established. It distinguishes customers whose sales generated payments to JDGS from additional customers for which an entitlement to compensation is asserted and must be established. The relevant comparison includes RSF's FOB and freight-pricing instructions, quoted and accepted prices, actual invoiced revenue and adjustments, collections where required by the compensation terms, transportation costs actually paid, deductions used in the commission base, and commissions calculated and paid. A budget-to-actual difference alone is not alleged to be a breach; the governing compensation terms and permitted deductions must be identified. Previously paid commissions, expense payments and

correction credits remain credited. This scope does not assert a new standalone accounting count, a commission on every RSF sale, an entitlement to every freight margin, or transfer JDGS's receivables to James.

19D. [REDACTED] The specific opportunity, its conditions, RSF's decisions, the resulting loss and the proper claimant require identification from the supporting records. The projected retailer sales are not themselves alleged as James's personal damages.

### R01 — Breach of the alleged personal undertaking; intended-beneficiary alternative

R01.SCOPE. James D'Amato proposes the separately alleged personal career/exit undertaking and intended-beneficiary alternative. JD Global Sales, Inc.'s corporate contract and commission rights remain for JD Global through licensed counsel, as stated in P2. Proposed defendants: Jem D International (Michigan) Inc. and Jem D International Partners, LP as alternative principals; JEM-D International Inc. only through the qualifying LP-obligation route in P14. Carlos Visconti and Jim DiMenna are not added as personal guarantors.

20. James incorporates paragraphs 1-19 insofar as they describe the undertaking, negotiation, performance and termination. He alleges, in the alternative, that Michigan or the LP, through the identified representatives acting for the particular principal, undertook the personal duration and exit protections described above in exchange for his commitment and performance. [REDACTED] James does not claim to remember Michigan being identified as the oral promisor. Neither the LP's business role nor the proposed, unsigned guaranty by itself proves its assent to the disputed terms. Whether one, both, or neither undertook the alleged obligation depends on the transaction-specific facts, not the Red Sun Farms label. JEM-D International Inc. is included only on the derivative general-partner route in P14. No personal guaranty by an officer or liability of every affiliate is alleged through this paragraph.

21. James performed the described services and continued performing following the reduced-compensation negotiations. He alleges that he expressly conditioned his acceptance of the lower

0.85% commission rate on the buyout protections he described to Carlos. He recalls Carlos agreeing to that undertaking during their May 27, 2016 call. James also recalls an agreement that commissions would remain payable after termination until settlement of the business divorce. He alleges that the July 27, 2021 termination without honoring the agreed exit protection breached his own enforceable right. He distinguishes the alleged continuing-commission obligation from the buyout accounting and valuation, without seeking duplicate recovery of the same loss or treating JDGS's commission receivables as automatically his own. [REDACTED] His claim does not depend on assuming every unsigned proposal became a contract.

22. Alternatively, if the undertaking was made with JDGS, James alleges that the working-career and exit provisions were intended for his personal enforcement rather than merely incidental to his shareholding. He seeks only the protection and nonduplicative loss attributable to that intended benefit. The guaranty and corporate commission receivable are not transferred by this allegation.

22C. [Corporate claim identified for directions — not asserted in this pleading (see P2)] Without transferring any corporate right to Mr. D'Amato, this paragraph identifies JD Global Sales, Inc.'s claim for breach of the Commission Agreement to which it was a party. That claim is that Red Sun Farms breached that agreement by terminating the arrangement without cause and depriving JD Global of the commissions due to it, causing JD Global's own damages. This paragraph describes the allegations pleaded at D.E. 38 ¶¶92–101 and the relief at D.E. 38 Prayer A. It is identified as the corporate counterpart to the personal undertaking in paragraphs 20–22; recovery is limited to JD Global's own nonduplicative loss, with credit for amounts already paid and no double recovery as between JD Global and Mr. D'Amato. Defendant: Red Sun Farms, as named in D.E. 38.

## R02 — Implied covenant

R02.SCOPE. James D'Amato proceeds only on his own enforceable contractual right. JD Global Sales, Inc.'s corporate contractual right remains for JD Global through licensed counsel, as stated in P2. Proposed defendants: Jem D International (Michigan) Inc. and Jem D International Partners, LP as alternative obligors, and JEM-D International Inc. only through P14's limited general-partner route. Each claimant's benefit and loss must remain separate, without duplicate recovery.

23. [REDACTED] He does not characterize disputed motive as an admission.

24. James alleges that this conduct frustrated the agreed benefit during performance, separately from the ultimate refusal to honor express exit protection. He seeks the legally available, nonduplicative loss to his own contractual interest. The claim does not create a duration term contrary to the contract established or convert ordinary business disagreement into bad faith by itself.

24C. [Corporate claim identified for directions — not asserted in this pleading (see P2)] This paragraph identifies JD Global Sales, Inc.'s claim that the Commission Agreement contained an implied covenant of good faith and fair dealing which Red Sun Farms breached, depriving JD Global of the benefit of its bargain and causing JD Global's own damages. This paragraph describes the allegations of D.E. 38 ¶¶102–111 and Prayer B, identified as the corporate counterpart to paragraphs 23–24; recovery limited to JD Global's own nonduplicative loss; no double recovery. Defendant: Red Sun Farms.

## R03 — Promissory estoppel, alternatively

R03.SCOPE. James D'Amato proposes his own promise-induced reliance; JD Global Sales, Inc.'s distinct business reliance remains for JD Global through licensed counsel, as stated in P2. Proposed defendants: Jem D International (Michigan) Inc. and Jem D International Partners, LP

as alternative principals, and JEM-D International Inc. only through P14's qualifying LP-obligation route. Officer participation does not itself allege a personal promise by an officer to pay.

