UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JD GLOBAL SALES, INC.,<br><br>Plaintiff,<br>v.<br><br>JEM D INTERNATIONAL PARTNERS, LP, JEM D. INTERNATIONAL (MICHIGAN) INC., JIM DIMENNA, CARLOS VISCONTI, and ABC COMPANIES 1-10,<br><br>Defendants. | Hon. Michael E. Farbiarz, U.S.D.J.<br>Hon. Alex D. Silagi, U.S.M.J.<br><br>Civil Action No.<br>2:21-cv-19943 (MEF) (ADS)<br><br>(Document Electronically Filed) |

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF NON-PARTY JAMES D'AMATO SEEKING LEAVE TO FILE AN AMENDED COMPLAINT

Joseph H. Tringali, Esq.
(Bar ID: JT-3853)
Bendit Weinstock, P.A.
80 Main Street, Suite 260
West Orange, NJ 07052
Telephone: 973-736-9800
Facsimile: 973-325-3115
Attorneys for Defendants, Jem D International Partners, LP;
Jem D International (Michigan), Inc.,
Jim DiMenna and Carlos Visconti

Dated: November 23, 2026

# TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

BACKGROUND OF THE CASE ........ 3

STATEMENT OF RELEVANT PROCEDURAL HISTORY ........ 7

A. Relevant Prior Proceedings

B. The September 17, 2026 Text Order Permitting the Filing of a Motion Seeking Leave to Amend the August 31, 2022 Amended Complaint, and the Filing of the Present Motion

ARGUMENT ........ 14

POINT I ........ 14

THE LEGAL STANDARDS APPLICABLE TO MOTIONS FOR LEAVE TO AMEND PLEADINGS

POINT II ........ 17

THE DELAY IN SEEKING THE AMENDMENT IS UNDUE AND PREJUDICE TO DEFENDANTS WOULD RESULT IF THE AMENDMENT IS PERMITTED

POINT III ........ 27

THE MOTION SHOULD BE DENIED AS THE DELAY IN SEEKING THE AMENDMENT IS UNDUE, PREJUDICE TO DEFENDANTS WOULD RESULT IF THE AMENDMENT IS PERMITTED, AND THE PROPOSED CLAIMS ARE NOT GERMANE TO THIS ACTION

POINT IV .......... 34

THE MOTION SHOULD BE DENIED INSOFAR AS THE REQUESTED RELIEF EXCEEDS THE PERMISSIBLE SCOPE OF THE SEPTEMBER 17, 2026 TEXT ORDER

POINT V .......... 37

MOST OF D'AMATO'S PROPOSED CLAIMS ARE BARRED BY STATUTES OF LIMITATIONS, AND DO NOT RELATE BACK TO THE AMENDED COMPLAINT

CONCLUSION .......... 40

# TABLE OF AUTHORITIES

Page

Court Rules, Statutes


Fed.R.Civ.P. 2 (b)(6) .......... 16

Fed.R.Civ.P. 8 (a)(2) .......... 21, 27

Fed.R.Civ.P. 11 (b)(3) .......... 20

Fed.R.Civ.P. 15 (a) .......... 14

Fed.R.Civ.P. 15 (a)(2) .......... 15

Fed.R.Civ.P. 15.1 .......... 14, 16

Fed.R.Civ.P. 15.1(a)(2) .......... 13

Fed.R.Civ.P. 15(c) .......... 40

Fed.R.Civ.P. 24 .......... 32

Fed.R.Civ.P. 24(a)(1) .......... 32, 34

Fed.R.Civ.P. 42 (b) .......... 12

Fed.R.Civ.P. 72(b) .......... 13, 34, 36

Fed.R.Evid. 502(d) .......... 10, 11

N.J.S.A. 2A:14-1 .......... 37, 38, 39, 40

N.J.S.A. 34:19-5 .......... 38

N.J.S.A. 56:15-8 .......... 38

17 U.S.C. § 507(b) .......... 38

18 U.S.C. § 1836(d) .......... 38

Cases

ACR Energy Partners, LLC v. Polo North Country Club, Inc., 309 F.R.D. 191 (2015) ... 33

Adams v. Gould Inc., 739 F.2d 858 (3d Cir. 1984) ... 15, 28

Amar v. Citigroup, Inc., 2026 U.D. Dist. LEXIS 91911, *9 (D.N.J. 2026) ... 38

Arab African Int'l Bank v. Epstein, 10 F.3d 168 (3d Cir. 1993) ... 14

Bechtel v. Robinson, 886 F.2d 644 (3d Cir. 1989) ... 15

Bell Atl. Corp. v. Twombly, 550 U.S. at 555 ... 21

Block v. First Blood Associates, 988 F.2d 344 (2d Cir. 2004) ... 16

Burns v. Glick, 158 F.R.D. 354 (E.D. Pa. 1994) ... 19

Conley v. Gibson, 355 U.S. 41 (1957) ... 21

Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n, 573 F.2d 820 (3d Cir. 1978) ... 15

Cureton v. NCAA, 252 F.3d 267 (3d Cir. 2001) ... 15, 30

Gashlin v. Prudential Ins. Co. of Am. Ret. Sys., 286 F. Supp. 2d 407 (2003) ... 37

Glover v. DFIC, 698 F.3d 139 (2012) ... 40

Grayson v. Mayview State Hosp.,
293 F.3d 103 (3d Cir. 2002) ........................................................................ 16

In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410 (3d Cir. 1997) ................................................................. 15, 16

In re Fragrance Direct Purchaser Antitrust Litig.,
No. 23-02174. 2025 U.S. Dist. LEXIS 31603 (D.N.J. Feb. 21, 2025) ............ 38

In re Johnson & Johnson Derivative Litigation,
900 F. Supp. 2d 467 (2012) ..................................................................... 32, 33

Iwanowa v. Ford Motor Co.,
67 F. Supp. 2d 424 (D.N.J. 1999) ............................................................... 37

Kleissler v. U.S. Forest Service,
157 F.3d 964 (3d Cir. 1998) ........................................................................ 32

Lax v. City of Atlantic City,
No. 19-7036, at *6 (D.N.J. Dec. 27, 2019) ................................................. 16

Long v. Wilson,
393 F.3d 390 (3d Cir. 2004) ........................................................................ 16

Mala v. Crown Bay Marina, Inc.,
704 F.3d 239 (3d Cir. 2013) .................................................................. 18, 19

Onyx Enters. Can. Inc. v. Royzenshteyn
2025 U.S. Dist. LEXIS 176554 (D.N.J. September 10, 2025) ......................... 39

Spellman v. Express Dynamics, LLC,
150 F. Supp. 3d 378 (D.N.J. 2015) .............................................................. 37

Travelers Indent. Co. v. Dammann & Co.,
594 F.3d 238 (3d Cir. 2010) ........................................................................ 16

Other Authorities

Defend Trade Secrets Act ("DTSA") .................... 38

New Jersey Conscientious Employee Protection Act (R04) .................... 38

New Jersey Sales Representatives Rights Act (R08) .................... 38

New Jersey Trade Secrets Act (R05, R06) .................... 38

Rules of Professional Conduct, RPCs 1.1, 1.6, 5.1, 5.3, 3.3 .................... 19

# INTRODUCTION

Defendants Jem D International Partners, LP ("JDIP") and Jem D International (Michigan), Inc. ("Jem D Michigan"), and individual defendants Jim DiMenna and Carlos Visconti (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in opposition to the motion filed by the individual James D'Amato ("D'Amato"), on or about October 20, 2026, to amend the existing August 31, 2022 Amended Complaint ("Amd. Cpt.") (D.E.38) in this matter, pursuant to allowance granted by a September 17, 2026 Text Order issued by the Hon. Michael E. Farbiarz, U.S.D.J. (D.E. 174)

For the reasons set forth herein, the motion should be denied in its entirety. The September 17, 2026 Text Order permitted only the filing of a motion seeking leave to amend. D'Amato's motion, which seeks multi-faceted relief, is violative of the Text Order, and should be denied for that reason alone. In addition, the motion – which consists of hundreds of pages containing random redactions of text – is not a proper motion to amend at all. The document presented as a proposed amended complaint is not in compliance with the Court rules governing pleadings. No pleading has been proposed which is capable of being responded to, as the submitted document contains "conditional" "theories" (D'Amato's own characterizations), and narratives based upon what D'Amato further states are his recollections and interpretations of documents produced during discovery. Importantly, the motion

does not address the delay in proposing the amendment or the clear prejudice which will result if permitted.