25. If the alleged undertaking is not enforceable as a contract, James alleges that the identified representatives, acting for Michigan or the LP in the alternative as supported by the particular transaction, made the particular career-duration and exit promises in paragraphs 5,8 and11 to obtain his personal commitment, expecting reliance. The P14 general-partner route is included only if a qualifying LP obligation is established; it is not a separate invented promise by the general partner.

26. James alleges that, in reasonable reliance on the particular promises identified above, he continued his commitment to RSF, declined later opportunities and limited his participation in other ventures as described in paragraph 16, causing substantial personal detriment. Each asserted loss is tied to the promise he says preceded and induced the particular decision. He seeks the legally recoverable loss attributable to his own reliance, without treating a proposed salary, hoped-for business income or the difference between commission rates as an established loss. JDGS's business losses are not automatically his personal losses. Compensation attributable to the same loss must be credited, and he does not seek duplicate recovery. [REDACTED]

26C. [Corporate claim identified for directions — not asserted in this pleading (see P2)] This paragraph identifies JD Global Sales, Inc.'s promissory/equitable estoppel claim: that it reasonably and foreseeably relied to its detriment on Red Sun Farms's promises and is entitled to the economic benefits promised to and withheld from it. This paragraph describes the allegations of D.E. 38 ¶¶112–118 and Prayer C, identified as the corporate counterpart to paragraphs 25–26; recovery limited to JD Global's own nonduplicative loss; no double recovery. Defendant: Red Sun Farms.

**R04 — CEPA conditional candidate**

R04.SCOPE. James D'Amato is the only proposed claimant; JD Global Sales, Inc. is not a CEPA claimant. Proposed defendants are Jem D International (Michigan) Inc. and Jem D International Partners, LP only on a supported covered-relationship basis, Carlos Visconti for his own supported control/termination acts, and Jim DiMenna only for his own supported knowledge and decision acts. Harold Paivarinta is not added to this count. The prior dismissal and the specific coverage, protected-report, knowledge and causation requirements in this count remain unresolved; inclusion is conditional, not automatic revival.

R04.1. James asserts this proposed theory on the basis of his own working relationship, not a CEPA right belonging to JDGS. He relies on the actual direction of his work, sustained operational participation and economic relationship described in the common allegations. [REDACTED] The corporate contracting and payment record is not omitted or treated as immaterial.

R04.2. James identifies his own reports and objections separately from management's later internal communications. [REDACTED] That message is not alleged to prove every earlier pleaded concern about sexual remarks, packing dates, duty refunds or product origin. Each proposed protected report must retain its own date, recipient, subject and factual basis; ordinary allocation or compensation disputes are not relabeled as protected activity merely because followed by termination. See accompanying Declaration paragraphs 118–121.

R04.3. Subject to the unresolved legal and source requirements stated in this count, James's proposed claim is that a particular defendant responsible for the protected working relationship took retaliatory action because of a specified report or objection protected by CEPA, causing his own compensable loss. This proposed causal account must address the competing meeting-participation and business-performance explanations and identify the decisionmaker's

knowledge. It does not rest on timing or hostile language alone, and any award must avoid duplication with compensation or other damages awarded on another theory.

**R05 — Federal trade secret conditional candidate**

R05.SCOPE. JD Global Sales, Inc. is the proposed claimant for company-owned secrets, through licensed counsel, as stated in P2. James D'Amato is included only for a separately supported qualifying personal ownership or license interest. Current defendant candidates are Jem D International (Michigan) Inc. and Jem D International Partners, LP, limited to the supported improper act. No officer, buyer or affiliate is included merely because it had access. Final allocation remains held for the identified secret, right-holder, secrecy, permission and challenged acquisition, use or disclosure.

R05.1. [REDACTED] It is not a claim to own vendor-managed inventory generally, ordinary spreadsheet operations, Aldi's pre-existing spreadsheet or customer-supplied data. [REDACTED]

R05.2. The corporate and personal rights are not presumed identical. The filed complaint described development for JDGS; James's July 2021 demand described JDGS property. [REDACTED] This conditional count would assert only the particular claimant's supported ownership or qualifying licensed interest in identified information used for the interstate produce operation, against a defendant whose improper acquisition, disclosure or use is supported.

R05.3. James contests continued use beyond the permission he says accompanied the working relationship. [REDACTED] The theory requires the specific protected component, the limits of permitted access, the challenged defendant's act and resulting injury to be identified together. Prior authorized team/customer use and any later phase-out or replacement evidence must remain in the analysis.

R05.4-C. [Corporate claim identified for directions — not asserted in this pleading (see P2)] [REDACTED] July 2021 demand describing the files as JD Global property [REDACTED] This

paragraph describes the corporate dimension of D.E. 38 Count VIII as a federal trade-secret theory; recovery limited to JD Global's own nonduplicative loss; no double recovery with the personal R05 or with R06/R16. Defendant: Red Sun Farms.

**R06 — New Jersey trade secret conditional candidate**

R06.SCOPE. JD Global Sales, Inc.'s corporate information rights remain for JD Global through licensed counsel, as stated in P2; James D'Amato is included only for separately supported personal rights. Current defendant candidates are Jem D International (Michigan) Inc. and Jem D International Partners, LP, limited to the specifically supported misappropriating actor. The exact information, qualifying right and improper act must be matched separately under this statute; final allocation, timing and displacement remain held.