Significantly and oddly, the motion does not directly seek leave to file the proposed amended pleading. Instead, it seeks guidance and advisory rulings from the Court as to whether claims may be asserted by D'Amato individually, against whom, and whether they are substantively sustainable. The motion asks the Court to evaluate the statements contained in the document labelled "proposed amended complaint," and to sanction the addition of new parties and claims unrelated to this breach of contract action, which are mostly barred by applicable statutes of limitations. It also asks that the Court direct the "form" of any approved pleading.

Finally, the extraneous and non-permitted requests for relief sought by the motion should be denied summarily. They include a bizarre request for the Court to intervene to secure the turnover of plaintiff's two prior counsels' litigation files to D'Amato, a request for allowance of additional non-party discovery and a case management conference, and the ordering of a procedure for the corporate plaintiff to continue to seek new counsel, in violation of prior orders in the case. The motion violates the September 17, 2026 Text Order by exceeding the scope of the limited permission contained therein, and it violates the March 24, 2026 Order prohibiting D'Amato from making any further filings in this case, entered by the Hon. Michael

A. Hammer, U.S.M.J. (D.E. 159). The March 24, 2026 Order should be enforced and incorporated into any order issued resolving D'Amato's motion.

BACKGROUND OF THE CASE

This action was commenced in November, 2021 by JD Global Sales, Inc. ("JD Global" or "plaintiff[1]"), a company whose at-will services contract with defendant Jem D Michigan was terminated in July, 2021. JD Global performed sales and marketing services pursuant to the terms of the contract. D'Amato is the principal and an employee of JD Global. (D.E. 38: Amd. Cpt. ¶¶3, 12) The allegations made by JD Global were not that the contract which the parties performed for over five years was breached by the termination. Plaintiff instead alleged that approximately three months after Jem D Michigan engaged JD Global to perform services, "defendants" verbally agreed to grant D'Amato's company a "lifetime" agreement, and that the termination of the parties' actual written agreement over five years later broke that promise, which allegedly had been made years earlier.

JD Global's Amended Complaint, filed August 31, 2022 (D.E.38), which is the extant and operative pleading, names as defendants both Jem D Michigan, with which it contracted, and Jem D International (a Canadian limited partnership), a separate and distinct entity, as well as Messrs. DiMenna and Visconti, based on their

[1] JD Global is referenced herein as "plaintiff," as JD Global has been the only plaintiff to the case since Judge Martinotti decided the two motions to dismiss, the latter of which disposed of D'Amato's individual claims.

affiliations with those companies. Jem D International grows and sells produce to customers – retail outlets throughout North America – which, in turn, sell produce directly to their customers. Jem D Michigan provides services to Jem D International, including contracting with United States entities to provide support services for the sale of its produce, such as was the case with JD Global. Both Jem D Michigan and Jem D International conduct business using the name Red Sun Farms. In plaintiff's pleadings, the two entities are imprecisely collectively referred to as Red Sun Farms. JD Global's contract was solely with Jem D Michigan. Plaintiff's contract was solely with Jem D Michigan.

Plaintiff's action, filed in response to the termination of the 2014 written Agreement for Services between it and Jem D Michigan, alleged that unspecified "defendants" verbally promised to JD Global a perpetual, non-terminable "lifetime" contract, measured by the life of D'Amato. Though D'Amato had lobbied for and presented numerous written proposals for a "lifetime" non-terminable agreement for his company during the five-year period of its business relationship with Jem D Michigan, the proposals were repeatedly rejected, as documentary evidence clearly shows. Not only do documents authored by D'Amato negate plaintiff's claim of the promise of a "lifetime" agreement, but absent proof of "unequivocal" assent, alleged lifetime employment arrangements are not legally enforceable.

Paper discovery was completed in 2025, with millions of pages of documents, including electronically stored communications and information, having been produced to plaintiff pursuant to all-encompassing ESI protocols developed and modified by plaintiff, agreed to, and incorporated in a Court Order, dated September 12, 2024. Numerous Case Management conferences were held and orders entered setting discovery deadlines. Plaintiff also insisted upon conducting what amounted to a fishing expedition via subpoena of customers of JDIP, seeking, inter alia, information to attempt to build unrelated claims against non-party entities and individuals. The subpoenas were issued by counsel for JD Global, modified and partially withdrawn by consent, and then, in a less than good-faith maneuver, reissued in their original form, which prompted a motion to quash the subpoenas, which was granted by Order and Opinion dated February 24, 2026 (D.E. 146) This is significant, because most of the "discovery" D'Amato discusses in his present motion again seek documents from various of JDIP's customers – an issue which has already been addressed and determined, which is not disclosed to the Court.[2]

The discovery which has taken place over four years has confirmed that plaintiff's claims lack merit, and JD Global now finds itself without legal counsel to pursue the claims further. Plaintiff's first counsel exited the case after an

[2] As the papers filed in connection with the motion to quash the subpoenas revealed, the documents were sought mostly to manufacture frivolous and harassing claims against customers of JDIP. Those claims again appear as "proposed" claims, against Walmart and Aldi, among other entities, in D'Amato's current motion.

unsuccessful mediation in 2023, and substituted counsel sought and was granted leave to withdraw as the company's counsel earlier this year. (D.E. 154) Among other things, D'Amato filed a notice of pro se representation of the corporate entity, which was impermissible. (D.E. 144) The Court eventually prohibited D'Amato from filing any further documents in the docket of this case. (D.E. 159) In connection with the Court's permitting JD Global's counsel to withdraw, Magistrate Judge Hammer ordered on March 4, 2026 that "any new counsel for Plaintiff shall file a notice of appearance on or before April 6, 2026[.]" (D.E. 154)

No new counsel for Plaintiff filed a notice of appearance as of that date, and a motion to dismiss the Amended Complaint was filed by Defendants with the District Court. (D.E. 163) The motion to dismiss JD Global's Amended Complaint for failure to retain counsel, as ordered by the Court, remains pending and is ripe for determination. As D'Amato outlines in his present motion, he has had no success in interesting any new counsel in the representation of JD Global in connection with the claims it has made in this action; and as he revealed in a February 20, 2026 filing, "more than twenty" law firms have rejected his proposal to become embroiled in this litigation as counsel for plaintiff. (D.E. 152, p. 10)[3]

---

[3] We respectfully submit that the motion to dismiss which is pending as to JD Global should be granted if same does not occur in advance of the return date of this present motion filed by D'Amato.

Prior to D'Amato's filing of unsolicited documents in the docket of the case, and his attempting to appear individually as "counsel" for JD Global in early 2026 (D.E. 144), the matter was ripe for summary judgment, and Magistrate Hammer intended to set a briefing schedule for same. Depositions, though noticed, were not essential in the case, because the gravamen of plaintiff's cause of action was the assertion of a verbal agreement, which defendants denied in answers to interrogatories, and the non-existence of the alleged verbal agreement was corroborated and confirmed by a plethora of documentary evidence. While the evidence and applicable law eviscerates plaintiff's claims, imminent summary judgment proceedings were delayed because of D'Amato's unleashing unnecessary chaos into the case as it neared its procedural conclusion.