R06.1. This proposed state-law count concerns the same bounded information and alleged acts identified in R05, but requires its own applicable-law, claimant and statutory analysis. It does not enlarge the secret to all services, all customer information or every file James touched. The claimant seeks relief only for an adequately supported acquisition, disclosure or use that qualifies as misappropriation under the New Jersey statute.

R06.2. Any recovery must address the actual loss or benefit attributable to the alleged misuse without duplicating R05 or overlapping contract, restitution or property recovery. The parties' prior working permission and disputed allocation of rights remain material; neither James's personal authorship nor RSF's custody alone resolves them.

R06.3-C. [Corporate claim identified for directions — not asserted in this pleading (see P2)] This paragraph identifies JD Global Sales, Inc.'s New Jersey Trade Secrets Act claim on the same corporate ownership of the identified information, subject to the Act's definitions, timing and displacement analysis. This paragraph describes the corporate dimension of D.E. 38 Count VIII under state law; recovery limited to JD Global's own nonduplicative loss; no double recovery with R05.4-C or R16.4-C. Defendant: Red Sun Farms.

## R07 — Copyright conditional candidate

R07.SCOPE. No final claimant or defendant is cleared. The claimant would be James D'Amato OR JD Global Sales, Inc., according to the particular work and supported right; the corporate route requires licensed counsel, as stated in P2. A defendant must be the actual infringing user tied to that work and act, not an all-RSF or buyer-wide designation. The work/version, authorship/transfer, expression, permission, registration/refusal and other work-specific intellectual-property prerequisites remain unresolved.

R07.1. The proposed subject is any specifically identified original expression in the VMI work for which the chosen claimant can establish rights, not the forecasting method, operational ideas, customer facts or formulas as such. The April 28, 2021 Canadian certificate for the titled Vendor Managed Inventory Excel Model names James D'Amato in its owner and author fields. Its accompanying April 27 payment receipt lists JD Global Sales and James D'Amato. These are different fields on different pages, not interchangeable title determinations. James's personal-title position must be reconciled with the July 27, 2021 JDGS-property demand and the corporate positions in D.E.38; neither ownership of equipment or copies nor creation attribution alone resolves ownership of the particular exclusive right.

R07.2. [REDACTED] The proposed copyright subject is only supported original expression within a specifically identified version, not those functional methods as such or every Walmart Tracker component. The Office refused registration on July 13, 2021 and upheld refusal on February 28, 2022 for VMI Model and Vendor Managed Inventory Excel Model, without questioning independent creation for its analysis but finding insufficient protectable expression. That adverse determination must be confronted rather than replaced with a generalized claim to the entire useful system.

R07.3. Counsel's D.E.23-1 declaration reports sending the §411 notice and JDGS complaint on February 22, 2022; the notice names James as applicant while asserting JDGS's rights. D.E.33

records withdrawal without prejudice to seeking amendment, and D.E.38 contains no copyright count. This is a conditional new pleading route, not a currently surviving copyright claim. Section 411(a) provides a potential refusal route when its application, deposit, fee and notice conditions are met; neither the reported historical sending nor Canadian registration alone decides those conditions for the proposed claimant and complaint, U.S.-work classification, validity, timing or available remedies.

R07.4. [REDACTED] These facts supply particular attribution and custody leads, not conclusive infringement. [REDACTED] A supported protected component, claimant's exclusive right, responsible defendant's act, date and disputed permission must be joined. Customer-side VMI sheets, shipping-order changes, retention and a later save are not automatically use or infringement of the asserted workbook.

### R08 — Sales Representatives Rights Act conditional candidate

R08.SCOPE. JD Global Sales, Inc. is the primary proposed claimant for corporate commissions, through licensed counsel, as stated in P2. James D'Amato's personal alternative remains only if a separate qualifying personal statutory relationship is supported. Proposed defendants are Jem D International (Michigan) Inc. and Jem D International Partners, LP as qualifying statutory principals; JEM-D International Inc. is not automatically added. Earned unpaid commissions, payment credits and the statutory relationship must be distinguished from a disputed personal buyout.

27. Under the direct personal-undertaking alternative, James alleges, in the alternative, that Michigan or the LP engaged him to solicit produce orders for commission compensation and that he performed the customer-attainment and coordination work described above. [REDACTED] He seeks determination of his claimed personal statutory status on the actual contracting relationship, not solely on his doing the work or an intended-beneficiary label.

28. This count concerns commissions legally earned and unpaid when due, including qualifying orders before the end of services whose acceptance, delivery or payment occurred later, if the statute applies. It does not treat all subsequent sales, a buyout or enterprise value as statutory commissions. [REDACTED]

28C. [Corporate claim identified for directions — not asserted in this pleading (see P2)] This paragraph identifies JD Global Sales, Inc.'s claim under the New Jersey Sales Representatives' Rights Act. That claim is that JD Global was the sales representative under the agreement, as the written and payment records reflect, that Red Sun Farms agreed to pay and then refused to pay commissions due to JD Global, and that JD Global is entitled to the unpaid commissions together with the statutory treble-damages remedy. This paragraph describes the allegations of D.E. 38 ¶¶139–148 and Prayer E, including treble damages, identified as the corporate counterpart to the personal statutory-status theory in paragraphs 27–28; recovery limited to JD Global's own nonduplicative earned-and-unpaid commissions, credited and reconciled with the payment and reported coverage through August 26; no double recovery. Defendant: Red Sun Farms.

### R09 — Unjust enrichment, alternatively

R09.SCOPE. JD Global Sales, Inc.'s corporate services and benefits remain for JD Global through licensed counsel, as stated in P2. James D'Amato is included only for a distinct personally compensable benefit. Proposed defendants are Jem D International (Michigan) Inc. and Jem D International Partners, LP as alternative recipients, with JEM-D International Inc. only through P14's qualifying LP-obligation route. Other named RSF recipients remain conditional leads, not additional defendants on this count without their own supported service, receipt/use and payment connection.