## STATEMENT OF RELEVANT PROCEDURAL HISTORY

### A. Relevant Prior Proceedings

The following Statement of Procedural History is consistent with the recitation of the Court's footnote in the March 4, 2026 Order denying relief sought by non-party D'Amato, as well as the recent procedural history preceding the current motion to amend the complaint filed by D'Amato.

On November 11, 2021, JD Global filed a Complaint against Defendants Jem D International Partners, LP, Jem D International (Michigan), Inc., Jim DiMenna, and Carlos Visconti (collectively, "Red Sun Farms"), and Defendant Harold

Paivarinta ("Paivarinta") (together with Red Sun Farms, "Defendants"). (D.E. 1) On January 14, 2022, Defendants filed motions to dismiss the initial Complaint. (D.E. 17, 18) On August 3, 2022, Brian R. Martinotti, U.S.D.J. granted in part and denied in part Defendants' motions. (D.E. 34, 35)

Judge Martinotti granted the motions solely with respect to JD Global's CEPA claim in Count IV of the Complaint, concluding that CEPA protections do not extend to corporations, as the CEPA statute defines an employee as an individual. (D.E. 34, at 19-20) Thus, Judge Martinotti dismissed the CEPA claim as the only named plaintiff was a corporation. (D.E. 34, at 19-20)

In response, JD Global filed an Amended Complaint adding James D'Amato as a plaintiff and asserting a CEPA claim on his behalf. (D.E. 38) Again, Defendants moved to dismiss the Amended Complaint. (D.E. 42, 43) Judge Martinotti again dismissed the CEPA claim in Count IV of the Amended Complaint by Order and Opinion dated July 17, 2023. (D.E. 69, 70)

Judge Martinotti concluded that D'Amato could not bring a CEPA claim against Defendants because he was not an employee or independent contractor of Defendants. (D.E. 69, at 23) Notably, Judge Martinotti stated, "[t]he contractual relationship was between Red Sun Farms and JD Global, a corporation that alone, also cannot bring a CEPA cause of action against Defendants." (D.E. 69, at 23) Plaintiff did not file an additional amended pleading in response to that decision.

While the second motion to dismiss was pending, Magistrate Hammer conducted a scheduling conference on February 2, 2023, and on that date entered a Scheduling Order, which provided that "[a]ny motion to add new parties or amend pleadings, whether by amended or third party complaint, must be filed not later than August 31, 2023." (D.E. 57, emphasis added) No motion to amend was made prior to the August 31, 2023 deadline, and it was later confirmed in subsequent conferences with the Court that no party intended to amend the pleadings. In addition, a Discovery Confidentiality Order was agreed to by counsel and entered by Judge Hammer on April 11, 2023. (D.E. 62)

Following a mediation which occurred in May 2023, and Judge Martinotti's July 17, 2023 decision on the second motion to dismiss, then-counsel for JD Global, the firm of Lowenstein Sandler, withdrew as counsel on August 10, 2023, and Dominic V. Caruso, Esq., was substituted as counsel for JD Global. (D.E. 72)

After the pleading stage and prior to September 2024, counsel for the parties exchanged numerous e-mails and letters regarding open discovery disputes. After months of exchanging communications, the parties met and conferred with Judge Hammer to discuss discovery, and to create a roadmap and address timing for completion of discovery. Judge Hammer assisted counsel in reaching certain written discovery agreements. After a September 2024 meet and confer conference, the Court entered a September 12, 2024 Discovery Order which identified ESI protocols

for search terms at Exhibit A, and listed relevant third parties and custodians in the text of the Order. (D.E. 90) Defendants utilized the services of TransPerfect, an e-discovery vendor, in connection with review and production of electronically stored documents consistent with the agreed-upon ESI protocols, and have fully complied with the September 12, 2024 Discovery Order. Written and document discovery is complete and included Defendants' production of millions of pages of documents.

On July 29, 2025, counsel for the parties met and conferred with Judge Hammer to discuss an open discovery issue regarding subpoenas that Plaintiff sought to issue, questions that plaintiff had for TransPerfect regarding compliance with the September 12, 2024 Discovery Order, a process for entry into a Fed.R.Evid. 502(d) Stipulation regarding production and review of privileged documents, and Defendants' request for a summary judgment briefing schedule. The Court entered a Text Order that same day setting forth the framework for resolving those issues discussed during the meet and confer with Judge Hammer. (D.E. 125)

Thereafter, the parties submitted joint letters on September 4, 2025 to address the subpoena issue (D.E. 129/130), Plaintiff deposed a TransPerfect representative on September 25, 2025 and provided to Plaintiff a follow-up declaration from the TransPerfect representative on November 17, 2025, and the parties entered into a Fed.R.Evid. 502(d) Consent Order on September 4, 2025. (D.E. 128).

The subpoena issue resulted from plaintiff's giving notice of its intent to issue

subpoenas to various of JDIP's customers, to seek documents to "verify" information relating to sales commissions paid to JD Global, and to seek other information from the customers, unrelated to the issues in the lawsuit, or related to claims which had been dismissed. Counsel for the parties agreed to limit the subpoenas to seeking only the sales information, but to exclude the extraneous irrelevant information. Notwithstanding, several months later, plaintiff's counsel, Mr. Caruso, again sought to issue the identical initial proposed subpoenas, at the behest of Mr. D'Amato. Defendants requested that the subpoenas be quashed, and Judge Hammer granted that relief, by Order and Opinion filed on February 23, 2026. (D.E. 146)

Defendants complied with the terms of the Fed.R.Evid. 502(d) Consent Order by producing documents subject to various Privilege Logs transmitted to plaintiff after entry of the September 12, 2024 Discovery Order. The documents produced went beyond the three-to-four-month time frame referred to by then-counsel for Plaintiff during the July 29, 2025 meet and confer conference with Judge Hammer.[4]

On January 30, 2026, non-party D'Amato filed a document titled "Notice of Appearance Pro Se and Substitution of Counsel" wherein it stated, "Plaintiff JD Global Sales, Inc. will retain separate counsel within sixty (60) days." (D.E. 144) On February 25, 2026, Dominic V. Caruso, Esq. filed a motion seeking leave to

[4] The timeframe for purposes of the Fed.R.Evid. 502(d) Consent Order was defined as the period between February 1, 2015 and June 2, 2016. Defendants expanded the production timeframe without the need for further involvement by the Court.

withdraw from his representation as counsel for Plaintiff. (D.E. 148) Defendants consented to Mr. Caruso's withdrawal and to stay the proceedings for twenty-one (21) days to afford Plaintiff time to retain new counsel. (D.E. 148-1) On March 4, 2026, Judge Hammer granted Mr. Caruso's motion and allowed Plaintiff an additional "thirty days to secure new counsel, and that any new counsel for Plaintiff shall file a notice of appearance on or before April 6, 2026[.]" (D.E. 154) No new counsel for Plaintiff has filed a notice of appearance as of the date hereof.

After D'Amato's filing of his January 30, 2026 Notice of Appearance Pro Se, which was ultimately stricken by the March 4, 2026 Order (D.E. 144, 155), he made numerous filings on the docket. (D.E. 152, 149, 156) On March 24, 2026, Judge Hammer entered an Order granting a motion to seal filed by Defendants and ordered "that James D'Amato shall be precluded from making further filings on the docket due to his non-party status." (D.E. 159) Thereafter, on April 7, 2026, Defendants filed a motion to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 42(b), as JD Global had not retained counsel to represent it by the April 6, 2026 Court-ordered deadline. This motion remains pending as of the date of this filing.