29. [REDACTED] Personal entitlement and the proper recipient remain to be established; a claim against any recipient requires that recipient's particular benefit and the circumstances supporting the expectation of payment, not a group label. Michigan and the LP are the supported alternative

recipient candidates: the former is identified in the compensation documents and the latter in the customer-sales business. The general partner is included only through P14's qualifying LP-obligation route, not on an assumption that it personally received all services.

[REDACTED]

30. James alleges inequitable retention of the uncompensated benefit if the promised protections are denied, to the extent he establishes personal entitlement to that benefit. He seeks the legally recoverable value after credit for payments attributable to the same services or benefit, without counting gross retailer revenue as automatic restitution or recovering JDGS's loss a second time. This is the non-IP services alternative, not a relabeled misappropriation claim.

30C. [Corporate claim identified for directions — not asserted in this pleading (see P2)] This paragraph identifies JD Global Sales, Inc.'s unjust-enrichment claim: that it conferred a benefit on Red Sun Farms from January 1, 2016 forward for which it was not appropriately compensated and whose retention is inequitable. This paragraph describes the corporate dimension of D.E. 38 ¶¶160–171 and Prayer G, identified as the corporate counterpart to the personal R09; recovery limited to JD Global's own nonduplicative value after credit for payments already made; no double recovery with 32C or the personal theories. Defendant: Red Sun Farms.

## R10 — Quantum meruit, alternatively

R10.SCOPE. JD Global Sales, Inc.'s services remain for JD Global through licensed counsel, as stated in P2. James D'Amato is included only for separately supported personal services and payment expectation. Proposed defendants are Jem D International (Michigan) Inc. and Jem D International Partners, LP as alternative accepting recipients, with JEM-D International Inc. only through P14's limited route, not as a presumed recipient of every service. Further RSF recipient leads are not automatically included. Actual acceptance, reasonable unpaid value, contract coverage and credits remain required.

31. [REDACTED] For this count, Michigan and the LP are the alternative accepting recipients described in P15 and paragraph 29; the GP is included only through P14, not presumed to have received every service itself. He does not base this claim on RSF having designed or prescribed those projects, and he does not allege that none of his work was compensated.

32. If neither the alleged undertaking nor another enforceable contract governs those same services, he seeks the reasonable unpaid value for which he proves personal entitlement, supported by evidence of the actual services and their reasonable value, after credit for payments attributable to the same services and without duplicate recovery. The negotiated commission rate does not by itself establish reasonable value. James preserves a percentage-of-revenue valuation if supported by evidence and legally available; no particular percentage, revenue base or duration is asserted as established at this stage.

32C. [Corporate claim identified for directions — not asserted in this pleading (see P2)] This paragraph identifies JD Global Sales, Inc.'s quantum-meruit claim for the reasonable value of services it rendered and that Red Sun Farms knowingly accepted and used, where no enforceable contract governs the same services. This paragraph describes the corporate dimension of D.E. 38 ¶¶160–171 and Prayer G (quantum meruit), identified as the corporate counterpart to the personal R10; recovery limited to JD Global's own nonduplicative reasonable value after credit; no double recovery with 30C or the personal theories. Defendant: Red Sun Farms.

### R11 — Sherman Act conditional candidate

R11.SCOPE. No final claimant is cleared. JD Global Sales, Inc. is the primary proposed claimant only if its own qualifying competition-related injury is supported, through licensed counsel, as stated in P2; James D'Amato is not selected merely because commissions were lost. Aldi Inc. and Bill Duesenberg are conditional defendant candidates. No additional RSF participant is selected without a specific supported agreement and act. The agreement, independent participants,

competitive analysis, antitrust injury and causal route remain unresolved for this conditional antitrust theory.

R11.0. This count retains Aldi Inc. and Bill Duesenberg as conditional proposed new defendants. No additional RSF participant is selected absent a specific supported agreement and act. It does not attribute the reported supplier commitments to Duesenberg personally or infer an agreement from his title or customer role. The particular agreement participants, conduct, market and injury holds remain explicit.

R11.1. [REDACTED] These are reported accounts, not the suppliers' own commitments or direct evidence that every supplier agreed with the others. The report does not identify Bill Duesenberg as its source, and no particular legal entity is identified from the nickname alone.

R11.2. [REDACTED] The unnamed competitor in the April source is not identified as Lidl by that source alone. [REDACTED] This supports a particular negotiation and dispute, not an established agreement among competing suppliers.

R11.3. [REDACTED] These distinct sources document buyer criticism and James's contemporaneous concern; neither is represented as an admission by Buma that a boycott caused the decline or as an executed supplier agreement.

R11.4. [REDACTED] It reports information from Jamie and Bill, not the suppliers' contracts. The stated division counts concern Aldi's allocations, not national market shares. The later named suppliers are not automatically identified as March's three, and the repeated November 1 account is not independent confirmation of their assent. [REDACTED]

R11.5. The proposed count challenges a supported restraint involving identified independent economic actors, not unilateral customer preferences, parallel decisions alone or ordinary coordination within one enterprise. The particular participants, commitments, implementation, dates, product and geographic scope, interstate-commerce nexus and competition-reducing

effects require factual support. [REDACTED] No per-se label, separate seeds theory, supplier-wide defendant addition, market share or foreclosure percentage is supplied in this count. Legitimate commercial explanations and evidence inconsistent with the asserted restraint remain part of the assessment.