D'Amato sought review of the March 4, 2026 Order by the District Court (D.E. 158, 160), which resulted in the September 17, 2026 Text Order (D.E. 174) permitting the filing of the current motion seeking leave to amend.

B. The September 17, 2026 Text Order Permitting the Filing of a Motion Seeking Leave to Amend the August 31, 2022 Amended Complaint, and the Filing of the Present Motion

On September 17, 2026, Hon. Michael E. Farbiarz, U.S.D.J. entered a Text Order permitting D'Amato "to file a motion before the United States Magistrate Judge seeking leave to file an amended complaint" on or before October 18, 2026. (D.E. 174) The September 17, 2026 Text Order states that any motion for leave to file an amended complaint "will not be accepted after that date." (D.E. 174) The Text Order permitted D'Amato to file only a motion to amend, and did not permit the filing of any other motion, or permit other requests for relief to be made.[5]

On October 20, 2026, D'Amato filed and served a motion for leave to file an amended complaint under seal. (D.E. 176) On October 22, 2026, D'Amato made a separate filing under D.E. 177 not under seal that included redacted versions of the documents submitted in D.E. 176.

An October 26, 2026 Text Order entered by the Hon. Alex D. Silagi, U.S.M.J. acknowledged receipt of D'Amato's motion to amend the complaint under D.E. 176 and D.E. 177, and noted deficiencies in the motion papers in violation of L. Civ. R. 15.1(a)(2) for failure to include a required redlined pleading. (D.E. 178) D'Amato was permitted to correct deficiencies in his motion papers by November 6, 2026, at

[5] The Text Order resolved D'Amato's Fed.R.Civ.P. 72(b) challenge (D.E. 160) to Magistrate Hammer's March 4, 2026 Order (D.E. 155) denying D'Amato's request for leave to file a Second Amended Complaint.

which time the "motion to amend at D.E. 177 shall be deemed filed as of the date that [D'Amato] files a redline consistent with L. Civ. R. 15.1." (D.E. 178)

On October 27, 2026, JD Global filed an "Unredacted Filing Re [38]" under D.E. 179, and on October 30, 2026, D'Amato filed a "Redacted Amended Complaint" and a "Sealed Amended Complaint" under D.E. 181 and D.E. 182, respectively. Judge Silagi entered a Text Order on November 2, 2026 pertaining to a separate motion to seal filed by D'Amato (D.E. 180), and acknowledged the Court is in receipt of D'Amato's "motion to amend, D.E. [176], and supporting papers, D.E. [179], [182][.]" Pursuant to the October 26, 2026 Text Order, the Motion Day for D'Amato's motion for leave to amend the complaint is December 7, 2026, with opposition to the motion due by November 23, 2026.[6]

## ARGUMENT

## POINT I

### THE LEGAL STANDARDS APPLICABLE TO MOTIONS FOR LEAVE TO AMEND PLEADINGS

Motions seeking leave to amend a complaint are governed by Fed.R.Civ.P. 15(a). Although "[t]he decision to grant or deny leave to amend under Fed.R.Civ.P. 15(a) is 'committed to the sound discretion of the court,'" Arab African Int'l Bank v.

[6] The Court rejected D'Amato's motion to seal the filings relating to his motion to amend, and directed defendants to file a motion to seal, if appropriate. (D.E. 183) Defendants determined not to file a motion to seal D'Amato's motion papers, and by Text Order dated November 17, 2026, the Court directed the unsealing of documents filed at D.E. 176, 179, and 182. (D.E. 185)

Epstein, 10 F.3d 168, 174 (3d Cir. 1993), the federal rules mandate that the Court "should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). A Court may exercise its discretion to deny leave to amend a complaint "if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." Cureton v. NCAA, 252 F.3d 267, 272-73 (3d Cir. 2001); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Where delay is "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" denial of a motion to amend is appropriate. Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984).

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment." Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (quoting Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)). Prejudice to the non-moving party includes "additional discovery, cost, and preparation to defend against new facts or new theories." Cureton, 252 F.3d. at 273. Prejudice may be established by showing that allowing the proposed amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. See

Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993) (cited with approval by Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004).

The futility of a proposed amendment also warrants denial of a motion for leave to amend. See, e.g., Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); In re Burlington Coat Factory, supra. The futility of a proposed amended pleading is evaluated under the same standard of legal sufficiency as a motion to dismiss under Fed.R.Civ.P. 2(b)(6). Travelers Indent. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010).[7]

L.Civ.R.15.1 requires a party who seeks leave to do so by motion, which must include a copy of the proposed amended pleading and a statement of the ways in which it differs from the pleading it proposes to amend, by bracketing or striking through materials to be deleted and underlining materials to be added. Failure to comply with Rule 15.1 "complicates this Court's review of the relevant documents and, in and of itself, is an error significant enough to warrant denial of Plaintiff's motion." Lax v. City of Atlantic City, No. 19-7036, at *6 (D.N.J. Dec. 27, 2019).

---

[7] It is acknowledged that the Court's September 17, 2026 Text Order provided that opposition to D'Amato's motion should exclude "objections grounded in futility, which is better handled later, in a free-standing Rule 12 motion to dismiss." (D.E. 174) However, it is important to note, in addressing prejudice to the parties and the Court, that the proposed claims clearly are not claims which may be alleged by D'Amato individually, and accordingly, are entirely futile.

## POINT II

### THE MOTION IS PROCEDURALLY DEFICIENT, AND SEEKS ADVISORY RULINGS AS TO D'AMATO'S ABILITY TO ASSERT THEORETICAL CLAIMS ON HIS OWN BEHALF, AGAINST PROPOSED "CONDITIONAL" DEFENDANTS

The motion filed by D'Amato is procedurally deficient and should be denied summarily. It is not a motion to amend at all, but instead, as the Notice of Motion states, an application "presenting for consideration" by the Court a narrative outlining various theoretical claims, and seeking direction as to the form of a pleading and what to include in it prior to its compilation and filing. (10/18/26 N/M, p. 2) The document proposed as an amended pleading (D.E. 181, 182) does not state affirmative allegations against the "conditionally" proposed defendants, but instead, includes numerous "theories" of which D'Amato seeks review by the Court, so as to advise if they are viable, and if he may assert them.

D'Amato's "Opening Letter" to the Court states, "[t]he proposed amended complaint presents all eighteen numbered theories for consideration, some expressly conditional. . . ." (10/18/26 Letter, p. 4) The Notice of Motion similarly states, "[a]ll eighteen numbered theories, R01 through R18, are presented for consideration. . . James seeks relief only on rights he may assert personally . . . ." (10/18/26 N/M, ¶1)

The Notice of Motion also makes clear that entities and individuals identified in the application are <u>not</u> defendants against whom claims are affirmatively asserted, but instead are "review candidates without a cleared final claimant," noting the lack

of "a cleared final defendant." (10/18/26 N/M, ¶1) It is stated that these defendant/candidates are being "presented" to the Court, and that "consideration of [their] proposed addition" is sought – not that any substantive claims are being asserted against them in the proposed pleading document. (10/18/26 N/M, ¶3) The supporting brief further states that D'Amato "requests an express, claim-specific ruling identifying what he may plead in his own name and what must be presented through corporate counsel." (10/18/26 Brief at 12) The Notice of Motion also seeks:

> Express directions fixing the permitted pleading form, the claimant and defendant scope authorized by the Court, and the treatment of JD Global's existing claims during the representation interval.[8]

(10/18/26 N/M, ¶2)

D'Amato's asking the Court for an evaluation of what may be pled and against whom, as well as for directions as to the form of any pleading to be filed renders the motion defective, and it should be denied summarily on that basis. The Court cannot give advice to litigants as to the viability of claims, or how to present them. Courts are not obligated to give legal advice to pro se litigants. Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

A pro se litigant is required to proceed in accordance with the Court rules. While self-represented litigants are indulged as to review of pleadings, "there are

---

[8] The "representation interval" referred to in this passage is to another portion of D'Amato's motion – not permitted by the September 17, 2026 Text Order – wherein he seeks additional time to obtain legal representation for JD Global, in violation of the March 4, 2026 Order (D.E. 154), which required plaintiff to obtain new counsel by April 6, 2026.

limits to [district courts'] procedural flexibility" and "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., supra. Pro se litigants "must abide by the same rules that apply to all other litigants." Id, citation omitted. In addition, all litigants, even those proceeding pro se, must comply with court orders and "[w]hen they flout that obligation, they . . . must suffer the consequences of their actions." Burns v. Glick, 158 F.R.D. 354, 356 (E.D. Pa. 1994) (internal citations omitted).