R11.6. The proper claimant must identify its own injury caused by the competition-reducing aspect of the supported restraint. JDGS's corporate compensation interest and a separately supported personal interest of James are not interchangeable. [REDACTED] A potential exclusion theory—that Aldi restricted access because RSF refused a supported anti-Lidl condition—is distinct from an internal RSF decision to decline an opportunity or a demand for gains from joining the challenged restriction. [REDACTED] An intertwined-injury theory remains available for assessment if the evidence shows injury to the claimant was a means of achieving broader anticompetitive ends. Lost commissions or buyout expectations alone do not establish that route. No final claimant, automatic treble award or new damages total is cleared.

## R12 — Walmart interference conditional candidate

R12.SCOPE. JD Global Sales, Inc.'s corporate account and commission expectancy remains for JD Global through licensed counsel, as stated in P2. James D'Amato is included only for a distinct supported personal expectancy. Proposed defendants are Harold Paivarinta, Roberto Saldaña Castillo, Walmart Inc., Don Fox and Braulio Valdes. Harold's and Roberto's proposed additions are limited to R12; this does not automatically revive CEPA or add either man to R14/R18. For each defendant, the particular expectancy, capacity, wrongful act, knowledge and causal loss still require support for those requirements as stated in this count.

R12.0. This count names Walmart Inc., Don Fox, Braulio Valdes and Roberto Saldaña Castillo as proposed new defendants and Harold Paivarinta as a proposed defendant to be added following his prior dismissal. Harold's and Roberto's inclusion is limited to R12; neither is automatically added to every count. The alleged interference must concern an identified

relationship or expectancy held by the proper claimant and conduct by a defendant in the legally required outsider capacity. Their commercial roles are not pleaded as improper acts; the specific act, knowledge and causal loss remain subject to the stated interference requirements.

R12.1. James alleges that his work obtaining and servicing Walmart business supported a reasonable expectation of continuing participation and compensation under the undertaking described in the common allegations. [REDACTED] This conditional theory must identify whether the protected relationship or expectancy belongs to JDGS, James individually, or distinct rights of each, and the particular defendant alleged to be an outsider to that relationship. It does not convert personal buyer relationships into ownership of every corporate commission.

R12.2. [REDACTED] This sequence supports a dispute about the role and its protections, not a statement that all conditions were accepted, that commissions stopped then, or that an internal report supplies the buyer's exact testimony.

R12.2A. James recalls that, at the October 2018 trade show, Carlos Visconti returned to where Jim DiMenna and James were talking and told James that Braulio Valdes wanted him off the Walmart account. As James recalls Carlos's report, if James remained on the account, Red Sun Farms would not grow and might decline. James recalls the message's meaning as being that the business was not safe if he remained. He did not hear the private conversation between Carlos and Braulio and does not present his recollection of Carlos's report as Braulio's exact words or as firsthand knowledge of that conversation. D.E.38 paragraph 44 characterized Carlos's report as a refusal to continue business. James's present recollection is the narrower no-growth/possible-decline account stated in Declaration ¶113A; the earlier pleading is not silently adopted as his present recollection.

R12.3. [REDACTED] Fox's earlier agreement to speak is not treated as agreement to the later request, and BCC alone is not treated as Carlos's assent. The retained chain does not disclose the call's full substance or establish Fox's compliance.

R12.3A. [REDACTED]

R12.3B. [REDACTED]

R12.3C. [REDACTED] That is an inference to be tested against the particular protected expectancy and loss, not direct proof of the private call's contents. [REDACTED] James does not allege complete exclusion from all Walmart communications from April 16 onward or that rescheduling alone was a tort.

R12.3D. Roberto Saldaña Castillo is, as James understands, the majority owner of the Red Sun Farms entities. [REDACTED] The oral agreements James describes, including the May 27, 2016 buyout undertaking, were made before Roberto acquired a controlling interest in Red Sun Farms. On information and belief, James alleges that Roberto, after acquiring that interest, withheld approval of written agreements memorializing those terms and later approved the decision to terminate James. James has not yet been able to confirm Roberto's role through documents and identifies these allegations as likely to have evidentiary support after a reasonable opportunity for discovery. [REDACTED] Roberto is proposed as a defendant on R12 only, subject to the same conduct, capacity, knowledge, causation, jurisdiction and service requirements stated for Harold Paivarinta. The ownership approval described in Declaration ¶63 concerned a company proposal that, in James's view, did not reflect the terms agreed in 2016.

R12.4. [REDACTED] The defendant's improper act, knowledge of the particular expectancy, outsider capacity, and causal loss remain to be established through discovery and are not pleaded as presently determined. Any recovery belongs to the holder of the injured right and is subject to payments, matched credits and no duplicate recovery. No automatic damages follow from every Walmart sale or from a personal disagreement.

**R13 — Aldi interference conditional candidate**

R13.SCOPE. JD Global Sales, Inc.'s corporate business expectancy remains for JD Global through licensed counsel, as stated in P2; James D'Amato is included only for a separately supported personal expectancy. Aldi Inc. and Bill Duesenberg are the conditional proposed defendants. The particular opportunity, knowledge, outsider capacity, improper act and causal injury must be identified, preserving the commercial explanations and distinguishing proposals, programs and transitions.

R13.0. This count names Aldi Inc. and Bill Duesenberg as proposed new defendants. The particular relationship allegedly interfered with, the holder of that right, outsider capacity, act, knowledge and causal injury remain subject to the stated interference requirements. The same commercial event is not automatically a corporate contract breach, personal tort and antitrust injury.