Here, the motion is one purportedly, but not actually seeking leave to amend the long-ago filed Amended Complaint, to change the party plaintiff asserting the claims from JD Global to D'Amato individually if the Court advises that he can do so, and to add claims against various individuals as well as JDIP's customers, which are baseless and barred by applicable statutes of limitations. D'Amato further seeks to "revive" CEPA claims which were dismissed on motions at the onset of the case, as well as claims voluntarily dismissed by plaintiff (copyright); both are entirely frivolous proposals. Much of the proposed pleading document and the supporting brief appear to have been generated by artificial means, as D'Amato is referred to in the third person, and general statements are made as to the proofs required to sustain various causes of action.[9] Some of the jargon employed in the motion papers is

[9] Counsel practicing in the State of New Jersey recently have been reminded of their ethical obligations when employing artificial intelligence to produce work product, including papers filed with the Court. (See March 30, 2026 Notice to the Bar – "Responsible Use of Artificial Intelligence and Related Technologies," which includes the Supreme Court's reminder that

simply incomprehensible.[10] The motion papers and proposed pleading document run afoul of the Court rules and reflect a disregard of basic legal principles regarding assertion of claims in a civil action.

The supporting forty (40) page Declaration filed by D'Amato is a lengthy and irrelevant recitation of his recollection of selected events, which does not state the basis for his seeking to amend, or explain the tardiness of the motion filing, in violation of prior Court Orders setting deadlines for amending pleadings. Interestingly, however, the Declaration, executed by D'Amato "under penalty of perjury," contains numerous admissions contradicting JD Global's asserted claims by attempting to recast them as individual claims. For example, D'Amato disavows portions of JD Global's answers to interrogatories which are inconsistent with his narrative that JD Global's claims are "personal" to him. (10/18/26 Declaration, ¶143)

---

"Attorneys remain fully responsible for their work product and professional obligations under the Rules of Professional Conduct (including RPCs 1.1, 1.6, 5.1, 5.3, and 3.3).") The same standards apply to self-represented litigants.

[10] For example, the following passage from the brief appears to originate from an outside review of the papers, gives guidance as to the construction of pleadings, and contains verbiage which is non-sensical in the context of the statements being made:

> Nor does the existence of discovery questions permit missing elements simply to be replaced with the words 'to be established.' Rule 11(b)(3) continues to govern factual contentions. Each theory must retain its actual supporting facts, contrary context, claimant and defendant attribution.

(10/18/26 Brief at 8)

The supporting brief also does not address the standards for consideration of a motion to amend in the context of the actual procedural history of this case.

With respect to the proposed pleading document itself, it does not state allegations which may be responded to; it does not assert facts for a jurisdictional analysis, and with the exception of the causes of action D'Amato seeks to have "transformed" into personal claims, the causes are stated conditionally, against yet-to-be-determined defendants, with a request that the Court "consider" the claims and advise if they may be asserted. Fed.R.Civ.P. 8(a)(2) requires that a plaintiff set forth in its pleading "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." The requirement exists to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). D'Amato's pleading does not meet the requirement of stating claims, asserting that he is entitled to relief, or making his claims against designated defendants. As such, it is violative of Fed.R.Civ.P. 8(a)(2).

There are eighteen (18) sections of the proposed pleading document, which eliminates in its entirety the claims of JD Global, replacing them with "theories" as to why they may be transformed into individual claims. It also presents claims for the Court's "consideration," against new "conditional" defendants which are unrelated to the underlying breach of contract action. As D'Amato describes it, his

"theories" are based on his "recollections," and his interpretations of events and documents. The theoretical, conditional relief set forth in the eighteen (18) sections[11] of the proposed pleading document are described herein:

| | | | |
|---|---|---|---|
| R01 | Breach of the alleged personal undertaking; intended-beneficiary alternative | R10 | Quantum meruit, alternatively |
| R02 | Implied covenant | R11 | Sherman Act conditional candidate |
| R03 | Promissory estoppel, alternatively | R12 | Walmart interference conditional candidate |
| R04 | CEPA conditional candidate | R13 | Aldi interference conditional candidate |
| R05 | Federal trade secret conditional candidate | R14 | Civil conspiracy conditional candidate |
| R06 | New Jersey trade secret conditional candidate | R15 | Fraudulent inducement conditional candidate |
| R07 | Copyright conditional candidate | R16 | Conversion conditional candidate |
| R08 | Sales Representatives Rights Act conditional candidate | R17 | Equitable accounting conditional candidate |
| R09 | Unjust enrichment, alternatively | R18 | Aiding and abetting conditional candidate |

As to sections 01, 02, 03, 08, 09, 10 and 15, the same claims were asserted by JD Global in the Amended Complaint (Counts I, II, III, V, VI, VII), and there is no basis for those claims to be transformed into claims asserted by D'Amato individually. As Judge Martinotti stated in his July 17, 2023 Opinion, the contractual relationship at issue in this case was between Red Sun Farms and JD Global. (D.E.

[11] We do not refer to these "R-numbered" sections as "counts" because they are not such; they are instead conditionally stated recitations of D'Amato's recollections and his speculation regarding snippets of documents which were produced by defendants in discovery, all of which he seeks to have the Court review and sanction as causes of action he may include in a pleading.

69, at 23) D'Amato has no individual claims due to his status as the company's principal, or as an employee of the company. All the breach of contract and contract-related claims are not cognizable by D'Amato as an individual. If he is granted leave to assert these claims and does so, the pleading will be futile and frivolous.

All but sections 01, 03, 09 and 10 have the words "conditional candidate" inserted in the section description. Counts of a Complaint cannot be stated conditionally, or with no definite plaintiff or defendant. No affirmative claims are stated; instead D'Amato seeks to have the Court review and advise as to whether his "theories" are viable, against whom they may be asserted, and whether he, individually, may assert the claims. It is stated that an "opportunity for discovery" will be necessary to substantiate the claims made in section 12, and likewise, in sections 13, 14, 17 and 18, additional discovery is sought prior to pleading the "conditional" claims. As sections 02, 04, 05, 06, 07, 08, 11, 12, 13, 14, 15, 16, 17 and 18 do not state affirmative claims for relief, leave should not be granted to include them in an amended pleading.

Additionally, section 04 is a restatement of the CEPA claim which was dismissed in its entirety, first as to JD Global's assertion of the claim, and second, as to D'Amato's assertion of the claim, as he was not an employee of any of the defendants. (D.E. 34; D.E. 69) Even proposing "conditional" re-assertion of this claim is frivolous, in view of the Court's prior rulings.

Sections 05 and 06 are alternate statements of the claims in the Amended Complaint in Count VIII (Misappropriation of Business Information), in which it was alleged that defendants misappropriated a sales-tracking spreadsheet which JD Global used during its performance of services pursuant to the subject contract. Even if there were any "proprietary right" in a spreadsheet used by JD Global to track sales made by JDIP to its customers, D'Amato does not possess such claims, as the allegations of the prior pleading establish, and the attempt to re-assert them as "conditional" individual claims is baseless. Likewise, section 07, alleging copyright violation was dismissed from the original complaint, by letter issued by JD Global's then-counsel. (D.E. 39) There was no basis for the count, as counsel recognized, because there was no copyright of the spreadsheet.