R13.1. James alleges that his Aldi development, bid, product and service work supported continuing business and compensation opportunities. [REDACTED] It does not itself establish assent to a legally exclusive channel or the recipient's knowledge of every disputed compensation or buyout term.

R13.2. [REDACTED] The response is not reduced to either a bare rejection with no alternatives or unqualified agreement to Aldi's request.

R13.3. [REDACTED] Scheduling and correspondence do not establish every meeting's attendance or content. [REDACTED]

R13.4. [REDACTED] These statements are kept distinct from direct customer confirmation and independently documented awards. No verified 100M award, guaranteed sales, causal loss total or Lidl-revenue measure is asserted here. [REDACTED]

R13.5. The conditional claim seeks compensation for intentional, improper interference by an identified outsider with the proper claimant's identified relationship or reasonably probable opportunity. The particular opportunity, the defendant and act, knowledge, outsider capacity, causation, and the injured right remain to be established through discovery and are not pleaded as presently determined. Capacity, price, quality, supply and relationship-management explanations remain material alternatives. A purchasing party's decision concerning its own relationship is not transformed into third-party interference by labeling it a back channel. Relief is limited to legally recoverable causal loss, with matched credits and no duplicate recovery; retailer sales are not automatically personal damages.

**R14 — Civil conspiracy conditional candidate**

R14.SCOPE. The proposed claimant is James D'Amato for injury to his own right, or JD Global Sales, Inc., through licensed counsel (as stated in P2), for corporate injury, according to the supported predicate tort; both are not selected by default. Carlos Visconti and Jim DiMenna are the proposed defendants. Steve Macchio, buyers and other affiliates are not added by their appearance in a coordination narrative. Final naming remains held for the specific predicate, tort agreement, capacity, acts and causal injury.

R14.1. [REDACTED] The actionable wrong must be the particular interference, or another separately supported predicate identified in this pleading, not merely the fact that the business ended the relationship or that its personnel communicated with one another. The predicate wrong, the injured claimant, and the participants remain to be established through discovery and are not pleaded as presently determined.

R14.2. [REDACTED] It does not establish by itself that each participant knew of and agreed to a tortious objective. [REDACTED]

R14.3. For each selected participant, the completed count would identify the principal and capacity, supported agreement or knowing participation, act in furtherance, and causal injury to

the proper claimant. James alleges lost participation and compensation opportunities, subject to the rights and causation issues in the underlying claim. Recovery would be limited to the resulting legally recoverable injury, with matched credits and no duplicate recovery under the underlying tort, contract or other theories.

### R15 — Fraudulent inducement conditional candidate

R15.SCOPE. James D'Amato proposes a distinct personal representation, reliance and loss; JD Global Sales, Inc.'s legacy corporate fraud claim remains for JD Global through licensed counsel, as stated in P2. Proposed defendants are Carlos Visconti and Jim DiMenna for their own representations, and Jem D International (Michigan) Inc. and Jem D International Partners, LP only on supported attribution of the particular representation. JEM-D International Inc. and other affiliates are not automatically added. Speaker/time-specific particulars and the factual basis for intent remain unresolved for this count; the historical D.E.34 ruling is not proof of present personal ownership or intent.

F01. James identifies DiMenna and Visconti as the speakers at the February 28, 2015 discussion, and Visconti at the April 27 and May 27, 2016 discussions. The alleged representations concern working duration, termination protection and the buyout, directed to secure James's commitment and agreement to the compensation arrangement.

F02. James alleges on information and belief that the identified representations were made without an intention to honor those protections, to induce the commitment and compensation concession described above. He alleges reliance and resulting personal detriment as in paragraphs 16 and25–26. Later nonperformance alone is not the asserted proof of earlier intent. The particular present factual basis for intent at each alleged representation remains subject to the unresolved speaker- and time-specific factual-basis requirements stated in R15.SCOPE; later breach is not supplied as the missing basis.

F03. Individual liability is proposed, subject to the adequate factual basis stated in R15.SCOPE and F02, for DiMenna's and Visconti's own representations and participation, not their titles or a personal guaranty. Michigan and the LP are alternative entity-attribution candidates only for the particular agency, authorization or adoption supported for the representation. The new general-partner defendant is not added to R15 automatically by P14, and no other affiliate becomes a fraud defendant from ownership or brand use. Relief is limited to available, nonduplicative personal loss; punitive or emotional-distress relief is not automatic.

F04-C. [Corporate claim identified for directions — not asserted in this pleading (see P2)] Without transferring any corporate right to Mr. D'Amato, this paragraph identifies JD Global Sales, Inc.'s fraudulent-inducement claim against Red Sun Farms, Mr. Visconti, and Mr. DiMenna — the defendants named on this count in D.E. 38 — for the representations that induced JD Global into the Commission Agreement, causing JD Global's own damages, with compensatory and punitive relief as pleaded at D.E. 38 ¶¶149–159 and Prayer F. This paragraph describes the corporate fraudulent-inducement theory. In August 2022, D.E. 34 at pages 24–25 denied dismissal of JD Global’s then-pleaded Count VI, accepting its adequately pleaded allegations at that stage rather than finding the disputed agreement or fraud proven. D.E. 155 at page 2 subsequently described the remaining fraudulent-inducement claim in D.E. 38 as JD Global’s claim, not Mr. D'Amato’s, and denied his then-request to amend. Neither historical ruling guarantees present preservation or permits Mr. D'Amato to prosecute a corporate claim; the proposed personal theory in F01–F03 does not transfer JD Global’s claim to him. The procedural vehicle for this corporate claim requires the Court's directions requested in the accompanying motion; JD Global may present it only through licensed counsel. Recovery limited to JD Global's own nonduplicative loss; no double recovery as between JD Global and Mr. D'Amato.