Sections 11, 12, 13, and 14 contain a collection of statements which again, are "conditional," and appear to be intended to state (1) tort claims against individuals, to the extent they were involved in or knew about the termination of the subject contract; (2) claims against JDIP customers and individuals associated with them, to the extent they expressed negative opinions of D'Amato; (3) civil conspiracy claims, and underlying tort claims, to enable the assertion of conspiracy, related to an imagined grand scheme to terminate the services of JD Global; and (4) anti-trust claims aimed at JDIP's customers, which are mostly incomprehensible. As to the latter (Section 11 "Sherman Act conditional candidate"), which D'Amato identifies

as being supported by a "conditional theory" (¶R11.1), obviously, JD Global was not a competitor of any of the customers of JDIP identified in the section, and neither was D'Amato.[12] Again, D'Amato seeks discovery to determine whether the statements made in Sections 12, 13 and 14 constitute actual "claims," and it is specifically stated that the elements of the claims are not "are not pleaded as presently determined." (¶¶R12.5, R13.5, R14.1, R18.1) As these sections do not state affirmative claims, leave should not be granted to assert them in any manner.

Sections 16, 17 and 18 are equally groundless, and do not state affirmative claims. Section 16, "conversion conditional candidate" is alleged on behalf of JD Global. The statements in the section are mostly incomprehensible, but it is clear that D'Amato is not asserting the claim on his own behalf, as the need for "licensed counsel" to make the claim is addressed. (¶R16) Similarly, an "equitable accounting" is sought (Section 17), but it is also stated as a right of JD Global relating to "corporate compensation," with "licensed counsel" referenced. Although the section contains an incomprehensible statement that "James D'Amato is included only for an established personal right requiring an accounting" (¶R17), no right is

[12] It appears that D'Amato seeks to assert the existence of some grand secret scheme to terminate the business relationship between JD Global and Jem D Michigan, and he has culled through the document discovery to attempt to identify anyone who communicated about JD Global without D'Amato's knowledge. A case in point of the suspicious supposition reflected in the proposed pleading document is the following, at ¶R13.3: "Nicole Solis's operational communications may be consistent with the day-to-day support James sought and do not alone prove clandestine replacement. The July 27 lettuce-company introduction and reply do not establish that Bill ordered or knowingly assisted James's termination." (emphasis added)

"established" or described in any manner. Again, D'Amato had no contract with any of the defendants, and no right to compensation individually. Finally, Section 18, "aiding and abetting conditional candidate" is a catch-all, stating that "final naming remains," but stating names of individuals and a customer of JDIP (Aldi), and that discovery is necessary to develop some sort of tort claim, which again, appears to be related to knowledge of the termination of the "business relationship" between JD Global and Jem D Michigan, or as also stated, "terminating James." (¶R18.1, 18.2)

Not only do the statements in the Sections not constitute allegations which are capable of being responded to, but there is no basis for eliminating the corporation's claims and inserting D'Amato as an alternate plaintiff; he simply had no relationship with any of the defendants; JD Global was the independent contractor whose relationship was terminated, which is the subject of this lawsuit. The "conditional" claims are not claims at all, and the imagined conditional "tort" claims, apparently having to do with D'Amato's speculation that others either urged or had knowledge of the termination of the subject business relationship, also, even if indulged, would not be personal to D'Amato. Such claims were never alleged by JD Global through its counsel, likely because no legal basis exists to make such claims.

At best, the motion presents a subjective and delusional account of past events which do not support any causes of action on behalf of D'Amato individually. It is clearly an attempt to prolong this litigation, by the principal of plaintiff who is

dissatisfied with the legal representation of plaintiff's former counsel. Indeed, the motion itself reflects that it is a prelude to manufacturing claims against JD Global's former counsel, both of which withdrew from representation of the corporation, as D'Amato also has suggested in his prior filings. (D.E. 149, 152) As addressed further infra, D'Amato's motion seeks bizarre and inappropriate relief, asking the Court to assist in recovery of litigation files from JD Global's prior legal counsel, which he states he suspects may be incomplete, and which he wants to examine as to communications had between the parties' counsel. (10/18/26 Declaration ¶152)

In sum, because the motion explicitly seeks an advisory opinion from the Court as to the viability of each of D'Amato's "theories," as well as his ability to assert them individually; the proposed pleading document is not compliant with Fed.R.Civ.P. 8(a)(2); and directions are sought as to the "form" of any pleading to be filed, the motion is procedurally deficient. For these reasons, the motion should be denied summarily and Defendants should be permitted to file an appropriate motion seeking sanctions against D'Amato.

## POINT III

### THE DELAY IN SEEKING THE AMENDMENT IS UNDUE AND PREJUDICE TO DEFENDANTS WOULD RESULT IF THE AMENDMENT IS PERMITTED

D'Amato's motion papers do not address or even mention the undue delay in seeking to amend the Amended Complaint, or the prejudice to defendants which

would be occasioned by permitting the filing of his proposed pleading. A cursory review of the proposed pleading document demonstrates that even if the claims were germane, not barred by applicable statutes of limitations, or if D'Amato had standing to pursue them individually, they would require the re-opening of discovery, ignoring discovery orders, and disregarding ESI protocols attached to the February 12, 2024 Order entered by Judge Hammer. Entirely new rounds of discovery involving new claims as well as entities and individuals which are not currently parties to the action would be necessary. It is appropriate to deny a motion to amend if the delay in seeking to amend is "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party." Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984). Here, there has been undue delay (three years) in seeking to amend, and the prejudice to Defendants and burden upon the Court should the proposed amendment be allowed is evident.

As detailed supra, many of the claims set forth in the proposed pleading document seek to substitute D'Amato as a party plaintiff in place of JD Global, on contract and contract-related causes of action, which is a baseless proposal, in view of the adjudicated fact that the contractual relationship at issue in this case was between JD Global and Jem D Michigan. (D.E. 69, at 23) The remaining claims are those which were addressed in prior discovery motions, where plaintiff and its principal, D'Amato, proposed that broad subpoenas be issued to JDIP's customers,

in a fishing expedition designed to create groundless claims against those customers – claims which now appear in the proposed amended pleading, purportedly to be asserted by D'Amato, individually. Among those claims are interference with JD Global's contract, and use of its alleged proprietary information, and, notwithstanding lack of standing, allegations of antitrust, all of which are baseless. Most of the new proposed causes of action are not germane to the breach of contract cause of action in this case, and allegations against individuals for supposedly "participating" in the decision of Jem D Michigan to terminate its contractual relationship with JD Global are legally baseless.

D'Amato's delay in seeking to amend the pleading is undue, and indeed, inexplicable, warranting denial of the motion. The February 2, 2023 Scheduling Order (D.E. 57) set a deadline of August 31, 2023 for filing of motions to add new parties or to amend the pleadings, which was over three (3) years ago. This is significant for two reasons. At the time of the scheduling conference held on February 2, 2023, D'Amato remained as a party plaintiff to the action, having been added to the Amended Complaint in an attempt to salvage the earlier dismissed CEPA claims. The dismissal of Count IV of the Amended Complaint, in which D'Amato asserted CEPA claims, occurred on July 17, 2023. At no time prior to August 31, 2023 was a motion to amend the existing pleading made, and D'Amato has asserted that the purported claims he now seeks to allege by way of amendment

were known to D'Amato and his counsel in 2021, two (2) years before the Scheduling Order was entered. (D.E. 152, p. 5)

Indeed, no motion was made to the Court at any time during the litigation wherein D'Amato sought to assert "individual" claims in the case. That only became a reality when D'Amato unilaterally sought to discharge JD Global's second attorney and enter a pro se appearance on behalf of JD Global in January, 2026. (D.E. 144) In February, 2026, when he became aware that the corporation was required to retain counsel to pursue its claims, D'Amato sought leave to file a motion to amend the Amended Complaint, which was denied by the Court's March 4, 2026 Order (D.E. 155), and ultimately led to the September 17, 2026 Text Order (D.E. 174) and the filing of the present motion. It is clear that D'Amato's intention is to become personally involved in this litigation, to attempt to further stonewall its resolution.[13] The delay in filing the motion to amend is undue, and it is an application presented in less than good faith, also warranting its denial. See Cureton v. NCAA, supra.