### R16 — Conversion conditional candidate

R16.SCOPE. JD Global Sales, Inc.'s identified property and files remain for JD Global through licensed counsel, as stated in P2. James D'Amato is included only for a distinct supported personal possessory right. Current defendant candidates are Jem D International (Michigan) Inc. and Jem D International Partners, LP, tied to their specific act affecting that property. An IT or records individual is not added merely for handling or exporting files. Permission, preservation, competing rights, displacement/preemption, causal injury and duplication remain checks.

R16.1. [REDACTED] James's July 27, 2021 demand described the files as JDGS property created on JDGS equipment and placed on RSF drives for team access. It requested return and deletion and objected to future use. The demand is his asserted position, not a determination of title, receipt by every principal or the legal effect of revoking prior permission.

R16.2. [REDACTED] The proposed claim must identify what particular claimant right was excluded or impaired, by which defendant and act, rather than infer conversion from creation attribution or custody alone. Permitted operational copies, third-party contributions, record preservation and disputed use permission remain countercontext.

R16.3. Relief would be limited to the injury caused by a legally cognizable interference with the identified possessory right, with appropriate credits and no duplicate recovery for the same injury under contract, copyright, trade-secret or restitution theories. A commission debt, business opportunity or alleged service contribution is not relabeled as converted property merely to create another recovery. This module makes no finding that electronic information is categorically included or excluded from conversion under the governing law.

R16.4-C. [Corporate claim identified for directions — not asserted in this pleading (see P2)] This paragraph identifies JD Global Sales, Inc.'s claim to the identified proprietary information and files (including the VMI Model), that Red Sun Farms used or retained them without authorization after termination, for which damages for the unauthorized use and an injunction

requiring the return and turn-over of JD Global's proprietary materials were sought in D.E. 38. This paragraph describes the corporate claim and the turn-over injunctive relief pleaded at D.E. 38 ¶¶172–181 and Prayer H. The destruction remedy in D.E. 38 Prayer H (“destroy”) is reserved and is not described here as sought. Recovery limited to JD Global's own nonduplicative loss; no double recovery with R05.4-C/R06.3-C or the personal theories; copyright-preemption and NJTSA-displacement analysis reserved. Defendant: Red Sun Farms.

**R17 — Equitable accounting conditional candidate**

R17.SCOPE. JD Global Sales, Inc.'s corporate compensation right remains for JD Global through licensed counsel, as stated in P2. James D'Amato is included only for an established personal right requiring an accounting. Proposed defendants are Jem D International (Michigan) Inc. and Jem D International Partners, LP; JEM-D International Inc. is included only through a qualifying LP obligation under P14 plus an independent basis for accounting. No affiliate-wide entitlement is proposed. Accounting cannot create ownership; amounts owed, reported and paid and matched credits remain separate.

R17.1. The proposed request seeks a reconciliation for the holder of an established compensation right, using the customer, period and comparison categories stated in paragraph 19C. Amounts allegedly owed under the governing terms, amounts reported on commission statements and cash actually received are separate. The existing statements and calculations are to be reused and reconciled, not discarded and rebuilt or treated as an audited cash ledger.

R17.2. The comparison addresses the relationship among FOB and freight-pricing instructions, accepted and invoiced prices, revenue adjustments and relevant collections, transportation costs actually paid, deductions applied to the commission base, and compensation calculated and paid. The governing terms and assent to particular deductions remain disputed. A freight-price margin or budget-to-actual difference is not itself an unpaid commission, and a reported average lane-

cost KPI is not raw carrier-invoice or payment proof. Matching cash to statements alone would not establish that the stated base, deductions or customer coverage were correct.

R17.3. The present period remains January 1, 2016 through termination, for customers whose sales generated JDGS commission payments and additional customer business for which entitlement is asserted and must be established. Updated records through settlement remain conditional on establishing a continuing compensation obligation, as paragraph 19C specifies; that records horizon does not adjudicate the duration of the right. Previously paid compensation, expense payments and correction credits must be matched to the relevant claimant, period, service and purpose. No already-repaid principal is sought again.

R17.4. If a separate equitable accounting is legally available and necessary, the proper claimant would seek a bounded account from Michigan or the LP insofar as that entity is responsible for the relevant records and obligation, or from the general partner only within the limited route in P14 and on a separately supported basis for accounting. That request requires its own supported relationship basis and explanation why ordinary damages and authorized discovery are inadequate. It does not create personal ownership of JDGS receivables, a fiduciary duty merely from a long business relationship, a right to every RSF sale, or a presumption that an unexplained difference is fraud. No amount, rate, examiner appointment or immediate discovery order is requested through this conditional module.

### R18 — Aiding and abetting conditional candidate

R18.SCOPE. The proposed claimant is James D'Amato OR JD Global Sales, Inc. according to ownership of the supported predicate-tort injury; JDGS requires licensed counsel (as stated in P2), and both claimants are not selected by default. Conditional proposed defendants are Aldi Inc., Bill Duesenberg, Walmart Inc. and Braulio Valdes. Don Fox and Harold Paivarinta are not added to this count from R12. Final naming remains held for the predicate, actual knowledge, substantial assistance and causal injury; ordinary assistance or email presence is not a substitute.

R18.0. This count names Aldi Inc., Bill Duesenberg, Walmart Inc. and Braulio Valdes as proposed new defendants. Don Fox is not added to R18 by inference from his selection on R12. The supported predicate tort, principal tortfeasor, each aider's actual knowledge, substantial assistance, claimant and causal injury must be separately identified; proposed party restoration does not supply those facts.