The prejudice to defendants which would be occasioned by permitting the filing of the proposed pleading document is obvious. In the first place, as addressed

---

[13] Should there be any doubt as to this, D'Amato's February 21, 2026 unsolicited letter to the Court outlines his intentions as a pro se intervenor, including making a future motion "for appointment of neutral examiner and special master," filing a motion to amend, which would "identif[y] twenty-one defendants," "engaging directly with the Court and opposing counsel," and addressing a supposed issue concerning his obtaining JD Global's prior counsel's files. (D.E. 152, pp. 3, 5, 6, 8) Because documentary evidence in the case, much of it authored by D'Amato, negates the causes of action pled and pursued in this action, he has embarked on a path to harass defendants by thwarting a final resolution of the case via summary judgment.

supra, it is not a proper "pleading," to which a response is possible. Indulging D'Amato's "theories" and conditional claims, the causes of action sought to be added are mostly unrelated to the underlying contract action and the proposal is to add numerous entities and individuals as new defendants. If the claims are permitted, additional discovery will be necessary, and likely will also involve jurisdictional issues and discovery thereon. The continuation of the litigation will be costly, and will create opportunities for a pro se plaintiff to further bog down the progress of what is primarily a breach of contract action, which has been unduly delayed for the past three years. Unquestionably, permitting the amendment will substantially delay the resolution of the case and cause substantial prejudice to Defendants.

The burden upon the Court should the amendment be permitted is likewise obvious, as the case is near its procedural end, with a defense summary judgment motion having been anticipated in 2025. Paper discovery is complete, after numerous case management conferences having been conducted, the provision by defendants of over 2.5 million pages of documents. Further, the entire debacle relating to issuance of subpoenas to JDIP's customers, which ultimately required Court intervention, was orchestrated by D'Amato. No doubt, there will be more similar obstructions to come should the proposed amendment and intervention by D'Amato, a self-represented individual, who intends to "engag[e] directly with the Court and opposing counsel" (D.E. 152, p. 6) be permitted.

Finally, it is noted that D'Amato's motion is essentially one to be permitted to intervene in the case to assert additional causes of action. He is an individual which has no extant claims in the Amended Complaint, and seeks to individually pursue claims that are those of his corporation, as well as include claims unrelated to the primary breach of contract cause of action, which he also asserts are individual claims. Fed.R.Civ.P. 24 governs applications to intervene in a pending action, and provides for both intervention as of right and permissive intervention. D'Amato's motion fails to establish a right to intervene, in either circumstance.

Intervention of right pursuant to Fed.R.Civ.P. 24(a)(1), is permitted only where the intervenor "(1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." See also In re Johnson & Johnson Derivative Litigation, 900 F. Supp. 2d 467, 475 (2012), citing Kleissler v. U.S. Forest Service, 157 F.3d 964, 969 (3d Cir. 1998).

Subsection (a)(1) does not permit D'Amato to intervene to assert his proposed claims. By merely and incorrectly labelling existing corporate claims as "individual" claims, he asserts that he has a separate protectable interest in the litigation, independent of that of the plaintiff, JD Global. D'Amato is the principal of JD

Global, which asserted claims on its own behalf following the July, 2021 termination of the independent contractor agreement between it and Jem D Michigan, and he has no interest in the litigation separate and apart from his status as the company's principal. JD Global's interests have been and are protected by the corporation's participation in the action.[14] Because D'Amato does not have a "sufficient interest in the litigation," or any interest separate from that of his corporation, which is being adequately protected by the corporation's participation in the litigation, he is not entitled to intervene in the action as of right.

Likewise, D'Amato has no basis for permissive intervention in the action.

> [A] proposed intervenor must show that: (1) its motion is timely; (2) it has questions of law or fact in common with the anchoring suit; and (3) intervention will not cause undue delay or prejudice for the original parties. If a third party can satisfy all of these requirements, the court may, in its discretion, grant that third party permissive intervention.

In re Johnson & Johnson Derivative Litigation, supra. See also ACR Energy Partners, LLC v. Polo North Country Club, Inc., 309 F.R.D. 191 (2015).

Again, D'Amato's application seeking to join the litigation as a party plaintiff, and leave to amend the pleadings is excessively tardy, and his proposed new claims do not have questions of law or fact in common with JD Global's contract or quasi-contract claims in the action. Permitting intervention clearly will cause delay in the

[14] In addition, except for the dismissed CEPA claims, none of the claims made in the initial or Amended Complaint, which were primarily contract-based claims, were ever stated on behalf of D'Amato, individually. He had no contractual relationship with the defendants.

action, and prejudice to the existing parties will result, as addressed supra. D'Amato is not entitled to permissive intervention.

For the foregoing reasons, including that D'Amato has no basis to intervene in the action, pursuant to Fed.R.Civ.P. 24(a)(1), to assert additional claims, the motion seeking leave to amend should be denied.

## POINT IV

## THE MOTION SHOULD BE DENIED INSOFAR AS THE REQUESTED RELIEF EXCEEDS THE PERMISSIBLE SCOPE OF THE SEPTEMBER 17, 2026 TEXT ORDER

The September 17, 2026 Text Order permitted D'Amato to file a motion for leave to amend the August 31, 2022 Amended Complaint. (D.E. 174) The Text Order was entered to resolve D'Amato's filing of an application, pursuant to Fed. R. Civ. P. 72(b) (D.E. 160) for review of Magistrate Hammer's denial of D'Amato's prior motion for leave to amend, by Order dated March 4, 2026. (D.E. 155)[15]

An additional March 24, 2026 Order (D.E. 159), prohibited D'Amato "from making any further filings on the docket," due to his non-party status, and his continued filings of papers, including those containing confidential business information of defendants, in direct violation of Confidentiality Orders entered in

[15] Magistrate Hammer denied D'Amato's previous motion seeking leave to amend because D'Amato was no longer a party to the litigation, after having been dismissed as a party from the Amended Complaint, to which he had been added as a party to attempt to salvage and assert CEPA claims, though he was not an employee of defendants. The CEPA claim, the only claim asserted on behalf of D'Amato individually when he was added to the Amended Complaint, was dismissed on motion, by Judge Martinotti's July 17, 2023 Order and Opinion. (D.E. 69, 70)

the case. The March 24, 2026 Order also directed the sealing of documents filed by D'Amato at that time, upon motion made by defendants. The prohibition contained in the March 24, 2026 Order remains, and is consistent with the September 17, 2026 Text Order limiting permission to D'Amato to file only a motion seeking leave to amend the existing Amended Complaint.