R18.1. This conditional theory addresses knowing, substantial assistance by an identified defendant to another actor's particular actionable tort, not an independent claim for helping end a business relationship. The predicate wrong, the principal tortfeasor, the defendant-aider, and the injured claimant remain to be established through discovery and are not pleaded as presently determined. The proposed route is the retailer-interference conduct in R12/R13, or a separately supported fraud route under R15; no predicate is selected in this count.

R18.2. [REDACTED] The completed allegation must explain what the proposed aider knew about the underlying wrong when assisting and what that defendant did to make it succeed. Presence on an email, job title, social connection, knowledge of a dispute or routine implementation alone is not pleaded as sufficient assistance. [REDACTED]

R18.3. The proper claimant would seek only loss caused by the identified knowing assistance to the supported tort, with credits and no duplication of recovery for the same injury. Assistance by an insider is neither categorically immune nor automatically tortious. R14's conspiracy analysis is not mechanically imported into this separate claim; no outside-family aider is universally required, and the buyer defendants identified in R18.0 remain proposed additions, not adjudicated aiders or automatically liable customer actors.

Common relief

33. James seeks compensatory or alternative relief established under the selected personal theory, with appropriate credits and no double recovery between him and JDGS or among theories. Any

statutory remedy, fee, punitive award, interest or equitable relief requires its independent legal basis. No amount or remedy is created simply by including it in a prayer. Jury-demand and dispute-resolution positions remain subject to the actual undertaking and applicable law.

33A. James seeks a supported valuation of the personal exit undertaking if he establishes that right, including the service contribution and attributable enterprise value he alleges it covered. He proposes using verified historical performance and evidence of benefits attributable to his work to inform that valuation. He does not equate gross retailer revenue with his personal damages, claim all RSF enterprise value, or add overlapping future-income and enterprise-value measures without adjustment. His account of protection through settlement is an alleged term, not an established legal endpoint. Corporate commissions, payments, other contributors, costs, causation and the applicable valuation date and time horizon require separate treatment. No current revenue total, fixed formula or award is alleged here.

WHEREFORE, James D'Amato, solely in his individual capacity, proposes the following relief to the extent supported by the right and claim he may lawfully assert. Corporate claims identified for directions are not a pro se assertion by him of JDGS's rights. Where a prayer item below refers to the proper claimant, James requests that relief for himself only to the extent he establishes the right; as to any corresponding claim or relief of JD Global, including relief described in the identified corporate paragraphs, he requests only that the Court direct how it may be presented through licensed counsel. He requests express judicial directions concerning the permitted pleading form and treatment of JDGS's existing claims rather than assuming that a private reservation prevents supersession or dismissal:

PR-A. Contract / personal undertaking (R01; corporate claim identified at 22C): damages to the proper claimant for breach of the undertaking / Commission Agreement.

PR-B. Implied covenant (R02; corporate claim identified at 24C): damages for loss of the benefit of the bargain.

PR-C. Promissory/equitable estoppel (R03; corporate claim identified at 26C): reliance

damages / promised economic benefit.

PR-D. CEPA (R04, personal only): remedies available under N.J.S.A. 34:19-5 to Mr. D'Amato, including punitive relief where available — subject to the reserved capacity/coverage determination.

PR-E. NJSRA (R08; corporate claim identified at 28C): unpaid earned commissions and the statutory treble-damages remedy to the proper claimant.

PR-F. Fraudulent inducement (R15; corporate claim identified at F04-C; with defendants limited by R15.SCOPE): compensatory and punitive damages to the proper claimant where legally available. D.E.34 is a historical ruling on the corporate pleading, not proof of fraud, personal claim ownership, or clearance of the present proposed count.

PR-G. Unjust enrichment / quantum meruit (R09/R10; corporate claims identified at 30C/32C): the value of the benefit conferred and the reasonable value of services, to the proper claimant.

PR-H. Proprietary information (R05/R06 trade secret; R16 conversion; corporate claims identified at R05.4-C/R06.3-C/R16.4-C): damages for unauthorized use and an injunction requiring RETURN/turn-over of the proprietary materials.

PR-I. Copyright (R07): remedies available under the Copyright Act, subject to the § 411 registration prerequisite and § 412 remedy limits — reserved.

PR-J. Antitrust / interference / conspiracy / aiding (R11/R12/R13/R14/R18): the damages legally recoverable by the proper claimant for the supported conduct, subject to the express unresolved element determinations; no treble or amount alleged absent support. Harold Paivarinta and Roberto Saldaña Castillo are included in this request only insofar as liability to the proper claimant is established on R12 and the Court authorizes their respective additions.

PR-K. Costs of suit and attorneys' fees where legally available; pre-judgment interest at the maximum legal rate; and such other and further relief as the Court deems just and proper.

PR-L. Equitable accounting (R17): a bounded account to the holder of an established compensation right, against the count-specific responsible entity and only upon the independent basis and ordinary-remedy inadequacy described in R17.4. The P14 general-partner route

remains conditional; no immediate examiner appointment, discovery order, affiliate-wide account or personal ownership of JDGS receivables is requested by this cross-reference.

JURY DEMAND. James demands a trial by jury on all issues triable by jury on his properly asserted claims; any corporate demand must be presented through a permitted corporate pleading and counsel.

Dated: October 18, 2026

Signature:

James D'Amato, individually
Address: 233 Rock Road #101, Glen Rock, NJ 07452
Telephone: (201) 280-1109
Email: jim@jdglobalsales.com