D'Amato's current application, which, in the first place, is not a proper or cognizable motion for leave to amend, as addressed supra, encompasses additional requests for relief, in violation of both the September 17, 2026 Text Order and the prohibition contained in the March 24, 2026 Order. D'Amato requests that the Court issue "directions" regarding additional discovery, including "subpoena issues," and conduct a case management conference to advise D'Amato as to how to proceed. (10/18/26 N/M, p. 5-6, ¶¶5, 6) He also requests, in violation of the long-passed deadline in the March 4, 2026 Order (D.E. 154), that the Court ignore the motion to dismiss that has been pending for several months, permit an additional ninety (90) day period for him to attempt to obtain counsel to represent JD Global, and that the Court delineate the "scope" of retention of such counsel or approve "a limited appearance" of counsel. (10/18/26 Letter, p. 2-3; 10/18/26 N/M, p. 4, ¶¶4, 4A)

Finally, D'Amato requests that the Court intervene to direct the former attorneys for plaintiff, JD Global, to turn over to him their complete litigation files. (See 10/18/26 Letter, p. 3; 10/18/26 N/M, p. 4, ¶5; 10/18/26 Brief at 25-26) The

request is bizarre of itself, but clearly reflects D'Amato's continued criticism of prior counsel for JD Global, and what is, as revealed by his earlier filings, an attempt to embroil the Court in his quest to create claims against JD Global's prior counsel in connection with their handling of the case in a manner with which D'Amato disagreed – including counsel's not asserting what are frivolous and unsupportable claims on behalf of D'Amato individually. Two of his prior filings confirm that this is the case. D'Amato's March 18, 2026 application made pursuant to Fed.R.Civ.P. 72(b) discussed his alleged individual claims, and asserted that "two prior law firms failed to file for 4.5 years" his then-submitted "517 pages" of documentation in support of his quest to amend the Amended Complaint and assert individual and other claims. (D.E. 160, at 20) Similarly, his February 24, 2026 filing, which addressed motions he intended to file, purportedly as a pro se plaintiff, asserted that he desired to file an amended pleading to assert claims "that should have been pled from the outset by competent counsel," and that "[t]he evidence supporting each claim has been in the record – or in counsel's possession – since 2021." (D.E. 152, at 5) The purpose of D'Amato's motion is not to assert causes of action which JD Global's and D'Amato's counsel declined to plead, for good reason, but to attempt to create claims against JD Global's former attorneys relating to their not doing so.

All of these requests are beyond the scope of the September 17, 2026 Text Order, and should be denied. Because of D'Amato's propensity to file documents in

violation of the March 24, 2026 Order (D.E. 159), and now to overtly violate the September 17, 2026 Text Order, it is requested that the Court affirm the prohibition set forth in the March 24, 2026 Order.

POINT V

MOST OF D'AMATO'S PROPOSED CLAIMS ARE BARRED BY STATUTES OF LIMITATIONS, AND DO NOT RELATE BACK TO THE AMENDED COMPLAINT

The sections of the proposed amended pleading are set forth in Argument, Point II, supra. Indulging the statements made therein, and deriving the intended causes of action from the titles of each section, most of the proposed claims are barred by applicable statutes of limitations. All contract-related causes of action which D'Amato proposes to allege individually are subject to the six (6) year statute of limitations of N.J.S.A. 2A:14-1. See also Gashlin v. Prudential Ins. Co. of Am. Ret. Sys., 286 F. Supp. 2d 407, 421 (2003). All of the actions relating to D'Amato's alleged verbal agreement, promises, and other quasi-contract claims are alleged to have taken place well before 2020. See also Spellman v. Express Dynamics, LLC, 150 F. Supp. 3d 378, 391 (D.N.J. 2015) ("[t]he statute of limitations for an unjust enrichment claim in New Jersey is six years."); Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 473 (D.N.J. 1999) ([t]he statute of limitations in New Jersey for claims sounding in restitution/unjust enrichment or quantum meruit is six years.") Likewise, the claims set forth under the New Jersey Sales Representatives Rights

Act (R08), arising from the contract between JD Global and Jem D Michigan would be governed by the six year statute of limitations.

D'Amato also proposes to revive the dismissed claims arising under the New Jersey Conscientious Employee Protection Act (R04), which are subject to a one year limitations period, running from the alleged retaliatory employment action. N.J.S.A 34:19-5. As to causes of action asserted under the Defend Trade Secrets Act ("DTSA"), and the New Jersey Trade Secrets Act (R05, R06), the applicable statute of limitations is three (3) years from the alleged misappropriation. 18 U.S.C. § 1836(d); N.J.S.A 56:15-8. See Amar v. Citigroup, Inc., 2026 U.S. Dist. LEXIS 91911, *9 (D.N.J. 2026), and the Amended Complaint, which references JD Global's spreadsheet, and alleged proprietary information, alleges that requests were made to defendants for the return of such information on July 27, 2021. Conversion, a new cause of action stated by D'Amato also relates to JD Global's spreadsheet; putting to one side whether a conversion claim is cognizable, the statute of limitations for a conversion claim relating to personal property is six years. N.J.S.A. 2A:14-1.

The copyright infringement cause of action relating to JD Global's spreadsheet was dismissed by counsel for JD Global (D.E. 39). Even if there were a claim, it would be subject to the three year statute of limitations of 17 U.S.C. § 507(b).

Section R11 is entitled "Sherman Act." Anti-trust claims arising under the Sherman Act are subject to a four (4) year statute of limitations. See In re Fragrance

Direct Purchaser Antitrust Litig., No. 23-02174, 2025 U.S. Dist. LEXIS 31603 (D.N.J. Feb. 21, 2025). Moreover, D'Amato is not a "purchaser" of products, so as to afford standing for an anti-trust claim.

Sections R12 and R13, identifying two of JDIP's customers – Walmart and Aldi – seemingly allege tortious interference with JD Global's contract, based on alleged communications taking place in 2018 with respect to Walmart, and unidentified events with respect to Aldi. A tortious interference with contract claim must allege malice (see, e.g., Onyx Enters. Can. Inc. v. Royzenshteyn, 2025 U.S. Dist. LEXIS 176554 (D.N.J. September 10, 2025), and no facts suggesting malice are stated in the proposed pleading document, the six-year statute of limitations of N.J.S.A. 2A:14-1 would apply to such claims. Likewise, the civil conspiracy claim (R14) is subject to the N.J.S.A. 2A:14-1 six-year statute of limitations, but requires pleading of underlying tort causes of action; none are stated.

Section R17 references an "equitable accounting", but it is unclear to what cause of action such an accounting relates. JD Global did not contest and accepted commission payments for the entirety of its performance of services. An accounting of commissions paid to JD Global (not D'Amato individually) was provided in discovery, and it was agreed that plaintiff could issue limited subpoenas to "verify" information relating to amounts paid. Limitations of actions for accountings are tied to the requested for relief, breach of contract, which is subject to a six-year statute

of limitations. N.J.S.A. 2A:14-1.

Further, although D'Amato's motion mentions "relation back" (10/18/26 Brief at 11), the relation back doctrine does not apply to the claims he seeks to assert individually, or, as he sometimes states, "conditionally" on behalf of JD Global. Fed. R. Civ. P. 15(c). See also, e.g., Glover v. FDIC, 698 F.3d 139, 146 (2012).

CONCLUSION

For the foregoing reasons, Defendants request that: (1) D'Amato's motion for leave to amend the Amended Complaint, including relief beyond the scope of the September 17, 2026 Text Order, be denied in its entirety; (2) the Court's Order dated March 24, 2026 prohibiting D'Amato from making any further filings in this case be incorporated into any order issued resolving D'Amato's motion; (3) Defendants shall have permission to file a motion for sanctions due to D'Amato's bad faith change in positions which prolonged this litigation and continues to prejudice to Defendants.

Respectfully submitted,

/s/ Joseph H. Tringali

Joseph H. Tringali (Bar ID: JT-3853)
Bendit Weinstock, P.A.
80 Main Street, Suite 260
West Orange, NJ 07052
Telephone: 973-736-9800
Facsimile: 973-325-3115
Attorneys for Defendants